**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
nicole.greenblatt@kirkland.com
francis.petrie@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC.**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

---

[1]   The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this application (this "Application"):[2]

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the employment and retention of FTI Consulting, Inc. ("FTI") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") to serve as the Debtors' financial advisor effective as of the Petition Date in accordance with the terms and conditions set forth in that certain engagement letter between FTI and Debtor Invitae Corporation dated as of February 8, 2024 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to the Order and (b) approving the provisions of the Engagement Letter, including the compensation arrangements and indemnification and reimbursement provisions set forth therein.

2.      In support of this Application, the Debtors submit the declaration of Andrew Hinkelman (the "Hinkelman Declaration"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

**Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Ana Schrank, Chief Financial Officer of Invitae Corporation, in Support of Chapter 11 Filing, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration") [Docket No. 21]. Capitalized terms used but not immediately defined are defined later in this Application, the First Day Declaration, or the Engagement Letter, as applicable.

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The bases for the relief requested herein are sections 327(a), 328(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## Background

6.  On February 13, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

7.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 16, 2024, the Court entered an order [Docket No. 54] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On March 1, 2024 the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Unsecured Creditors' Committee") [Docket No. 131] pursuant to section 1102 of the Bankruptcy Code.

## FTI's Qualifications

8.  FTI provides services in areas ranging from corporate finance and interim management to economic consulting, forensic and litigation consulting, strategic communications,

3

and technology.  FTI's clients include many of the world's largest public companies, as well as a majority of the twenty-five largest banks and top one hundred law firms in the world. FTI's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice, identification of reorganization alternatives, and crisis communications.  FTI has significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, identification and implementation of liquidity-enhancing and cost-saving strategies, and constituent communication plans and strategies.

9.      FTI has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States, including in the following cases: *In re SmileDirectClub, Inc.*, No. 23-90786 (Bankr. S.D. Tex. Sep. 29, 2023); *In re Proterra Inc.*, No. 23-11120 (Bankr. D. Del. Sep. 6, 2023); *In re Diebold Holding Co., LLC*, No. 23-90602 (Bankr. S.D. Tex. Jul. 17, 2023); *In re SAS AB*, No. 22-10925 (Bankr. S.D.N.Y. July 5, 2022); *In re GNC Holdings, Inc.*, No. 20-11662 (Bankr. D. Del. Jul. 20, 2020); *In re The Hertz Corp.*, No. 20-11218 (Bankr. D. Del. Jun. 24, 2020); *In re Frontier Communications Corp.*, No. 20-22476 (Bankr. S.D.N.Y. May 26, 2020).

10.      The Debtors' board of directors have authorized the Debtors' officers to retain and employ FTI to provide all assistance they deem necessary or proper to successfully resolve the Debtors' chapter 11 cases and the Debtors have determined that the employment of FTI to serve as their financial advisor is necessary and proper.

11.      FTI was engaged by the Debtors to provide financial advisory services in connection with the Debtors' filing for relief under chapter 11 of the Bankruptcy Code, pursuant

to the terms of the Engagement Letter.  Prior to the Petition Date, FTI was engaged by the Debtors

on July 15, 2021 to provide financial advisory services to the Company.  During the prepetition

period, FTI supported the Debtors' finance organizations with the development of a long-range

plan as well as the execution of two operational restructurings.[3]  Since FTI's initial engagement in

July 2021, the FTI personnel providing services to the Debtors (the "FTI Professionals") have

worked closely with the Debtors' management and other professionals in assisting with the myriad

requirements of these chapter 11 cases.  Throughout its engagement, FTI has developed a great

deal of institutional knowledge regarding the Debtors' operations, finances, and systems.  For these

reasons, FTI is both well qualified and uniquely suited to deal effectively and efficiently with

matters that may arise in the context of these chapter 11 cases.  Accordingly, FTI's services are

necessary to enable the Debtors to maximize the value of their estates and reorganize successfully.

## Scope of Services

12.    The Debtors' prepetition Engagement Letter is attached hereto as Exhibit 1 to the

Order, the terms of which shall govern the Debtors' retention of FTI except as explicitly set forth

herein or in the Order granting this application.

13.    The FTI Professionals will provide such consulting and advisory services as FTI

and the Debtors deem appropriate and feasible to advise the Debtors in the course of these

chapter 11 cases, including but not limited to the following:

- Assisting in developing materials for diligence requests in the Debtors' ongoing sale process;

---

[3]    The Debtors engaged FTI pursuant to that certain engagement letter dated July 15, 2021, as amended by that certain addendum to the engagement letter dated October 14, 2021 as further amended by that certain second addendum to the engagement letter dated May 23, 2022, as further amended by that certain third addendum to the engagement letter dated December 13, 2022, as further amended by that certain fourth addendum to the engagement letter dated May 10, 2023, as further amended by that certain fifth addendum to the engagement letter dated July 24, 2023, as further amended by that certain sixth addendum to the engagement letter dated September 26, 2023 (together, the "Original Engagement Letter").

- Assisting in developing a cash collateral budget, and updating the budget for periodic reporting to both internal and external parties;

- Assisting with near-term liquidity management;

- Assisting the Debtors' finance team in finalizing the go-forward business plan;

- Assisting in the preparation of the Debtors' Statement of Financial Affairs, Statement of Assets and Liabilities, Monthly Operating Reports, and any other necessary reporting during their bankruptcy cases;

- Assisting in the preparation of the Debtors' chapter 11 plan and disclosure statement;

- Assisting in the Debtors' negotiations with secured creditors, unsecured creditors, potential buyers, and other external parties;

- Assisting in planning communications strategies and tactics in connection with the Debtors' bankruptcy cases, and developing associated restructuring communications materials for all critical stakeholder audiences;

- Assisting with the identification of executory contracts and unexpired leases, cost/benefit analyses with respect to the assumption or rejection of each, and the preparation of schedules detailing executory contracts and unexpired leases in support of the Debtors' ongoing sale process and bankruptcy preparations; and

- Other financial advisory and consulting services as mutually agreed to between FTI and the Debtors.

**<u>No Duplication of Services</u>**

14.    The services that FTI will provide to the Debtors will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained in these chapter 11 cases and performed in accordance with applicable standards of the profession.  FTI will work collaboratively with the Debtors' management and other professionals to avoid duplication of services.  The Debtors believe that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtors' other professionals.

**FTI's Disinterestedness**

15.     FTI has informed the Debtors that, to the best of FTI's knowledge, information, and belief, other than as set forth in the Hinkelman Declaration, annexed hereto as **Exhibit B**, FTI: (a) has no connection with the Debtors, their creditors, their equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any United States district judge or bankruptcy judge in this district in any matter related to the Debtors and their estates; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  FTI has not provided, and will not provide, any professional services to any creditor or party-in-interest or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.  If any new material facts or relationships are discovered or arise, FTI will inform the Court as required by Bankruptcy Rule 2014(a).

**Terms of Retention**

**I.     Compensation.**

16.     In accordance with the terms of the Engagement Letter, FTI will be paid by the Debtors for the services of the FTI Professionals at their customary hourly billing rates. The current hourly billing rates for FTI Professionals, based on the position held by such FTI Professional, are subject to the following ranges:

| Position | Hourly Rate (USD)[4] |
|---|---|
| Senior Managing Directors | $1,095 – 1,495 |
| Directors / Senior Directors / Managing Directors | $825 – 1,110 |
| Consultants / Senior Consultants | $450 – 790 |
| Administrative / Paraprofessionals | $185 – 370 |

---

[4]     FTI periodically updates billable rates.  FTI will notify the Court of any updates to the ranges contained herein.

17.     In addition, FTI will be reimbursed for the reasonable out-of-pocket expenses incurred by FTI, such as travel, lodging, meals, third party duplications, messenger, and telephone charges.  Actual and necessary expenses also include any reasonable legal fees incurred by FTI related to FTI's retention in these cases, subject to Court approval.

18.     All fees and expenses due to FTI will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  FTI will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In the event FTI seeks reimbursement for attorneys' fees during the term of the Debtors' chapter 11 cases, FTI will include the applicable invoices and supporting time records from such attorneys (in summary form and redacted for privilege and work product).

**II.     Indemnification.**

19.     As a material part of the consideration for which the FTI Professionals have agreed to provide the services described herein, pursuant to the Engagement Letter, the Debtors have agreed to indemnify and hold harmless certain Indemnified Persons from matters arising out of or relating to FTI's retention (not including such an Indemnified Person's gross negligence or willful misconduct) as set forth in sections 6.1 and 6.2 of the Engagement Letter.

20.     The Debtors believe the indemnity provisions are a reasonable term and condition of FTI's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and FTI at arm's-length and in good faith.  FTI and the Debtors believe that the Indemnification and Limitation of Liability provisions, contained in sections 6.1 and 6.2 of the Engagement Letter, are comparable to those generally obtained by firms of similar stature to FTI and for comparable engagements, both in and out of court.  The Debtors respectfully submit that

these provisions, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors.

**III.    Fees.**

21.    The Debtors understand that FTI intends to apply to the Court for allowances of compensation and reimbursement of expenses for its financial advisory services rendered during these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court, and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (Appendix A to 28 C.F.R. § 58) (collectively, the "Fee Guidelines").

22.    As set forth in the Hinkelman Declaration, according to FTI's books and records, during the ninety (90) days before the Petition Date, FTI received retainers and payments totaling $5,063,124.65 (the "Retainer") in the aggregate for services performed for the Debtors.  FTI has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.  A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in FTI's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors.  The unapplied residual Retainer, which is estimated to total approximately $550,000, will be withheld and applied to FTI's final approved fees and expenses in these proceedings.  To the extent that this amount exceeds FTI's fees, charges and disbursements upon the completion of these chapter 11 cases, FTI will refund any unused portion back to the Debtors.

23.    FTI believes that the foregoing fee structure and terms are reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11.

**Basis for Relief**

24.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

25.     The employment of FTI is a sound exercise of the Debtors' business judgment. As detailed herein, FTI has acquired significant knowledge of the Debtors and their business as a result of the extensive prepetition work performed on the Debtors' behalf. As discussed above and in the Hinkelman Declaration, FTI (i) does not hold or represent an interest adverse to the Debtors' estates and (ii) is a "disinterested person" as required by section 327(a) of the Bankruptcy Code. Thus, the employment of FTI is necessary and its services are appropriate in these chapter 11 cases.

26.     In addition, the Debtors seek approval of the Engagement Letter, including the fee structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The Debtors believe that FTI's fee structure is fair and reasonable in light of the types of services being provided and that it compares favorably with the fee structures generally offered by firms of similar stature to FTI for comparable engagements. In addition, given the numerous issues FTI has addressed prior to the Petition Date and may need to address during these chapter 11 cases, FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for FTI's services for engagements of this nature in an out-of-court context, the Debtors believe that the FTI fee arrangement is fair and reasonable.

27.     Finally, to the best of the Debtors' knowledge, information, and belief, FTI does not have any interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.  Further, the Debtors understand that FTI believes it is disinterested because, to the best of FTI's knowledge, information, and belief, FTI has no connection with the Debtors, their creditors, or any other party-in-interest, except as disclosed in the Hinkelman Declaration.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

28.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**No Prior Request**

29.     No prior request for the relief sought in this Application has been made to this or any other court.

**Notice**

30.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) counsel to the Unsecured Creditors' Committee; (c) counsel to the agent to the Secured Notes; (d) the indenture trustee to the 2024 Convertible Notes; (e) the indenture trustee to the 2028 Convertible Notes; (f) Sullivan & Cromwell LLP, as counsel to the Required Holders; (g) Wollmuth Maher & Deutsch LLP, as counsel to the Required Holders; (h) counsel to the 2028 Convertible Noteholders; (i) the U.S. Securities and Exchange Commission; (j) the United States Attorney's Office for the District of New Jersey; (k) the attorneys general in the states where the

Debtors conduct their business operations; (l) the Internal Revenue Service; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order,

substantially in the form attached hereto as **Exhibit A** granting the relief requested herein.

Dated: March 14, 2024

/s/ *Ana Schrank*
Ana Schrank
Invitae Corporation
Chief Financial Officer

## Exhibit A

**Proposed Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>INVITAE CORPORATION, *et al*.,<br><br>                           Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |

# ORDER AUTHORIZING THE
## EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC.
## AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED.**

---

[1]    The last four digits of Debtor Invitae Corporation's tax identification number are 1898.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae.  The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
nicole.greenblatt@kirkland.com
francis.petrie@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | INVITAE CORPORATION, *et al.* |
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

Upon the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor as of the Petition Date* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to employ and retain FTI Consulting, Inc. ("FTI") as the Debtors' financial advisor as of the Petition Date in accordance with the terms and conditions set forth in the engagement letter between FTI and certain of the Debtors, dated February 8, 2024 (the "Engagement Letter") which is attached as **Exhibit 1** to this Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and (b) approving the provisions of the Engagement Letter, including the compensation arragenements and indemnification and reimbursement provisions set forth therein, all as more fully set forth in the Application; and upon the First Day Declaration; and upon the Hinkelman Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 4)

| Debtors: | INVITAE CORPORATION, *et al.* |
|---|---|
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court being satisfied, based on the representations made in the Application and the Hinkelman Declaration, that (a) FTI does not hold or represent an interest adverse to the Debtors' estates and (b) FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.     The Application is **GRANTED** as set forth herein.

2.     In accordance with sections 327(a) and 328 of the Bankruptcy Code, the Debtors are hereby authorized to retain FTI as financial advisors to the Debtors, effective as of the Petition Date on the terms set forth in the Engagement Letter, as modified by this Order.

3.     Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, FTI shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules as may then be applicable, the Local Rules, the Fee Guidelines, any interim compensation orders entered by this Court, and any amendments or modifications thereto.

4.     Notwithstanding anything in the Motion, Hinkelman Declaration, or Engagement Letter to the contrary, FTI shall apply any remaining amounts of the Retainer and advanced payments as a credit toward postpetition fees and expenses to the extent such postpetition fees and

(Page | 5)

| | |
|---|---|
| Debtors: | INVITAE CORPORATION, *et al.* |
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

expenses are not objected to.  At the conclusion of FTI's engagement by the Debtors, if the amount

of the Retainer held by FTI is in excess of the amount of FTI's outstanding and estimated fees,

expenses, and costs, FTI will pay to the Debtors the amount by which the Retainer exceeds such

fees, expenses, and costs, in each case in accordance with the Engagement Letter.

5.      FTI is entitled to reimbursement of actual and necessary expenses.  In the event

that, during the pendency of these chapter 11 cases, FTI requests reimbursement for any attorneys'

fees and/or expenses, the invoices and supporting time records from such attorneys shall be

included in FTI's fee applications, and such invoices and time records shall be in compliance with

the Local Rules, the U.S. Trustee Guidelines, and the standards of section 330 and 331 of the

Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of

the Bankruptcy Code and without regard to whether such attorney's services satisfy section

330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, FTI shall only be

reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent

permitted under applicable law; *provided, however,* that FTI shall not seek reimbursement from

the Debtors' estates for any fees incurred in defending any of FTI's fee applications in these

chapter 11 cases.

6.      The terms of the Engagement Letter, as modified herein are approved and the

indemnification, contribution, and reimbursement provisions as set forth therein are approved,

subject, during the pendency of these chapter 11 cases, to the following modifications:

a)      FTI shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution, or reimbursement is approved by the Court.

(Page | 6)

| | |
|---|---|
| Debtors: | INVITAE CORPORATION, *et al.* |
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

b)     Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of FTI's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified.

c)     If, before the earlier of (i) the effective date of a chapter 11 plan in these chapter 11 cases or (ii) the entry of an order closing these chapter 11 cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify FTI.  All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

7.     FTI will keep its time records in tenth-of-an-hour increments in accordance with Local Rule 2016-1 of this Court and shall otherwise comply with the requirements of that Local Rule, as well as Bankruptcy Rule 2016(a), and the Fee Guidelines.

8.     FTI will only bill fifty percent (50%) of its professionals' hourly rate for non-working travel.

9.     Notwithstanding any other provision in this Order, the U.S. Trustee shall have the right to object to any FTI request for interim and final compensation and reimbursement based on

| Debtors: | INVITAE CORPORATION, *et al.* |
|---|---|
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

the reasonableness standard provided in section 330 of the Bankruptcy Code.

10.     Notwithstanding anything in the Application to the contrary and for the avoidance of doubt, FTI will not be entitled to recover attorneys' fees or expenses for defending its fee applications in these chapter 11 cases.

11.     Prior to applying any increases in its hourly rates, FTI shall provide ten (10) business days' notice of any such increases to the Debtor, the U.S. Trustee, and the Unsecured Creditors' Committee, and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

12.     Notwithstanding anything in the Application, the Hinkelman Declaration or the Engagement Letter to the contrary, to the extent FTI retains the services of independent contractors or subcontractors (collectively, the "Contractors") in these chapter 11 cases and FTI seeks to pass through to the Debtors, and requests to be reimbursed for, the fees and/or costs of the Contractors, FTI shall (a) pass through the fees of such Contractors to the Debtors at the same rate that FTI pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these chapter 11 cases.

13.     None of the fees payable to FTI under the Engagement Letter shall constitute a

(Page | 8)

| | |
|---|---|
| Debtors: | INVITAE CORPORATION, *et al.* |
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

"bonus" or fee enhancement under applicable law.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

15.     The Debtors shall use their best efforts to avoid any duplication of services provided by FTI and any of the Debtors' other retained professionals in these chapter 11 cases, and, in connection with the services to be rendered pursuant to the Engagement Letter, FTI shall endeavor to coordinate and work together with the Debtors' other retained professionals to minimize or avoid unnecessary duplication of services.

16.     To the extent there is any inconsistency between the terms of the Application, the Hinkelman Declaration, and this Order, the terms of this Order shall govern.

17.     The Debtors and FTI are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

18.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     Notwithstanding anything to the contrary in the Application, the Hinkelman Declaration or the Engagement Letter, this Court retains exclusive jurisdiction with respect to all

(Page | 9)

| | |
|---|---|
| Debtors: | INVITAE CORPORATION, *et al*. |
| Case No. | 24-11362 (MBK) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE |

matters arising from or related to the implementation, interpretation, and enforcement of the

Engagement Letter and this Order.

## **Exhibit 1**

**Engagement Letter**



Andrew Hinkelman
FTI Consulting, Inc.
50 California Street, Suite 1900
San Francisco, CA 94111
+1 415.283.4214
andrew.hinkelman@fticonsulting.com

PRIVATE & CONFIDENTIAL

February 8, 2024

Invitae Corporation
Ms. Ana Schrank
Chief Financial Officer
1400 16th Street
San Francisco, CA 94103

Re: Project Ionic – Financial Advisory Services

Dear Ms. Schrank:

1. **Introduction**

    This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Invitae Corporation (the "Company"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided. For the avoidance of foult, this Agreement supersedes all prior agreements, engagement letters, and statements of work between FTI and the Client.

2. **Scope of Services**

    The Services, to be performed at your direction, are expected to include the following:

    — Assist the Company in developing materials for diligence requests in the Company's ongoing sales process.
    — Assist the Company in its preparation of a potential Chapter 11 Bankruptcy filing and development of any motions throughout the course of its bankruptcy cases.
    — Assist the Company in developing a cash collateral budget, and update the budget for periodic reporting to both internal and external parties.
    — Assist the Company with near-term liquidity management.
    — Assist the Company's FPA team in finalizing the go-forward business plan.
    — Assist and provide analyses supporting the go-forward business plan.
    — Assist the Company in its preparation of its Statement of Financial Affairs, Statement of Assets and Liabilities, Monthly Operating Reports, and any other necessary reporting during its bankruptcy cases.
    — Assist the Company in its preparation of its plan of reorganization and disclosure statement.
    — Assist the Company in its negotiations with secured creditors, unsecured creditors, potential buyers, and other external parties.

Invitae Corporation
February 8, 2024

— Assist the Company in planning communications strategies and tactics in connection with its bankruptcy cases, and develop associated restructuring communications materials for all critical stakeholder audiences.

— Assist the Company with the identification of executory contracts and unexpired leases, perform a cost/benefit analysis with respect to the assumption or rejection of each, and prepare schedules detailing executory contracts and unexpired leases in support of the Company's ongoing sales process and bankruptcy preparations.

— Other financial advisory and consulting services as mutually agreed to between FTI and the Company.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

Invitae Corporation
February 8, 2024

## 3.    Fees and Cash on Account

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1,095 – 1,495 |
| Directors / Senior Directors / Managing Directors | 825 – 1,110 |
| Consultants/Senior Consultants | 450 – 790 |
| Administrative / Paraprofessionals | 185 – 370 |

**International**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $785 – 875 |
| Directors / Senior Directors / Managing Directors | 415 – 750 |
| Consultants/Senior Consultants | 275 – 555 |
| Administrative / Paraprofessionals | 180 |

Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

## Cash on Account

Initially, the Company will forward to us the amount of $500,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account").[1]  To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

---

[1] FTI is currently holding a cash on account balance of $500,000 relating to work performed under the Sixth Addendum Dated September 26, 2023 to the Engagement Letter Dated July 15, 2021. These amounts will be applied to the Initial Cash on Account for this Agreement.

Invitae Corporation
February 8, 2024

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees that invoices are due upon receipt and will promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not

Invitae Corporation
February 8, 2024

billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy
Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry
of an order containing such court approval or at such time thereafter as instructed by the court.
The Company understands that while the arrangement in this paragraph may be altered in
whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for
payment of court approved post-petition fees and expenses. Such items are afforded
administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in
pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these
priority claims are paid in full in cash on the effective date of any plan (unless the holders of
such claims agree to different treatment). It is agreed and understood that the unused portion,
if any, of the Initial Cash on Account (as may be supplemented from time to time) and the
Additional Cash on Account shall be held by us and applied against the final fee application
filed and approved by the court.

4.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to
the Services. Further, this letter and the Standard Terms and Conditions attached comprise the
entire Engagement Contract for the provision of the Services to the exclusion of any other
express or implied terms, whether expressed orally or in writing, including any conditions,
warranties and representations, and shall supersede all previous proposals, letters of
engagement, undertakings, agreements, understandings, correspondence and other
communications, whether written or oral, regarding the Services.

5.    **Conflicts of Interest**

Based on our understanding of the parties involved in this matter, we have compiled a list of
interested parties (the "Potentially Interested Parties") and have undertaken a limited review of
our records to determine FTI's professional relationships with the Company and such
Potentially Interested Parties. From the results of such review, we are not aware of any
conflicts of interest or relationships that we believe would preclude us from performing the
Services.

As you know, however, we are a large consulting firm with numerous offices throughout the
world. We are regularly engaged by new clients, which may include one or more of the
Potentially Interested Parties. The FTI professionals providing services hereunder will not
accept an engagement that directly conflicts with this Engagement without your prior written
consent.

6.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing
both the confirmation below and the attached Standard Terms and Conditions and returning a
copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please
do not hesitate to contact Andrew Hinkelman at (415) 283-4200.

Invitae Corporation
February 8, 2024

Yours faithfully,


FTI CONSULTING, INC.


By:        _____
           Andrew Hinkelman
           Senior Managing Director

Attachment – As stated

Invitae Corporation
February 8, 2024
Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Invitae Corporation

By: _____
Ana Schrank
Chief Financial Officer

Date: ___2/12/24_____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Invitae Corporation dated February 8, 2024.  The Engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.**     **Reports and Advice**

1.1     **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.**     **Information and Assistance**

2.1     **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.    Additional Services**

3.1    **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

**4.    Confidentiality**

4.1    **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6    **Data Protection** - If this Engagement involves the processing of personal data (also referred to herein as personal information) (i) as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the EU Data Protection Schedule attached hereto as Schedule B shall apply to this engagement and it shall form an integral part of this Agreement and (ii) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule C shall apply to this engagement and it shall form an integral part of this Agreement. In the event of a conflict between the terms of this Agreement and the terms of Schedule B or Schedule C, the terms of Schedule B or Schedule C shall prevail in relation to the

processing of such personal data. If such personal data is processed in connection with this engagement, Client shall notify FTI in writing before any personal data is disclosed to FTI.

## 5.  Termination

5.1    **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6.  Indemnification, Liability Limitation, and Other Matters

6.1    **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2    **Limitation of liability** - You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

## 7.   Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, and Compliance with Law

7.1    **Governing Law** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2    Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. If cases under the Bankruptcy Code are commenced, the Bankrutpcty Court having jurisdiction over the Client's Bankruptcy case shall have exclusive jurisdictrion in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising form it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to

claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3     **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4     **Compliance with Laws** - The Company agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement.  The Company further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI. The Company shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Company or its directors, officers, employees or agents.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Invitae Corporation

By: _____
Ana Schrank
Chief Financial Officer

Date: _____2/12/24_____

**TO BE ON FTI LETTERHEAD**

**SCHEDULE A**

**STANDARD RELEASE LETTER**

**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting, Inc.

Dear Mr./Ms. _____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting, Inc. ("FTI") has performed certain procedures to assist Client in connection with the _____. We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**. **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report. **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report. Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By:     _____
        (Name of Company official

Title:  _____

Date:   _____

**SCHEDULE B**

**FTI CONSULTING DATA PROTECTION SCHEDULE**

This Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**").

1. **Definitions**

1.1    In this Schedule, unless otherwise defined herein, all defined terms shall have the meaning set out in the Contract.

1.2    In this Schedule, the following terms shall have the meanings set out below:

1.2.1    "**Data Protection Laws**" means all legislation protecting the personal data of natural persons that is applicable to the processing of Personal Data under this Schedule, including (without limitation) the GDPR and any national legislation which supplements the GDPR, and the data protection laws of any other country, state or territory which apply to such processing;

1.2.2    "**EEA Standard Contractual Clauses**" means the Standard Contractual Clauses set out in the European Implementing Decision (EU) 2021/914 on standard contractual clauses for the transfer of personal data to third countries pursuant to Regulation (EU) 2016/679, as updated, amended, replaced or superseded from time to time by the European Commission;

1.2.3    "**GDPR**" means the General Data Protection Regulation (EU) 2016/679;

1.2.4    "**Restricted Transfer**" means a transfer of Personal Data from Client to FTI in circumstances where such transfer would be prohibited by Data Protection Laws in the absence of the EEA or UK Standard Contractual Clauses;

1.2.5    "**Standard Contractual Clauses**" means either the EEA or UK Standard Contractual Clauses, as applicable to a Restricted Transfer;

1.2.6    "**UK Standard Contractual Clauses**" means the standard contractual clauses for the transfer of personal data to Processors established in third countries which do not ensure an adequate level of protection as set out in Commission Decision 2010/87/EU, as updated, amended, replaced or superseded from time to time by the UK government; "**UK GDPR**" means the GDPR as transposed into United Kingdom national law by operation of section 3 of the European Union (Withdrawal) Act 2018 and as amended by the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019; and

1.2.7    "**Personal Data**", "**Process**", "**Controller**", "**Processor**", "**Data Subject**", "**Supervisory Authority**" and "**Personal Data Breach**" shall have the meanings given to them in the Data Protection Laws.

**2.      Controller Terms**

2.1      FTI and the Client will each act as separate and individual Controllers in relation to any Personal Data (including, without limitation, Personal Data relating to any of the Client's workers, FTI's workers, any litigation or arbitration opponent or customer or vendor or transaction partner) Processed by the Client or FTI to deliver the services set out under the Contract.

2.2      FTI and the Client will each comply with its own respective obligations under the Data Protection Laws in relation to their Processing of Personal Data under the Contract. In particular, the Client will ensure that any disclosures of Personal Data to FTI are lawful, and, in each case where necessary under the Data Protection Laws, the Client has notified and secured the consent of the relevant Data Subjects.

2.3      FTI may appoint Processors as required to deliver the services, who will process the Personal Data on FTI's behalf and at FTI's direction. Further, FTI may disclose Personal Data to other Controllers:

2.3.1      where necessary to deliver the services (including, but without limitation, law firms, accountants, other third party experts and any member of FTI's group of companies); or

2.3.2      pursuant to a legally binding written request, an order or request of a court of competent jurisdiction or any governmental or regulatory authority or where disclosure is required by applicable law or regulation ("**Legal Process**"). In relation to any Legal Process, FTI shall assess the lawfulness of the request before responding, and shall take any steps required by Data Protection Laws to protect Personal Data prior to its disclosure (including, without limitation, with respect to data minimization and data security);

2.4      In respect of any Restricted Transfer subject to the GDPR, the parties hereby enter into Module 1 of the EEA Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which is hereby incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer. The parties make the following selections for the purposes of Module 1:

2.4.1      Clause 7 – *Docking clause* shall apply;

2.4.2      Clause 11(a) – *Redress* the optional language shall not apply;

2.4.3      Clause 13(a) – *Supervision*

2.4.3.1      Where Client is established in an EU Member State, the following shall apply: "The supervisory authority with responsibility for ensuring compliance by the data exporter with Regulation (EU) 2016/679 as regards the data transfer shall be the supervisory authority of the Member State in which Client is established or (if different) the lead supervisory authority of the Client in respect of a cross-border processing activity". OR

2.4.3.2      Where Client is not established in an EU Member State, but falls within the territorial scope of application of the GDPR in accordance with Article 3(2) and has appointed a representative pursuant to Article 27(1) of the GDPR the following shall apply: "*The supervisory authority of the Member State in which the representative within the meaning of Article 27(1) of Regulation (EU) 2016/679 is established, shall act as competent supervisory authority.*" OR

2.4.3.3      Where Client is not established in an EU Member State, but falls within the territorial scope of application of the GDPR in accordance with Article 3(2) without however having to appoint a representative the following shall apply: "*The supervisory authority of one of the Member States in which the data subjects whose personal*

*data is transferred under these Clauses in relation to the offering of goods or services to them, or whose behaviour is monitored, are located, as indicated in Annex I.C. shall act as competent supervisory authority.*

2.4.4   Clause 17 – *Governing law* "Option 1" shall apply and the "Member State" shall be the Republic of Ireland;

2.4.5   Clause 18 – *Choice of forum and jurisdiction* the Member State shall be the Republic of Ireland;

2.4.6   Annex 1 – the data exporter is Client and the data importer is FTI (in each case as identified, including in relation to their places of establishment, in the Principal Agreement) and the description of transfer is deemed to be as described in Annex 1 to this Schedule;

2.4.7   Annex 2 – the technical and organizational security measures are deemed to be as described in Annex 2 to this Schedule; and

2.4.8   Annex 3 – not applicable.

2.5   In respect of any Restricted Transfer subject to the UK GDPR, the parties hereby enter into the UK Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which are incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer. For the purposes of clause II h) of the UK Standard Contractual Clauses, the Parties shall be deemed to have selected option (iii).   Annex 2 to the UK Standard Contractual Clauses shall be deemed to be prepopulated with the relevant sections of the Annex to this Schedule.  If at any time the UK government approves the EEA Standard Contractual Clauses for use under the UK GDPR, the provisions of paragraph 2.4 shall apply in place of this paragraph 2.5 in respect of Restricted Transfers subject to the UK GDPR, subject to any modifications to the EEA Standard Contractual Clauses required by the UK GDPR (and subject to the governing law of the EEA Standard Contractual Clauses being English law).

2.6   The Client acknowledges and agrees that certain Processors or Controllers engaged by FTI under paragraph 2.3 may be located in places that may require cross-border transfers of Personal Data. In respect of transfers by FTI to such Controllers or Processors, FTI will take steps in accordance with the Data Protection Laws to ensure an adequate level of protection for the Personal Data Processed by such Processors or Controllers.  Where such a Controller or Processor notifies FTI that it may no longer be able to provide an adequate level of protection in accordance with Data Protection Laws, FTI shall independently assess the level of protection provided and, where necessary, shall take mitigating steps to improve the level of protection or, where this is not possible, terminate the transfer.

2.7   The Client acknowledges that FTI's email records are replicated onto a Microsoft 365 Cloud system in the United States of America and the Client hereby consents that any Personal Data that is provided to FTI by email will be replicated accordingly. To the extent that the Client wishes to transmit certain information or data to FTI and the Client objects to that data being replicated in accordance with this paragraph, the Client will use a communication or transmission method other than e-mail or will use an alternative e-mail system.

**SCHEDULE C**

## <u>FTI CONSULTING CALIFORNIA DATA PROTECTION SCHEDULE</u>

This California Data Protection Schedule ("Schedule") forms part of the contract for services to which it is an attachment (the "Contract") between the client party identified in the Contract (the "Client") and the relevant FTI Consulting group entity identified in the Contract ("FTI"). FTI will be functioning as a service provider.

1. Processing of Personal Information.
   In connection with FTI's provision of services to Client under the Contract, if FTI receives any personal information (as such term is defined under the California Consumer Privacy Act) from or on behalf of Customer, then FTI:

   (a) will only process such personal information for the purpose of providing the services;

   (b) will not retain, use, or disclose such personal information for any purpose other than to perform the services or outside of the direct business relationship between FTI and Client;

   (c) will not sell, rent, release, disclose, disseminate, make available, transfer or otherwise communicate such personal information to any third party for monetary or other valuable consideration; and

   (d) certifies that it understands the restrictions on its processing of such personal information as set forth in this sentence, and will comply with them.

FTI may disclose personal information to FTI's service providers in connection with such service providers providing services to FTI, and FTI may permit such service providers to process personal information as necessary for FTI to provide the services to Client.

## Annex 1: Description of Personal Data Processing

This Annex includes certain details of the Processing of Personal Data by FTI under the Principal Agreement.

1. **Subject matter and duration of the Processing of the Personal Data**

   The subject matter and duration of the Processing of the Personal Data are set out in the Principal Agreement and this Schedule.

2. **The nature and purpose of the Processing of the Personal Data**

   FTI is engaged to provide Services to Client which involve the Processing of Personal Data. The scope of the Services are set out in the Principal Agreement, and the Client Personal Data will be Processed by FTI for purposes determined by it, in connection with the delivery of those Services and compliance with the terms of the Principal Agreement, including this Addendum, as well as applicable laws.

3. **The types of the Personal Data to be Processed**

   Client customer or employee information which may be collected in the course of delivering consulting and advisory services to Client, including name, title, gender, personal contact details (address, telephone number, email address), work address, work email, work telephone numbers, job title, and other types of Personal Data supplied by the Client to FTI pursuant to the Principal Agreement.

4. **The categories of Data Subject to whom the Personal Data relates**

   The categories of Data Subjects are determined by the nature of the client engagement, the details of which are covered in the Principal Agreement.

5. **The obligations and rights of Client**

   The obligations and rights of Client are set out in the Principal Agreement and this Schedule.

6. **Frequency of Restricted Transfers (where applicable):**

   As necessary to deliver Services for the duration of the Principal Agreement.

7. **The period for which Personal Data subject to Restricted Transfers will be retained (where applicable):**

   In accordance with FTI's data retention policies, copies of which are available upon request.

<u>**Annex 2: Technical and Organizational Security Measures**</u>

FTI Consulting maintains the following technical and organizational security measures when processing Personal Data for its clients.

- Measures of pseudonymisation and encryption of personal data

When data at rest leaves our direct control (such as backup tapes, removable hard drives, etc.) the data is encrypted using AES 256-bit encryption. All laptops utilize full disk encryption. Data that is in transit over public circuits is encrypted in transit using SSL. FTI Consulting additionally deploys firewalls throughout its networks to allow and deny specific network traffic using key indicators such as source/destination address, source/destination port, etc.

- Measures for ensuring ongoing confidentiality, integrity, availability and resilience of processing systems and services Measures for ensuring the ability to restore the availability and access to personal data in a timely manner in the event of a physical or technical incident

FTI requires new employees/contractors to acknowledge receipt of the following policies including: Code of Ethics and Business Conduct, Anti-Corruption Policy,
Acceptable Use of Technology Resources, Confidentiality Agreement, Employee Handbook
Policy on Inside Information & Insider Trading, and Time Recording Policy.

FTI Consulting has a documented policy for business continuity and disaster recovery that has been approved by management, communicated properly and is maintained and reviewed. The general details are reflected in the FTI Consulting Information Security Policy. The recovery point objective exceeds 4 hours and the recovery time objective exceeds 24 hours. The specific tools used for backups vary by region.

- Processes for regularly testing, assessing and evaluating the effectiveness of technical and organisational measures in order to ensure the security of the processing

FTI has access to all major vendor security bulletins and have controls over identifying, scheduling, testing, and deploying patches. The deployment time is 14 days for high and within 24 hours for critical/emergency patches.

FTI has controls over identification of vulnerabilities, risk ranking, reporting, and remediation. This includes perimeter vulnerability scans that must be performed at least quarterly and semi-annual internal vulnerability scans that cover workstations, servers, and network devices.

FTI performs internal penetration test to identify flaws in the internal security controls that could allow an attacker to surreptitiously gain access to sensitive data and/or disrupt critical business systems. The organization must also perform external network penetration test to identify potential vulnerabilities which could be exploited to gain access to systems and data or to establish a foothold into internal network from which to launch further attacks.

FT's cybersecurity team tracks the resolution of vulnerabilities. Vulnerabilities that are not resolved as part of patching cycles must be tracked on a vulnerability log or similar mechanism.

- Measures for user identification and authorization

FTI uses unique IDs and if generic IDs should be disabled unless there is an approved security exception. FTI users authenticate through Active Directory (AD), SSO used when possible, and remote connection requires two factor authentication and leverages FTI's Corporate DUO two factor technology. Duo Security generates passcodes (similar to a PIN Code) to mobile devices for login and can receive push notifications for easy

updates. Duo Security is integrated with OneLogin (our SSO platform) providing a unified authentication solution.

Privileged and remote access must include multi-factor authentication and secure mechanisms (e.g., TACACs+, RADIUS) must be used on all network devices.

FTI password complexity (i.e. characters, length), lockout settings, expiration settings meets the following requirements:

- Contain both upper and lower case characters (e.g., a-z, A-Z)
- Have digits and punctuation characters as well as letters e.g., 0-9,!@#$%^&*()_+|~-=\`{}[]:";'<>?,./)
- Contains at least 12 characters for standards accounts and 15 characters in length for admin accounts
- Must be changed at least every 90 days
- Are not words in any language, slang, dialect, jargon, etc.
- Are not based on Confidential Information, names of family, etc.
- User accounts are locked after 10 unsuccessful logins. Account lockout for 30 mins. Reset after 30 mins.
- Password history - 24 passwords remembered

Passwords are stored protected in an encrypted format.

- Measures for the protection of data during transmission and measures for the protection of data during storage

FTI has Data Loss Prevention (DLP) and extrusion prevention tools that restrict sending sensitive data over unsecure mail. Anomalies that exceed the normal traffic patterns are noted and appropriate action is taken to address them.

FTI protects data in transmission which include the following acceptable methods:

- Email: Transport Layer Security ("TLS") Internet protocol, which provides security for all email transmissions over the public Internet may be setup with using opportunistic or mandatory TLS connections. Only TLS 1.2 or TLS 1.3 is acceptable.

- "Mailbox to mailbox" encryption that secures email messages and electronic files (using 256-bit AES encryption).

- Secure FTP: FTP utilizes TLS or SSH to allow us to share data with clients securely over the Internet. Only TLS 1.2 or TLS 1.3 is acceptable.

- External Encrypted Drive: Must use FIPS 140-2/AES 256-bit encryption or stronger.

- File Stores: Matter/Engagement related files stored centrally on the network are secured so that only those explicitly authorized can access the files.

FTI stores data in an environment that is not internet facing and segregated from the demilitarized zone by a firewall. The data must be logically segregated from other client or corporate data. Different tools may be employed depending upon the nature and/or location of the work.

- Measures for ensuring physical security of locations at which personal data are processed

Specific physical security provisions vary depending on office location, however, as per the Information Security policy, access to company premises, including delivery and loading areas, must require badge access. Badge

access is managed by local facilities or ITG, who use a badge kiosk to produce access badges.  All badge issuances and updates require management approval.

- Measures for ensuring events logging

FTI logs activity which is stored for 7 years. Data is logged at sufficient level (i.e. user ID, activity) and logging is enabled for the entire environment.  The logging must provide relevant information (i.e. authorized & unauthorized attempts, remote access). System event and audit logs should capture the following events as applicable:
- Authentication failures
- Software or service failures
- Logon and use of privileged IDs
- Database changes
- Adding/deleting users
- Password Changes
- Adding/deleting groups and/or users associated with groups
- Changing audit log configuration or disabling audit subsystem

FTI uses SecureWorks which provides a Security Incident and Event Management (SIEM). The foundation of the SIEM includes Red Cloak endpoint event logs analysis, which includes an industry-leading assessment of current and zero-day threats and vulnerabilities.

- Measures for ensuring system configuration, including default configuration Measures for internal IT and IT security governance and management

FTI has processes in place to confirm compliance with configuration standards.  This includes a process for newly created device (i.e., checklist), at least annual reviews and hardening, removal of unnecessary / insecure services, and alarms set for key events (i.e. change in security group, configuration).

- Measures for certification/assurance of processes and products

FTI holds the Certified Enterprise designation from Verizon Cybertrust and participates in their Security Management Program (SMP).  The SMP is a comprehensive security risk reduction and certification program that addresses all aspects of proactive information security, from network and system analysis to physical and policy inspection.  The cornerstone of SMP is the International Standards Organization (ISO) standard 27002.

As part of the Cybertrust Third Party assessment schedule, FTI Consulting's Global Cybersecurity and Privacy function undergoes the following reviews by the Verizon Security Certification organization:

- Policy Review — evaluates the documentation and inspects the contents of key security policies — Annually.
- Process and Procedure Validation — Annually.
- Physical Inspection — evaluates the implementation of security controls in the physical environment surrounding critical network infrastructure, including doors, HVAC, entry logs, power redundancy, etc. — Annually.
- External Risk Assessments (Network and System-level scans) — Quarterly identifies possible risk areas in an organization's external network infrastructure and assesses its consistency with key controls.
- Penetration testing (External and Internal – Network and System-level) is conducted by a separate third-party — Annually.

Individual business units may hold additional certifications or use tools that are supported by additional certifications.

- Measures for ensuring data minimisation

FTI only acquires data for the intended purpose by working with the client or business partner to ensure only the minimum amount of necessary data is obtained.

- Measures for ensuring data quality

FTI Consulting is dedicated to providing its clients with high quality services that meet our standards of excellence and integrity. The quality of the work for each of our clients is monitored by the Senior Managing Directors responsible for each engagement along with the highly qualified colleagues in their practice teams and business segments. On a broader level, FTI sets the tone for our global organization in our Code of Conduct (https://www.fticonsulting.com/~/media/Files/us-files/our-firm/guidelines/fti-code-of-conduct.pdf) which discusses our commitment to quality throughout, and in particular in our Statement of Values.

FTI takes into account the principle of purpose limitation, while making sure that the data is adequate, relevant and not excessive for the legitimate purpose. FTI enables data subjects to exercise their rights, including the rights of access and, as appropriate, the rectification, erasure or blocking of Personal data and keep data accurate, and not retain it any longer than necessary.

- Measures for ensuring limited data retention

FTI has a records retention policy that ensures records are retained for required and necessary periods of time; providing that records which are no longer useful are properly destroyed; and providing that records to be retained are stored methodically and economically. FTI uses their reasonable and best efforts to prevent the premature destruction of Records. The organization must have processes to return data upon end of contract and destroy data using appropriate mechanisms upon Department of Defense (DoD) and National Institute of Standards and Technology (NIST) standards for all data bearing devices.

- Measures for ensuring accountability

FTI has a defined process to resolve complaints about privacy and its collection or use of personal information in compliance with the EU-US Privacy Shield Principles. FTI has measures in place to ensure complaints are resolved within 1 month. Unless otherwise dictated by local law, the exact number of days to comply with a request varies, depending on the month in which the request was made and is calculated based on the day the request is received plus one (regardless of whether the day is a working day or not) until the corresponding calendar date in the next month.

- Measures for allowing data portability and ensuring erasure

FTI receives requested Personal Data directly or provide access to a tool which allows the requestor to extract the information themselves using a self-service type model.

The Personal Data requested is required to be provided in a format and structure which is commonly used and machine-readable. The following machine-readable formats:

- CSV: (Comma separated values) a format that stores tabular data (numbers and text) in plain-text form;
- PDF: (Portable Document Format) a file format used mainly to represent documents such that layout will stay the same independent of the system environment;

- XML: (eXtensible Markup Language) a markup language that defines a set of rules for encoding documents in a format that can be both human and machine readable;
- JSON: (JavaScript Object Notation) a machine-readable data format derived from the JavaScript language used for representing simple data structures and associative arrays; or
- HTML: (HyperText Markup Language) the main markup language for displaying web pages and other information in a web browser.

FTI has a data erasure process in place to track and manage responses, and, as necessary, provide updates to the relevant regulatory authority and/or input into management reports. The organization must verify the identity of the data subject before disclosing any personal information. The organization should only refuse to comply with an erasure request if it is "manifestly unfounded or excessive" or, alternatively may elect to charge a "reasonable fee." The response is in written communication together with the documents containing the proper erasure of data.

## Exhibit B

**Hinkelman Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
nicole.greenblatt@kirkland.com
francis.petrie@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
spencer.winters@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF ANDREW HINKELMAN**
**IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**FTI CONSULTING, INC. AS FINANCIAL ADVISOR AS OF THE PETITION DATE**

---

[1]    The last four digits of Debtor Invitae Corporation's tax identification number are 1898.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae.  The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

Pursuant to 28 U.S.C. § 1746, Andrew Hinkelman, declares as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. ("FTI"), an international consulting firm.  I am authorized to submit this declaration (the "Declaration") on behalf of FTI in support of the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor as of the Petition Date* (the "Application")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for an order authorizing the employment and retention of FTI as financial advisor under the terms and conditions set forth in the Application.

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or by employees of FTI under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## Disinterestedness and Eligibility

3.      In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates, and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI.  A list of the parties reviewed is reflected on Schedule A to this Declaration.  FTI's review, completed under my supervision, consisted of a query of the Schedule A parties within an internal computer database[3] containing names of individuals and entities that are present or recent former clients of FTI.  A summary of the relationships that FTI identified during this process is set forth on Schedule B to this Declaration.

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

[3]    For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

4.      Based on the results of its review, except as otherwise discussed herein, FTI does not have a relationship with any of the parties listed on <u>Schedule A</u> in matters related to the Debtors or these chapter 11 cases.  FTI has provided, and could reasonably be expected to continue to provide, services unrelated to the Debtors' cases for the various entities shown on <u>Schedule B</u>.  FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services.  To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in the Debtors' cases, nor does FTI's involvement in these cases compromise its ability to continue such consulting services.

5.      In addition to the relationships disclosed on <u>Schedule B</u>, FTI discloses the following:

- The Debtors initially engaged FTI in July 2021, in connection with its initial financial planning project, and continued to do so through several separate engagement letters, including during the prepetition period, where FTI supported the Debtors' finance organization with the development of a long-range plan as well as the execution of two operational restructurings.[4]

- In 2022 and 2023, the Debtors retained FTI's strategic communications segment to provide various finance-related strategic communications services.  In 2022, the Debtors also retained FTI's forensic and litigation consulting segment to assist with ensuring that compensation for certain referrals met fair market value guidelines.

- It is my understanding that Weill Cornell Medical College is a creditor of the Debtors.  Upon information and belief, Weill Cornell Medical College is an affiliate of Weill Cornell Medicine.  Stephen C. Robinson, a member of the board of directors of FTI Consulting, Inc. is currently a member of the board of trustees of Weill Cornell Medicine.  To the best of my knowledge, Mr. Robinson does not have any professional involvement in this matter in any capacity.  For the avoidance of

---

[4]    The Debtors engaged FTI pursuant to that certain engagement letter dated July 15, 2021, as amended by that certain addendum to the engagement letter dated October 14, 2021 as further amended by that certain second addendum to the engagement letter dated May 23, 2022, as further amended by that certain third addendum to the engagement letter dated December 13, 2022, as further amended by that certain fourth addendum to the engagement letter dated May 10, 2023, as further amended by that certain fifth addendum to the engagement letter dated July 24, 2023, as further amended by that certain sixth addendum to the engagement letter dated September 26, 2023.

doubt, neither Weill Cornell Medical College nor Weill Cornell medicine are clients of FTI.

- It is my understanding that Duke Energy Corporation is a creditor of the Debtors. Nicholas C. Fanandakis, a member of the board of directors of FTI Consulting, Inc., is also a member of the board of directors of Duke Energy Corporation. To the best of my knowledge, Mr. Fanandakis does not have any professional involvement in this matter in any capacity.

6. As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these chapter 11 cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which FTI is to be employed and none are in connection with the Debtors' chapter 11 cases.

7. FTI is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search

4

described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtors or their estates. Therefore, FTI believes it is eligible to represent the Debtors under Bankruptcy Code section 327(a).

8.      It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

**Professional Compensation**

9.      Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the corresponding Local Rules, orders of this Court, and the Fee Guidelines, FTI will seek payment for compensation in tenth-of-an-hour increments, plus reimbursement of actual and necessary expenses incurred by FTI, such as travel, lodging, meals, third party duplications, messenger, and telephone charges, as approved by the Court. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application. These hourly rates are adjusted periodically, typically on an annual basis. I believe that the fee structure as set forth in the Application is reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11.

10.     To the extent FTI utilizes independent or third party contractors or subcontractors (the "Contractors") in the provision of services to the Debtors, FTI will (i) pass through the fees of such Contractors at the same rate that FTI pays the Contractors and (ii) seek reimbursement for actual costs of the Contractors only. In addition, FTI will ensure that each Contractor will file a

separate declaration evidencing its disinterestedness in these chapter 11 cases as required by the Bankruptcy Code and Bankruptcy Rules.

11.     According to FTI's books and records, during the ninety (90) days before the Petition Date, FTI received advanced payments totaling $5,063,124.65 (the "Retainer") from the Debtors for professional services performed and expenses incurred pursuant to the Original Engagement Letter.  FTI has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.  FTI will disclose the amounts or credits held, if any, as of the Petition Date in its first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors.  The unapplied residual Retainer, estimated to total approximately $550,000, will be withheld until the end of these chapter 11 cases and applied to FTI's final approved fees and expenses in these proceedings.  To the extent that this amount exceeds FTI's fees, charges and disbursements upon the completion of these chapter 11 cases, FTI will refund any unused portion back to the Debtors.

12.     To the best of my knowledge, there is no agreement or understanding between FTI and any nonaffiliated person or entity for sharing compensation received or to be received for services that FTI personnel may perform in connection with these chapter 11 cases.

*[Remainder of page intentionally left blank.]*

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 14, 2024         */s/ Andrew Hinkelman*
_____
                                    Andrew Hinkelman
                                    Senior Managing Director
                                    FTI Consulting, Inc.

## Schedule A

### List of Potential Parties in Interest

***Debtor Entities***

Invitae Corporation

ArcherDX, LLC

ArcherDX Clinical Services, Inc. (f/k/a Baby Genes)

Ciitizen LLC

Genosity, LLC

Genetic Solutions LLC, d/b/a Genelex

***Non-Debtor Affiliates and Minority-Owned Affiliates***

Ommdom, Inc.

Orbicule BVBA dba Diploid

Genelex India Private Limited

Invitae Canada, Inc.

Invitae Australia Pty Ltd.

Invitae Latvia, SIA

Invitae Japan KK

Invitae (Singapore) Pte Ltd

Invitae Israel, Inc. Ltd.

Invitae Netherlands, BV

Good Start Genetics, Inc.

YouScript LLC

Prompt Genomics, LLC

MedNeon, LLC

***Current Directors and Officers***

Ken Knight

Ana Schrank

David Sholehvar

Tom Brida

Robert Guigley

Desarie French

Hoki Luk

Randy Scott, Ph.D.

Eric Aguiar

Geoffrey S. Crouse

Jill Frizzley

Christine M. Gorjanc

Kimber Lockhart

Chitra Nayak

W. Michael Korn, M.D.

William H. Osborne

***Former Directors and Officers***

Sean Emerson George

Jason W Myers

Eric Olivares

Karthik Suri

Layton Wedgeworth

Katherine Stueland

Lisa Janssen Alderson

Jeff Parsons

Jackson Finks

Robert Nussbaum

Robert Dickey IV

Yafei (Roxi) Wen

Robert Werner

Lee Bendekgey

Jim Stuart

David McManus

Sandra Pace

Beth Young Karlan

Melanie Duquette

Alex Furman

***Restructuring Professionals***

Moelis & Company

FTI Consulting, Inc.

Kirkland & Ellis LLP

Deloitte & Touche LLP

***Ordinary Course Professionals Used in Last Three Years***

Ernst & Young LLP

Cole Schotz P.C.

Kurtzman Carson Consultants LLC

Ernst & Young LLP

Compensia Inc

Equiniti Trust Company LLC

Pillsbury Winthrop Shaw Pittman LLP

Jensen Baird Gardner & Henry

Gordon Rees Scully Mansukhani, LLP

McCarter & English, LLP

Cooley LLP

Heamanson, Guzman & Wang

Ogletree Deakins

Weil, Gotshal & Manges LLP

Paul, Weiss, Rifkind, Warton & Garrison LLP

2

Wolf, Greenfield, & Sacks, P.C.

Zuckerman Spaeder LLP

Sterne, Kessler, Goldstein & Fox, PLLC

Coblentz, Patch, Duffy & Bass, LLP

Goldfarb Gross Seligman & Co

Hogan Lovells US LLP

Hanson Bridgett LLP

Carpmaels & Ransford LLP

Nixon Peabody LLP

Latham & Watkins LLP

Blake, Cassels & Graydon LLP

Ulmer & Berne LLP

Al Tamimi & Company Advocates and Legal Consultants

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

Baker & McKenzie LLP

Bryan Cave Leighton Paisner LLP

K. Valdemara 11a. Riga, LV-1364

Mewburn Ellis LP

Womble Bond Dickinson

Law Office of Brad Simon

ZAB Ellex Klavins, SIA

WFBM, LLP

Latvia Pty Ltd Transactions

Nicholson De Vos Webster & Elliot LLP

Farnan LLP

### *Parties to Litigation*

Premier Diagnostics, LLC

Natera, Inc.

Tecan Genomics, Inc.

Qiagen Sciences, LLC

### *Parties to Litigation - Opposing Counsel*

Goodwin Procter LLP

Groombridge, Wu, Baughman & Stone LLP

McDermott Will & Emery LLP

Quinn Emanuel Urquhart & Sullivan, LLP

Beverly Hills Trial Attorneys

Skelton Taintor & Abbott

Foley Hoag LLP

Alvandi Law Group P.C.

Ted K. Lippincott Esp., Levine & Blit LLP

Matern Law Group, PC

Meridian Law, PLLC
Scott S. Nakama, Ladva Law Firm
Offices of Claire Cochran
Morris, Nichols, Arsht & Tunnell LLP

***Equity Holders of Greater Than 5%***
ARK Investment Management LLC
BlackRock Institutional Trust Company, N.A.
Nikko Asset Management Co., Ltd.
The Vanguard Group, Inc.
Sumitomo Mitsui Trust Holdings, Inc.  ("SMTH")

***Debtholders***
Softbank Group
Chimera Investment LLC
Baker Brothers Advisors LP
Baker Brothers Life Sciences LP
Deerfield Management Company LP

***Potential Lienholders***
Perceptive Credit Holdings II, LP
US Bank Trust Company, National Association
Pacific Western Bank
Silicon Valley Bank
State of California Employment Development Department Lien Group
Internal Revenue Service
NFS Leasing, Inc
People's United Bank
Sterling National Bank
Thermo Fisher Financia Services, Inc
Western Capital Technologies, Llc
De Lage Landen Financial Services, Inc
Greatamerica Financial Services Corporation
36th Street Capital Partners, Llc
Corporate Service Company

***Lienholders***
Deerfield Management Company LP

***Restructuring Professionals***
Perella Weinberg Partners L.P.
ArentFox Schiff
Wollmuth Maher & Deutsch LLP

Sullivan & Cromwell LLP

***Top 30 Creditors***
U.S. Bank Trust Company, National Association
Salesforce.com Inc.
Illumina, Inc.
Amazon Web Services Inc.
Federal Express Corporation dba FEDEX
Agilent Technologies
Workday, Inc.
Redox Inc.
ACCO Engineered Systems Inc.
Klick USA Inc.
DNA Genotek
EPAM Systems, Inc.
Genematters LLC
Streck LLC
Reef Flatiron LLC
GBF Inc.
Prosegur Services Group, Inc.
ASB De Haro Place, LLC
Quantumsoft, Inc
RREEF America REIT II Corp, PPP
UnitedHealthcare
Tecan Genomics, Inc.
Amacon Wespark Investment Corp
Alton Tech ADA LLC
Centennial Owner LLC
APB Owner LLC
449 Broadway LLC
Selig Holdings Company, LLC
Hohbach Realty Company LP

***Unsecured Noteholders of Greater Than 5%***
SoftBank Group Corp.
Braidwell LP

***Unsecured Creditors Committee***
Wilmington Savings Fund Society, Federal Savings Bank
Chimtech Holding Ltd.

***Unsecured Noteholders of Greater Than 5%***
Context Capital Management LLC

***Restructuring Professionals***

Lazard Frères & Co. LLC

White & Case LLP

Morrison & Foerster LLP

***Major Lease Counterparties***

Woodbridge Executive LLC

1400 16th Street LLC

Integrated DNA Technologies, Inc.

Reef Flatiron LLC

RREEF America REIT II Corp, PPP

Amacon Wespark Investment Corp

Alton Tech ADA LLC

Centennial Owner LLC

APB Owner LLC

Fiverr, Inc. (Sublessee)

449 Broadway LLC

ASB De Haro Place, LLC

Selig Holdings Company, LLC

Hohbach Realty Company LP (Lessor)

Aspira Women's Health, Inc

Hohbach Realty Company LP

W Projects (No. 36) Pty Ltd

***Major Customers***

Kaiser Permanente Southern California

City of Hope Precision Medicine Only

Kaiser Permanente Mid Atlantic States

Kaiser Oakland Genetics

Genome Medical

Kaiser Permanente - Sacramento Genetics

Eugene Labs

King Hussein Cancer Center

Centre Hospitalier de l'Université de Montréal CHUM

Kaiser Permanente San Jose Genetics

GENDA SA

Genometrics

Arbor Diagnostics

HCA Laboratories UK

Virtus Diagnostics

Kaiser Permanente Northwest

Walter Reed National Military Center Bethesda

6

Children's Hospital Colorado
Kaiser Permanente San Francisco Genetics
Nationwide Children's Hospital
Aeglea BioTherapeutics, Inc.
Alector LLC
Alnylam Pharmaceuticals, Inc.
Amicus Therapeutics US, Inc.
Aspa Therapeutics, Inc.
Astrazeneca Pharmaceuticals LP
AstraZeneca Singapore Pte Ltd
Behind the Seizure Canada
Biogen MA, Inc.
BiogenIQ Inc.
BioMarin Pharmaceutical Inc.
Brain Neurotherapy Bio, Inc.
Calcilytix Therapeutic Inc.
Catalyst Pharmaceuticals, Inc.
Catalyst Health Solutions, Inc.
Clementia Pharmaceuticals Inc.
CRISPR Therapeutics AG
Decibel Therapeutics Inc.
Eidos Therapeutics, Inc.
Enzyvant Therapeutics, Inc.
Hemoshear Therapeutics, Inc.
Horizon Health Fredericton
Horizon Pharma USA, Inc.
Janssen Research & Development, LLC
Kyowa Kirin Canada, Inc.
Kyowa Kirin Pharmaceutical Development Limited
Kyowa Kirin Inc.
LabConnect LLC
Yaya Foundation for 4H Leukodystrophy
Marinus Pharmaceuticals
Myokardia, Inc.
Neurogene, Inc
PellePharm, Inc.
Pfizer Inc.
Pharming Healthcare Inc.
Prevail Therapeutics, Inc.
PTC Therapeutics GT, Inc.
Reata Pharmaceuticals, Inc.
Regeneron Pharmaceuticals, Inc.
Repare Therapeutics, Inc.

Roche SMA sponsored testing
Sanofi- Aventis Australia Pty Ltd.
Spark Therapeutics, Inc.
Stoke Therapeutics Inc.
Strongbridge U.S., Inc.
Ultragenyx Pharmaceuticals, Inc.
Verve Therapeutics, Inc.
X4 Pharmaceuticals, Inc.
Zogenix International Limited

***Major Vendors***
Illumina, Inc.
Federal Express Corporation dba FEDEX
Amazon Web Services Inc.
Kintetsu World Express, Inc.
Verinata Health, Inc.
Agilent Technologies
GBF Inc.
Integrated DNA Technologies, Inc.
EPAM Systems, Inc.
Rightway Healthcare, Inc.
Salesforce.com Inc.
Woodruff-Sawyer & Co
Eved LLC
Prosegur Services Group, Inc.
DNA Genotek
Target CW
COVARIS, INC.
SADA Systems, Inc.
JetBridge Software, Inc.
Fisher Scientific Company, LLC
Klick USA Inc.
Omega Bio-Tek, Inc.
Kaiser Permanente
Connor Group
Genematters LLC
Xifin
Quantumsoft, Inc
Life Technologies Corporation
Streck LLC
[CONFIDENTIAL]

***Insurance Providers / Sureties***

Federal Insurance Company

Chubb Insurance Company of Canada

AIG Australia Limited

Beazley Insurance Company, Inc.

ACE American Insurance Company

Corvus Insurance Agency, LLC

AXIS Surplus Insurance Company

Allied World Specialty Insurance Company

Liberty Surplus Insurance Corporation

XL Specialty Insurance Company

Hudson Insurance Company

Vantage Risk Assurance Company

Old Republic Insurance Company

Ascot Specialty Insurance Company

RSUI Indemnity Company

National Union Fire Insurance Company of Pittsburgh, Pa.

AIG Specialty Insurance Company

AXIS Insurance Company

Arch Insurance Company

Chubb Custom Insurance Company

Chubb National Insurance Company

The Hanover Insurance Company

***Letters of Credit Beneficiaries***

W Projects (No. 36) Pty Ltd

Allied Real Estate Ltd.

Sidra Medicine

***Bankruptcy Judges for District of New Jersey***

Michael B. Kaplan

Rosemary Gambardella

Christine M. Gravelle

Andrew B. Altenburg, Jr.

Vincent F. Papalia

John K. Sherwood

Jerrold N. Poslusny, Jr.

Stacey L. Meisel

***Bankruptcy Judges - Staff***

Thomas C. Walsh

Lucy Veloz-Jimenez

Robert Heim

Sharon Moore

Charlene Richardson

Zelda Haywood
Maria Figueria
Juan Filgueiras
Mariela Primo
Ntorian Pappas
Nancy Figueroa
Bruce Jackson
Michael Gilmore
Diane Lipcsey
Rachel Stillwell
Michael Brown
Wendy Quiles
Kiya Martin
Sean Quigley
Margie McGettigan
Marie Flynn
Chris Fowler
Kathleen Ryan
Catherine McAuley
Heather Renye
Anthony Sodono

***US Trustees for District of New Jersey***
Martha Hildebrandt
Aleda Alfaro
Kirsten K. Ardelean
Francyne D. Arendas
Michael Artis
Lauren Bielskie
Peter J. D'Auria
David Gerardi
Tia Green
Joseph C. Kern
Daniel C. Kropiewnicki
Maggie McGee
Tina L. Oppelt
Angeliza Ortiz-Ng
Robert J. Schneider, Jr.
Adam Shaarawy
Jeffrey Sponder
Fran B. Steele
James Stives
Rachel Wolf

William J. Ziemer
Andrew R. Vara

***Utility Providers***
AT&T
City & County of San Francisco dba SF Public Utilities Commission
Cox Communications, Inc.
Duke Energy Corporation
Irvine Ranch Water District
Pacific Gas and Electric Company dba PG&E
Public Service Company of North Carolina Incorporated
Southern California Edison Company
Southern California Gas Company dba The Gas Company: SoCalGas
Town of Cary
Verizon Business Network Services Inc, dba Verizon
Verizon Communication Inc.
XCEL Energy

***Depository Banks***
SVB Financial Group
U.S. Bancorp
HSBC Bank USA
HSBC Holdings plc
JP Morgan Chase & Co.

***Administrative Agents***
U.S. Bank Trust Company, National Association

***Taxing Authorities***
Arizona Department of Revenue
California Franchise Tax Board
Colorado Department of Revenue
Connecticut Department of Revenue Services
District of Columbia Office of Tax and Revenue
Florida Department of Revenue
Georgia Department of Revenue
State of Hawaii – Department of Taxation
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Kansas Department of Revenue
Kentucky Department of Revenue
Maine Revenue Services

Maryland Department of Revenue

Massachusetts Department of Revenue

Michigan Department of Treasury

Minnesota Department of Revenue

Missouri Department of Revenue

Nebraska Department of Revenue

New Hampshire Department of Revenue Administration

New Jersey Division of Taxation

NYS Corporation Tax

NYC Department of Finance

Oregon Department of Revenue

Rhode Island Division of Taxation

South Carolina Department of Revenue

Alabama Department of Revenue

City of Bowling Green, Kentucky Treasury

Louisiana Department of Revenue

Mississippi Secretary of State

North Carolina Department of Revenue

Pennsylvania Department of Revenue

Tennessee Department of Revenue

Utah State Tax Commission

Virginia Department of Taxation

Wisconsin Department of Revenue

California Department of Tax and Fee Administration

Georgia Department of Revenue

North Carolina Department of Revenue

San Francisco Treasurer and Tax Collector

County of Orange Treasurer and Tax Collector

County of Santa Clara Department of Tax and Collections

Alameda County Treasurer and Tax Collector

San Diego County Treasurer and Tax Collector

Jefferson County Treasurer

Boulder County Treasurer

Wake County Tax Administration

King County Treasury

Australian Taxation Office

India Income Tax Department

Brazil Ministry of Finance

Canada Revenue Agency

National Tax Agency Japan

Israel Tax Authority

Belastingdienst/Apeldoorn

Inland Revenue Authority of Singapore

Federal Public Service Finances of Belgium
Latvia State Revenue Service
Washington State Department of Revenue
State of Delaware - Division of Corporations
Ohio Department of Taxation

***Government/***
***Regulatory Agencies***
New York Stock Exchange
US Patent and Trademark Office
California Department of Public Health
College of American Pathologists
NYS Department of Health
Pennsylvania Department of Health
Rhode Island Department of Health
New Jersey Department of Health

***Contract Counterparties***
Advanced Package Engineering LLC
Argonaut Manufacturing Services, Inc.
Federal Association of German Pathologists e.V.
Compass Group USA, Inc.
Cummins Inc.
EMCOR Services Northeast
EY Reviseurs d'Entreprises/Bedrijfsrevisoren BV
ExtraView Corporation
Heritage Global Partners, Inc.
Heritage Global Partners, Inc.
Hyet Nocarbon USA, Inc.
Ideagen Plc.
j2 Cloud Services, Inc.
Janitronics, Inc
CenturyLink Communications, LLC d/b/a Lumen Technologies Group
Murphy Company
Pricewaterhouse Coopers LLP
Proquis, Inc.
Six Sigma Solutions International, Inc.
Telos Scientific LLC
The Genes Talk
The Genes Talk
Thermo Fisher Scientific Baltics UAB
Zuckerberg San Francisco General Hospital, Division of Cardiology
Southcentral Foundation

Adventist Health

Advanced Reproductive Health Center, Ltd (fka Chicago IVF)

Dr. Aimee Eyvazzadeh Inc.

ARCPoint Franchise Group

ARCPoint Franchise Group

ARCPoint Labs of Humble

ARUP Laboratories, Inc.

Atelier Health

BocaFertility

Boston Medical Center

Bristol-Myers Squibb Company

Baylor Research Institute d/b/a Baylor Scott & White Research Institute

Michael E Debakey VA Medical Center VISN16 Telegenomics

California Excellent Fertility

California Excellent Fertility, Inc.

California Fertility Partners

California IVF

Cancer Care Northwest

Children's Hospital of Wisconsin, Inc

CHRISTUS Santa Rosa Health System

Children's Health System of Texas

City of Philadelphia, acting through its Department of Public Health Medical Examiner's Office

Comanche County Memorial Hospital

Confluence Health

Cooper Clinic

Cooper Donor Institute

County of San Mateo Coroner's Office

Delaware Division of Forensic Science

Dental College of Georgia

Dental College of Georgia

Fertility Centers of Illinois

Fertility Center of Southern California

Fertility Center of Southern California

Fertility Answers

Fertility Care of Orange County

Fertility Center of Southern California

Fertility Solutions

Forensic Medical Holdings Of Kansas, LLC

Forensic Medical Holdings of Kansas, LLC

Forensic Medical Holdings Of Kansas, LLC

Fresno Community Hospital and Medical Center dba Community Regional Medical Center

Genome Medical, Inc.

Group Health Cooperative of South Central Wisconsin

14

Texas Health Houston Gulf States Hemophilia Center

Gulf States Hemophilia Center

Harris County Institute of Forensic Sciences

HCA Health Services of Oklahoma, Inc., d/b/a OU Medical System

High Profile Laboratory Testing Services

Incinta Fertility

InVia Fertility

The Regents of the University of Michigan on behalf of University of Michigan Autopsy and Forensic Services

Jackson County Medical Examiner's Office

Kaiser Foundation Hospitals & Kaiser Foundation Health Plan

Kane County Coroner's Office

King County Medical Examiner's Office

Little Zebra Fund - San Francisco Public Health

Lorain County Coroner's Office

Lorain County Coroner's Office

Los Angeles Reproductive Center LARC

MAPS Public Benefit Corporation

Mary Hitchcock Memorial Hospital

Madison Avenue Inc.

MD2 Wellesley

MD2 Wellesley

University of Texas MD Anderson Cancer Center, a Clinical Cancer Genetics Program

MDVIP

MDVIP, LLC

Department of Veterans Affairs Michael E Debakey VA Medical Center

Department of Veterans Affairs Michael E Debakey VA Medical Center

Department of Veterans Affairs Michael E Debakey VA Medical Center

Midwest Fertility Specialist

My Blooming Health Lab Inc.

My Blooming Health Lab Inc.

New Hampshire Office of the Chief Medical Examiner

Neway Fertility

Nueces County Medical Examiner

Ochsner Clinic Foundation

Ada County

Phoenician Operating LLC

Phoenix Children's Hospital, Inc.

Pinnacle Fertility

Pinnacle Fertility

Private Health Dallas

Providence Health & Services - Washington, d/b/a Providence Inland Northwest

Providence Health & Services - Washington, d/b/a Providence Health Care

Reproductive Fertility Center Orange County Irvine
Reproductive Fertility Center
Rise Fertility
Rockefeller Fertility Center
San Diego Fertility
San Diego Fertility
Scripps Executive Health Medical Group, Inc.
Scripps Health
Shodair Children's Hospital
Shriners Children's Texas
Shriners Children's Texas
Southern California Center for Reproductive Medicine
Southcentral Foundation
Southern California Center for Reproductive Medicine
Spring Creek Fertility
St. Jude's Children's Research Hospital Inc.
St Louis City Medical Examiner's Office
St. Louis Medical Examiner's Office
Suffolk Medical Examiner
SUFFOLK MEDICAL EXAMINER
Texas Fertility Center
The Fertility Center of Las Vegas
The Boob Bus
The Association for Women's Health Care - Chicago & Northbrook
Thermo Fisher Scientific
Trinity Cancer Care Center
UAB Health Systems
University of Michigan Autopsy and Forensic Services
The Rector & Visitors of the University of Virginia on behalf of its medical center
University of Texas Health Houston Gulf States Hemophilia Center
Lab Medicine Svc., VA Medical Center
Vanderbilt University Medical Center
Variety Children's Hospital dba Nicklaus Children's Hospital
Washington University School of Medicine in St. Louis
The Washington University in St. Louis
The Washington University in St. Louis
Weill Cornell Medical College
Xytex Laboratories
Your Family Fertility PLLC
HCA International Limited
Advance Radiologia
Alberta Reproductive Centre
Beam Radiology

16

Biron Medical Laboratory Inc.

Box Hill Hospital

Calvary Mater Newcastle

Centre Hospitalier de l'Université de Montréal (CHUM)

CENTRO DE ATENCION E INVESTIGACION EN SALUD MENTAL KAELUM NEUROCENTER

Centre hospitalier de l'Université Laval (CHUL-CHU de Quebec)

CIRCULO MEDICO GMM.

CIRCULO MEDICO GMM.

Cristian Irela Aranda Sánchez

Elite Wellness Center

Fem Surgery Pte Ltd

Fem Surgery Pte Ltd

Fertilidad 360 SAPI DE CV

Fertilys Inc

Fertilys Inc.

First Steps Fertility

FUNDACION DE OJOS VIDAURRI

Fundacion Santos y de la Garza Evia, I.B.P.

Genetica Medical & Wellness Centre

Genea Pty Ltd

Genea Pty Ltd.

Genetics B&C

Instituto para la Salud del Nino y del Adolescente S.C.

Invest-Med

King Square Medical Centre

Los Cabos Childrens Foundation

Onco Life Centre

María Irma Olvera Alvarez

Midtown Medical Clinic

M por Tres de Mexico, SC

Odry Neurogenetica y Genetica Clinica

Odry Neurogenetica Y Genetica Clinica

Online Genetic Counselling Services Inc, (BAHAR)

Princess Margaret Cancer Centre

Quautli Angel Bonfi Uribe

ReGen Scientific Inc

Salud y Bienestar Industrial S.A. de C.V.

Sergen Molecular Diagnostics

Signature Health

Singapore Breast Surgery Center Pte Ltd

SOG-NATALIE CHUA CLINIC FOR WOMEN

SuperDNA Sdn Bhd

Tall Tree Integrated Health Centre
The Gene Council
University Hospital Geelong
Victory Reproductive Care
Western Health, Sunshine Hospital

***Potential Sale Process Counterparties***
[CONFIDENTIAL]

## **Schedule B**

**Client Connections**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| ACE American Insurance Company | Insurance Providers / Sureties | ACE American Insurance Company is a current client in matters unrelated to the Debtors. |
| Adventist Health | Insurance Providers / Sureties | Adventist Health is a current client in matters unrelated to the Debtors. |
| Agilent Technologies | Top 30 Creditor/Major Vendor | Agilent Technologies is a current client in matters unrelated to the Debtors. |
| AIG Australia Limited | Insurance Providers / Sureties | AIG Australia Limited is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| AIG Specialty Insurance Company | Insurance Providers / Sureties | AIG Specialty Insurance Company is a current client in matters unrelated to the Debtors. |
| Al Tamimi & Company Advocates and Legal Consultants | Ordinary Course Professionals Used in Last Three Years | Al Tamimi & Company Advocates and Legal Consultants is a current client in matters unrelated to the Debtors. |
| Alector LLC | Major Customers | Alector LLC is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Allied World Specialty Insurance Company | Insurance Providers / Sureties | Allied World Specialty Insurance Company is a current client in matters unrelated to the Debtors. |
| Amazon Web Services Inc. | Top 30 Creditor/Major Vendor | Amazon Web Services Inc. is a current client in matters unrelated to the Debtors. |
| Arch Insurance Company | Insurance Providers / Sureties | Arch Insurance Company is a current client in matters unrelated to the Debtors. |
| ArcherDX Clinical Services, Inc. (f/k/a Baby Genes) | Debtor Entities | ArcherDX Clinical Services, Inc. (f/k/a Baby Genes) is a current client and is subject to this retention application. |
| ArcherDX, LLC | Debtor Entities | ArcherDX, LLC is a current client and is subject to this retention application. |
| ArentFox Schiff | Restructuring Professionals | ArentFox Schiff is a current client in matters unrelated to the Debtors. |
| ARK Investment Management LLC | Equity Holders of Greater Than 5% | ARK Investment Management LLC is a current client in matters unrelated to the Debtors. |
| Astrazeneca Pharmaceuticals LP | Major Customers | Astrazeneca Pharmaceuticals LP is a current client in matters unrelated to the Debtors. |
| AT&T | Utility Providers | AT&T is a current client in matters unrelated to the Debtors. |
| Australian Taxation Office | Taxing Authorities | Australian Taxation Office is a current client in matters unrelated to the Debtors. |
| AXIS Insurance Company | Insurance Providers / Sureties | AXIS Insurance Company is a current client in matters unrelated to the Debtors. |
| AXIS Surplus Insurance Company | Insurance Providers / Sureties | AXIS Surplus Insurance Company is a current client in matters unrelated to the Debtors. |

| | | |
|---|---|---|
| Baker & McKenzie LLP | Ordinary Course Professionals Used in Last Three Years | Baker & McKenzie LLP is a current client in matters unrelated to the Debtors. |
| Baker, Donelson, Bearman, Caldwell & Berkowitz, PC | Ordinary Course Professionals Used in Last Three Years | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC is a current client in matters unrelated to the Debtors. |
| Beazley Insurance Company, Inc. | Insurance Providers / Sureties | Beazley Insurance Company, Inc. is a current client in matters unrelated to the Debtors. |
| BioMarin Pharmaceutical Inc. | Major Customers | BioMarin Pharmaceutical Inc. is a current client in matters unrelated to the Debtors. |
| Blake, Cassels & Graydon LLP | Ordinary Course Professionals Used in Last Three Years | Blake, Cassels & Graydon LLP is a current client in matters unrelated to the Debtors. |
| Boston Medical Center | Contract Counterparties | Boston Medical Center is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Bristol-Myers Squibb Company | Contract Counterparties | Bristol-Myers Squibb Company is a current client in matters unrelated to the Debtors. |
| Bryan Cave Leighton Paisner LLP | Ordinary Course Professionals Used in Last Three Years | Bryan Cave Leighton Paisner LLP is a current client in matters unrelated to the Debtors. |
| Carpmaels & Ransford LLP | Ordinary Course Professionals Used in Last Three Years | Carpmaels & Ransford LLP is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors |
| Catalyst Pharmaceuticals, Inc. | Major Customers | Catalyst Pharmaceuticals, Inc. is a current client in matters unrelated to the Debtors. |
| CenturyLink Communications, LLC d/b/a Lumen Technologies Group | Contract Counterparties | CenturyLink Communications, LLC d/b/a Lumen Technologies Group is a current client in matters unrelated to the Debtors. |
| Children's Hospital Colorado | Major Customers | Children's Hospital Colorado is a current client in matters unrelated to the Debtors. |
| Children's Hospital of Wisconsin, Inc | Contract Counterparties | Children's Hospital of Wisconsin, Inc is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Chimera Investment LLC | Debtholders | Chimera Investment LLC is a current client in matters unrelated to the Debtors. |
| Chubb Insurance Company of Canada | Insurance Providers / Sureties | Chubb Insurance Company of Canada is a current client in matters unrelated to the Debtors. |
| City & County of San Francisco dba SF Public Utilities Commission | Utility Providers | City & County of San Francisco dba SF Public Utilities Commission is a current client in matters unrelated to the Debtors. |
| Coblentz, Patch, Duffy & Bass, LLP | Ordinary Course Professionals Used in Last Three Years | Coblentz, Patch, Duffy & Bass, LLP is a current client in matters unrelated to the Debtors. |
| Cole Schotz P.C. | Restructuring Professionals | Cole Schotz P.C. is a current client in matters unrelated to the Debtors. |
| Confluence Health | Contract Counterparties | Confluence Health is a current client in matters unrelated to the Debtors. |

| Cooley LLP | Ordinary Course Professionals Used in Last Three Years | Cooley LLP is a current client in matters unrelated to the Debtors. |
|---|---|---|
| Cox Communications, Inc. | Utility Providers | Cox Communications, Inc. is a current client in matters unrelated to the Debtors. |
| CRISPR Therapeutics AG | Major Customers | CRISPR Therapeutics AG is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Cummins Inc. | Contract Counterparties | Cummins Inc. is a current client in matters unrelated to the Debtors. |
| De Lage Landen Financial Services, Inc | Potential Lienholders | De Lage Landen Financial Services, Inc is a current client in matters unrelated to the Debtors. |
| Decibel Therapeutics Inc. | Major Customers | Decibel Therapeutics Inc. is a current client in matters unrelated to the Debtors. |
| Deloitte & Touche LLP | Restructuring Professionals | Deloitte & Touche LLP is a current client in matters unrelated to the Debtors. |
| Duke Energy Corporation | Utility Providers | Duke Energy Corporation is a current client in matters unrelated to the Debtors. |
| Ernst & Young LLP | Restructuring Professionals | Ernst & Young LLP is a current client in matters unrelated to the Debtors. |
| Farnan LLP | Ordinary Course Professionals Used in Last Three Years | Farnan LLP is a current client in matters unrelated to the Debtors. |
| Federal Express Corporation dba FEDEX | Top 30 Creditor/Major Vendor | Federal Express Corporation dba FEDEX is a current client in matters unrelated to the Debtors. |
| Federal Insurance Company | Insurance Providers / Sureties | Federal Insurance Company is a current client in matters unrelated to the Debtors. |
| Fisher Scientific Company, LLC | Major Vendor | Fisher Scientific Company, LLC is a current client in matters unrelated to the Debtors. |
| Foley Hoag LLP | Parties to Litigation - Opposing Counsel | Foley Hoag LLP is a current client in matters unrelated to the Debtors. |
| Fresno Community Hospital and Medical Center dba Community Regional Medical Center | Contract Counterparties | Fresno Community Hospital and Medical Center dba Community Regional Medical Center is a current client in matters unrelated to the Debtors. |
| Genetic Solutions LLC, d/b/a Genelex | Debtor Entities | Genetic Solutions LLC, d/b/a Genelex is a current client and is subject to this retention application. |
| Genosity, LLC | Debtor Entities | Genosity, LLC is a current client and is subject to this retention application. |
| Goodwin Procter LLP | Parties to Litigation - Opposing Counsel | Goodwin Procter LLP is a current client in matters unrelated to the Debtors. |
| Gordon Rees Scully Mansukhani, LLP | Ordinary Course Professionals Used in Last Three Years | Gordon Rees Scully Mansukhani, LLP is a current client in matters unrelated to the Debtors. |
| Groombridge, Wu, Baughman & Stone LLP | Parties to Litigation - Opposing Counsel | Groombridge, Wu, Baughman & Stone LLP is a current client in matters unrelated to the Debtors. |

| Hanson Bridgett LLP | Ordinary Course Professionals Used in Last Three Years | Hanson Bridgett LLP is a current client in matters unrelated to the Debtors. |
|---|---|---|
| Hogan Lovells US LLP | Ordinary Course Professionals Used in Last Three Years | Hogan Lovells US LLP is a current client in matters unrelated to the Debtors. |
| HSBC Bank USA | Depository Banks | HSBC Bank USA is a current client in matters unrelated to the Debtors. |
| HSBC Holdings plc | Depository Banks | HSBC Holdings plc is a current client in matters unrelated to the Debtors. |
| Ideagen Plc. | Contract Counterparties | Ideagen Plc. is a current client in matters unrelated to the Debtors. |
| Illumina, Inc. | Top 30 Creditor/Major Vendor | Illumina, Inc. is a current client in matters unrelated to the Debtors. |
| Internal Revenue Service | Potential Lienholders | Internal Revenue Service is a current client in matters unrelated to the Debtors. |
| Invitae Corporation | Debtor Entities | Invitae Corporation is a current client and is subject to this retention application. |
| Janssen Research & Development, LLC | Major Customers | Janssen Research & Development, LLC is a current client in matters unrelated to the Debtors. |
| JP Morgan Chase & Co. | Depository Banks | JP Morgan Chase & Co. is a current client in matters unrelated to the Debtors. |
| Kaiser Foundation Hospitals & Kaiser Foundation Health Plan | Contract Counterparties | Kaiser Foundation Hospitals & Kaiser Foundation Health Plan is a current client in matters unrelated to the Debtors. |
| Kaiser Permanente | Major Vendor | Kaiser Permanente is a current client in matters unrelated to the Debtors. |
| Kirkland & Ellis LLP | Restructuring Professionals | Kirkland & Ellis LLP is a current client in matters unrelated to the Debtors. |
| Kyowa Kirin Inc. | Major Customers | Kyowa Kirin Inc. is a current client in matters unrelated to the Debtors. |
| Latham & Watkins LLP | Ordinary Course Professionals Used in Last Three Years | Latham & Watkins LLP is a current client in matters unrelated to the Debtors. |
| Liberty Surplus Insurance Corporation | Insurance Providers / Sureties | Liberty Surplus Insurance Corporation is a current client in matters unrelated to the Debtors. |
| McCarter & English, LLP | Ordinary Course Professionals Used in Last Three Years | McCarter & English, LLP is a current client in matters unrelated to the Debtors. |
| McDermott Will & Emery LLP | Parties to Litigation - Opposing Counsel | McDermott Will & Emery LLP is a current client in matters unrelated to the Debtors. |
| Moelis & Company | Restructuring Professionals | Moelis & Company is a current client in matters unrelated to the Debtors. |
| Morris, Nichols, Arsht & Tunnell LLP | Parties to Litigation - Opposing Counsel | Morris, Nichols, Arsht & Tunnell LLP is a current client in matters unrelated to the Debtors. |
| Morrison & Foerster LLP | Restructuring Professionals | Morrison & Foerster LLP is a current client in matters unrelated to the Debtors. |

4

| | | |
|---|---|---|
| Natera, Inc. | Parties to Litigation | Natera, Inc. is a current client in matters unrelated to the Debtors. |
| National Union Fire Insurance Company of Pittsburgh, Pa. | Insurance Providers / Sureties | National Union Fire Insurance Company of Pittsburgh, Pa. is a current client in matters unrelated to the Debtors. |
| Nationwide Children's Hospital | Major Customers | Nationwide Children's Hospital is a current client in matters unrelated to the Debtors. |
| Nixon Peabody LLP | Ordinary Course Professionals Used in Last Three Years | Nixon Peabody LLP is a current client in matters unrelated to the Debtors. |
| Ogletree Deakins | Ordinary Course Professionals Used in Last Three Years | Ogletree Deakins is a current client in matters unrelated to the Debtors. |
| Old Republic Insurance Company | Insurance Providers / Sureties | Old Republic Insurance Company is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Pacific Gas and Electric Company dba PG&E | Utility Providers | Pacific Gas and Electric Company dba PG&E is a current client in matters unrelated to the Debtors. |
| Pacific Western Bank | Potential Lienholders | Pacific Western Bank is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Paul, Weiss, Rifkind, Warton & Garrison LLP | Ordinary Course Professionals Used in Last Three Years | Paul, Weiss, Rifkind, Warton & Garrison LLP is a current client in matters unrelated to the Debtors. |
| Pfizer Inc. | Major Customers | Pfizer Inc. is a current client in matters unrelated to the Debtors. |
| Pillsbury Winthrop Shaw Pittman LLP | Ordinary Course Professionals Used in Last Three Years | Pillsbury Winthrop Shaw Pittman LLP is a current client in matters unrelated to the Debtors. |
| Prevail Therapeutics, Inc. | Major Customers | Prevail Therapeutics, Inc. is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Pricewaterhouse Coopers LLP | Contract Counterparties | Pricewaterhouse Coopers LLP is a current client in matters unrelated to the Debtors. |
| Providence Health & Services - Washington, d/b/a Providence Health Care | Contract Counterparties | Providence Health & Services - Washington, d/b/a Providence Health Care is a current client in matters unrelated to the Debtors. |
| Providence Health & Services - Washington, d/b/a Providence Inland Northwest | Contract Counterparties | Providence Health & Services - Washington, d/b/a Providence Inland Northwest is a current client in matters unrelated to the Debtors. |
| Quinn Emanuel Urquhart & Sullivan, LLP | Parties to Litigation - Opposing Counsel | Quinn Emanuel Urquhart & Sullivan, LLP is a current client in matters unrelated to the Debtors. |
| Regeneron Pharmaceuticals, Inc. | Major Customers | Regeneron Pharmaceuticals, Inc. is a current client in matters unrelated to the Debtors. |
| RSUI Indemnity Company | Insurance Providers / Sureties | RSUI Indemnity Company is a current client in matters unrelated to the Debtors. |

| Salesforce.com Inc. | Top 30 Creditors/Major Vendors | Salesforce.com Inc. is a current client in matters unrelated to the Debtors. |
|---|---|---|
| Scripps Health | Contract Counterparties | Scripps Health is a current client in matters unrelated to the Debtors. |
| Signature Health | Contract Counterparties | Signature Health is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| Silicon Valley Bank | Potential Lienholders | Silicon Valley Bank is a current client in matters unrelated to the Debtors. |
| Softbank Group | Debtholders | Softbank Group is a current client in matters unrelated to the Debtors. |
| SoftBank Group Corp. | Unsecured Noteholders of Greater Than 5% | SoftBank Group Corp. is a current client in matters unrelated to the Debtors. |
| Southern California Edison Company | Utility Providers | Southern California Edison Company is a current client in matters unrelated to the Debtors. |
| Southern California Gas Company dba The Gas Company: SoCalGas | Utility Providers | Southern California Gas Company dba The Gas Company: SoCalGas is a current client in matters unrelated to the Debtors. |
| Streck LLC | Top 30 Creditors/Major Vendors | Streck LLC is a current client in matters unrelated to the Debtors. |
| Sullivan & Cromwell LLP | Restructuring Professionals | Sullivan & Cromwell LLP is a current client in matters unrelated to the Debtors. |
| The Hanover Insurance Company | Insurance Providers / Sureties | The Hanover Insurance Company is a former client of the firm (within the last 2 years) in matters unrelated to the Debtors. |
| The Vanguard Group, Inc. | Equity Holders of Greater Than 5% | The Vanguard Group, Inc. is a current client in matters unrelated to the Debtors. |
| Thermo Fisher Scientific | Contract Counterparties | Thermo Fisher Scientific is a current client in matters unrelated to the Debtors. |
| U.S. Bancorp | Depository Banks | U.S. Bancorp is a current client in matters unrelated to the Debtors. |
| Ulmer & Berne LLP | Ordinary Course Professionals Used in Last Three Years | Ulmer & Berne LLP is a current client in matters unrelated to the Debtors. |
| UnitedHealthcare | Top 30 Creditors | UnitedHealthcare is a current client in matters unrelated to the Debtors. |
| US Bank Trust Company, National Association | Potential Lienholders/Administrative Agent | US Bank Trust Company, National Association is a current client in matters unrelated to the Debtors. |
| Vanderbilt University Medical Center | Contract Counterparties | Vanderbilt University Medical Center is a current client in matters unrelated to the Debtors. |
| Verve Therapeutics, Inc. | Major Customers | Verve Therapeutics, Inc. is a current client in matters unrelated to the Debtors. |
| Weil, Gotshal & Manges LLP | Ordinary Course Professionals Used in Last Three Years | Weil, Gotshal & Manges LLP is a current client in matters unrelated to the Debtors. |
| White & Case LLP | Restructuring Professionals | White & Case LLP is a current client in matters unrelated to the Debtors. |

| | | |
|---|---|---|
| Wilmington Savings Fund Society, Federal Savings Bank | Unsecured Creditors Committee | Wilmington Savings Fund Society, Federal Savings Bank is a current client in matters unrelated to the Debtors. |
| Wolf, Greenfield, & Sacks, P.C. | Ordinary Course Professionals Used in Last Three Years | Wolf, Greenfield, & Sacks, P.C. is a current client in matters unrelated to the Debtors. |
| Wollmuth Maher & Deutsch LLP | Restructuring Professionals | Wollmuth Maher & Deutsch LLP is a current client in matters unrelated to the Debtors. |
| Womble Bond Dickinson | Ordinary Course Professionals Used in Last Three Years | Womble Bond Dickinson is a current client in matters unrelated to the Debtors. |
| XCEL Energy | Utility Providers | XCEL Energy is a current client in matters unrelated to the Debtors. |
| XL Specialty Insurance Company | Insurance Providers / Sureties | XL Specialty Insurance Company is a current client in matters unrelated to the Debtors. |