NOT FOR PUBLICATION

<table>
<tr><td>

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J.
LBR 9004-1(b)**

</td><td rowspan="2">

Case No. 24-11362 (MBK)

Hearing Date: May 7, 2024

Chapter 11

Judge:  Michael B. Kaplan

</td></tr>
<tr><td>

In Re:

INVITAE CORPORATION, et al.,

Debtors

</td></tr>
</table>

*All Counsel of Record*

**MEMORANDUM DECISION**

This matter comes before the Court on an Application (the "Retention Application," ECF No. 158) filed by Debtor Invitae Corporation, et al. ("Debtors") seeking to retain Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("K&E") as Attorneys for the Debtors and Debtors in Possession.  The Official Committee of Unsecured Creditors (the "Committee") filed a Limited Objection (ECF No. 283).  The Office of the United States Trustee ("UST") also filed an Objection (ECF No. 322).  Interested party, Deerfield Partners, L.P., filed a Statement in Response to the objections (ECF No. 336); and Debtors submitted a Reply (ECF No. 363).  The parties also submitted a Joint Stipulation of Undisputed Facts regarding the Retention Application (the "Joint Stipulation," ECF No. 454).  The Court fully considered the parties' submissions, as well as the arguments raised during the hearing on May 7, 2024.  At the conclusion of the hearing, the Court granted the Retention Application and indicated that it would supplement its oral ruling with a written opinion.  The following constitutes the written basis for the Court's oral ruling.

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## II.      Background and Procedural History

In 2023—prior to filing for bankruptcy—the Debtors entered into a transaction with Deerfield L.P. and certain of its affiliates ("Deerfield") whereby Deerfield became Debtors' senior secured noteholder (the "Transaction").  It is undisputed that Deerfield is the largest secured creditor, holding approximately 79% of Debtors' debt. *Joint Stipulation* ¶ 11, ECF No. 454.  It is likewise undisputed that K&E was not involved in the Transaction in any capacity for either rhte Debtors or Deerfield.  Following the Transaction, in September 2023, Debtors engaged with K&E with regard to preparation for a possible chapter 11 proceeding.  After filing their voluntary Chapter 11 bankruptcy petition on February 13, 2024, Debtors sought to formally retain K&E as bankruptcy counsel.  The objections to the Retention Application are based on K&E's concurrent representation of Deerfield, who initially retained K&E in 2021. *Id.* At ¶ 14.  K&E continues to represent Deerfield in certain matters unrelated to the bankruptcy case. *Id.* at ¶¶ 16, 17.

The Committee explains that the Transaction will likely be a "central issue" in this bankruptcy proceeding, meaning that a successful challenge to the Transaction could result in "hundreds of millions of dollars of additional recovery to unsecured creditors." *Committee's Objection* ¶ 1, ECF No. 283.  As such, the Committee asserts that "any evaluation, prosecution, or settlement of matters related to the [Transaction] should be transparent, comprehensive, and

perhaps most important, performed by unconflicted, independent counsel and fiduciaries." *Id.*  The Committee contends that K&E is unable to perform such an independent evaluation due to its simultaneous representation of parties involved in the Transaction.  Thus, the Committee submits that K&E's representation is prohibited under 11 U.S.C. § 327(a) and asks that this Court limit the scope of K&E's representation in this case essentially to matters that do not involve Deerfield.

The UST likewise asserts that "as a result of its prior and current representation of Deerfield . . . it appears that K&E is not disinterested and holds an adverse interest against the estate." *UST's Objection* ¶ 14, ECF No. 322.   The UST requests that the Court deny the Retention Application in its entirety.

### III.    Discussion

Employment of counsel in bankruptcy cases is governed by § 327(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and the local rules of professional conduct. *See, e.g.*, *In re Jeep Eagle 17, Inc.*, 2009 WL 2132428, at *2 (Bankr. D.N.J. July 13, 2009).  Section 327 of the Bankruptcy Code provides that debtors in possession may, with court approval, employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. § 327(a).  The Bankruptcy Code defines the latter term, "disinterested persons," in relevant part, as those who do "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C); *see also In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022)).  An "adverse interest" is defined as "any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a rival

claimant." *In re Vascular Access Centers, L.P.*, 613 B.R. 613, 623 (Bankr. E.D. Pa. 2020) (quotations and citations omitted).

Third Circuit case law establishes that:

(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

*In re Marvel Ent. Grp., Inc*., 140 F.3d 463, 476 (3d Cir. 1998); *see also In re Boy Scouts of Am.*, 35 F.4th at 158 n.5 (collecting cases and explaining that § 327(a) "only allows disqualifications for adverse interests that exist at the time of retention").

While acknowledging that K&E is representing both the Debtors and Deerfield concurrently, the Court finds that such concurrent representation does not create a per se conflict that prohibits retention.  Indeed, to hold otherwise would ignore binding case law and § 327(c), which explicitly states that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, . . . unless there is an actual conflict of interest." 11 U.S.C. § 327(c).  For reasons discussed below, the Court concludes that no actual conflict exists, and that K&E is "disinterested" as that term is defined in the Code, *see* 11 U.S.C. § 101(14).

In support of its contention that an actual conflict exists, the Committee relies on Formal Opinion 05-434 issued on December 8, 2004 by the American Bar Association's Standing Committee on Ethics and Professional Responsibility (the "ABA Opinion").  As an initial matter, the ABA Opinion involves vastly different circumstances than those in the present case.  There, the situation involved merely one attorney and the issue arose in the context of the drafting of a

will: one client sought an attorney's assistance in disinheriting the attorney's other client, whom

the attorney represented in unrelated matters.  Here, however, the situation involves a large, global

firm in the context of complicated business transactions and a bankruptcy proceeding.

Nevertheless, despite the distinguishable factual circumstances, the ABA Opinion relies on Rule

1.7 of the ABA's Model Rules of Professional Conduct.  Indeed, K&E is bound by those Rules.[1]

Rule 1.7 provides that "a lawyer shall not represent a client if the representation involves

a concurrent conflict of interest."  The Rule further explains:

> A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client;
> > or
> >
> > (2) there is a significant risk that the representation of one or more clients
> > will be materially limited by the lawyer's responsibilities to another client,
> > a former client or a third person or by a personal interest of the lawyer.

Here, it is undisputed that K&E does not represent Deerfield in these bankruptcy

proceedings. *Joint Stipulation* at ¶ 20.  Instead, Deerfield is represented by two law firms: Sullivan

& Cromwell LLP and Wollmuth Maher & Deutsch LLP. *Id.*  Moreover, K&E was not counsel to

Debtors at the time of the Transaction, *id.* at ¶ 21, did not represent either party in the context of

the Transaction, and K&E's present representation of Deerfield pertains to matters wholly

unrelated to the pending Chapter 11 bankruptcy, *id.* at ¶ 14. Therefore, K&E's zealous

representation of Deerfield in other, unrelated matters does not present a significant risk that its

representation of the Debtors in this bankruptcy case will be in any way impacted or limited—and

Rule 1.7(a)(2) is not implicated.

---

[1] New Jersey's Rules of Professional Conduct mirror the ABA's Model Rules. *See* N.J. RULES PROF'L CONDUCT R.
1.7.

With respect to Rule 1.7(a)(1), the Court understands the Committee's arguments; namely, that K&E's investigation into the Transaction as part of its representation one of its clients (Debtors) may have a direct, adverse impact on the general legal rights of another client (Deerfield).  Even assuming, without finding, that K&E's representation of Debtors is directly adverse to Deerfield in these circumstances, the Committee's arguments ignore the parties' prepetition agreements; specifically, the conflict waivers.  As counsel for K&E highlighted during the hearing, Rule 1.7(b) of the Model Rules permits concurrent representation even where a conflict exists when—as relevant here—the affected clients give informed consent. *See* Model Rule of Professional Conduct 1.7(b)(4).  This exception is complimentary to the statute at issue, § 327(c), which—as stated—explicitly allows concurrent representation under certain circumstances.

The Court accords weight to the extensive and detailed waivers present in this case.  K&E's engagement letters with both Debtors and Deerfield explicitly acknowledge and advise that conflicts may arise.  Through evaluation of such engagement letters, both parties expressly provided their informed consent and waived any such potential conflicts.  The Court is mindful that K&E cannot draft engagement letters so as to avoid the requirements of § 327; however, it *can* draft engagement letters so that potential conflicts are waived.  It did so here.  The Court has reviewed K&E's engagement letter with Debtors, *Exhibit 1 to Retention Application* (the "Invitae Engagement Letter"), ECF No. 158 at 22-35, and highlights the following excerpts:

> **<u>Conflicts of Interest</u>**. As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.
>
> Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in

which its interests may diverge from those of the Firm's other clients, the possibility
exists that one of the Firm's current or future clients may take positions adverse to
Client (including litigation or other dispute resolution mechanisms) in a matter in
which such other client may have retained the Firm or one of Client's adversaries
may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other
clients or in the event one arises in the future, Client agrees to waive any such
conflict of interest or other objection that would preclude the Firm's representation
of another client (a) in other current or future matters substantially unrelated to the
Engagement or (b) other than during a Restructuring Case (as defined below), in
other matters related to Client (such representation an "Allowed Adverse
Representation"). By way of example, such Allowed Adverse Representations
might take the form of, among other contexts: litigation (including arbitration,
mediation and other forms of dispute resolution); transactional work (including
consensual and non-consensual merger, acquisition, and takeover situations,
financings, and commercial agreements); counseling (including advising direct
adversaries and competitors); and restructuring (including bankruptcy, insolvency,
financial distress, recapitalization, equity and debt workouts, and other transactions
or adversarial adjudicative proceedings related to any of the foregoing and similar
matters).

. . .

Restructuring Cases. If it becomes necessary for Client to commence a restructuring
case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the
Firm's ongoing employment by Client will be subject to the approval of the court
with jurisdiction over the petition. If necessary, the Firm will take steps necessary
to prepare the disclosure materials required in connection with the Firm's retention
as lead restructuring counsel. In the near term, the Firm will begin conflicts checks
on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the
Firm's relationships with certain interested parties (the "Disclosure Schedule").
The Firm will give Client a draft of the Disclosure Schedule once it is available.

*Invitae Engagement Letter*, ECF No. 158 at 27-28.


The Invitae Engagement Letter provides clear and detailed notice of potential conflicts.

Debtors—who are sophisticated entities—made an informed decision in choosing to waive any

potential conflict and proceed with K&E's representation, notwithstanding K&E's disclosures.

The Committee makes much of the fact that Debtors did not mention Deerfield by name in the Invitae Engagement Letter.  The Committee asserts that the failure to advise Debtors prior to the bankruptcy filing of a potential conflict with Deerfield, specifically, means that Debtors could not have given informed consent.  The Court respectfully disagrees.[2]  Debtors were sufficiently on notice that a large firm like K&E may also represent one of its creditors.  Not only is this common industry knowledge and practice,[3] K&E provided ample notice of this possibility in the Invitae Engagement Letter.  Further, as a follow-up to the Invitae Engagement Letter, K&E made disclosures that identified Deerfield in schedules. *See Exhibit B to Retention Application* (the "Winters Declaration"), ECF No. 158 at 36-63.

Ultimately, the Court finds the existence of the prepetition waivers significant. *See In re Marvel*, 140 F.3d 463 (citing failure to consider waiver of conflicts in finding that district court abused its discretion in denying retention).  The detailed communications gave notice to the clients that K&E can and does represent potentially adverse parties.  The Invitae Engagement Letter's expansive language—coupled with information in the disclosure schedules—withstands careful scrutiny and satisfies the Court that the parties (Debtors *and* Deerfield) gave informed consent when agreeing to the waivers. *See In re Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005) (stating that "the effect of a waiver, particularly a prospective waiver, depends upon whether the clients have given truly informed consent").

---

[2] The Court is cognizant that the engagement letter does not specifically identify Deerfield or any other K&E client. Given the breadth of K&E's global client base, reference to specific clients would be impracticable; to require otherwise would necessitate continuous updates and amendments to the engagement letter.  K&E maintains responsibility to apprise their clients of conflicts and did so here as part of the retention process.

[3] The Bankruptcy Code also explicitly recognizes and contemplates the situation where a debtor's chosen firm also represents a creditor. *See* 11 U.S.C. § 327(c) (stating that "a person is not disqualified for employment under this section solely *because of such person's employment by or representation of a creditor*") (emphasis added).

The Court also considers the competing economic interests.  It is undisputed that "[i]n 2023, K&E invoiced Deerfield $1,884,294 or 0.03% of K&E's annual revenue for that year." *Joint Stipulation* ¶ 16, ECF No. 454.  K&E has billed Deerfield under $2.4 million in total since the inception of their relationship, and has invoiced Deerfield only $36,610 year-to-date. *Id.*  While these sums are not insignificant, they are relatively de minimus when considered in the context of the total annual K&E revenues.  To be clear, the fact that K&E bills such a high amount is not a commentary on their worthiness of retention; nor does it offer them a free pass to skirt the rules.  Rather, case law instructs that the economic impact is a consideration that the Court should take into account in gauging material adversity. *See In re Marvel Ent. Grp., Inc.,* 140 F.3d at 469; *In re Boy Scouts of Am*., 35 F.4th at 158; *In re Art Van Furniture*, LLC, 617 B.R. 509, 519 (Bankr. D. Del. 2020) (stating that client "represented a de minimis component of its aggregate revenue in each of the last three years").  Here, the economics of the situation are such that they do not create any type of conflict or adverse interest that would warrant disqualification of K&E.  To the contrary, the Court concludes that K&E is a "disinterested person" for purposes of § 327(a).

"The professional seeking to be retained under § 327(a) bears the burden of establishing that it is 'both disinterested and [does] not represent an interest adverse to the estate.' " *In re Vascular Access Centers*, 613 B.R. at 624 (quoting *In re Big Mac Marine, Inc*., 326 B.R. 150, 154 (8th Cir. BAP 2005) (internal citations omitted)).  Here, guided by the Third Circuit's precedent in *In re Marvel*, the Court determines that K&E has satisfied such burden.  The Committee's and the UST's arguments to the contrary do not persuade this Court otherwise.  As discussed during the May 7, 2024 hearing, the Court does not view the circumstances of K&E's representation as remarkable.  Concurrent representations of debtors and creditors commonly arise in the bankruptcy context and are explicitly contemplated by the Bankruptcy Code.  Moreover, the record

demonstrates that K&E has served—and can continue to serve—the bankruptcy estate in a manner adverse as to Deerfield.  Indeed, in the recent sale process, Deerfield served as the stalking horse, but was not the successful bidder—resulting in a greater recovery for the estate.  Nothing presented to date suggests that K&E cannot zealously represent the debtor and the bankruptcy estate's interests.[4]

Further supporting this decision are policy considerations.  First, K&E argues—and the Committee acknowledges—that disqualification of K&E at this point in the bankruptcy would be detrimental both to the bankruptcy estate and the creditors.  Given the time and effort already invested by K&E and the circumstances of these chapter 11 cases—which may result in little, if any, recovery for unsecured creditors—disqualification of K&E would cause undue delay and significant additional expense.  Moreover, Debtors chose K&E to represent them in this bankruptcy case.  Where possible, debtors' choice of counsel should be afforded deference.  *See, e.g.*, *In re Straughn*, 428 B.R. 618, 626 (Bankr. W.D. Pa. 2010).

Finally, the Court considered the Committee's suggestion that—rather than disqualifying K&E altogether—the scope of its retention be limited to matters *not* involving Deerfield.  While, at first glance, this seems like a middle-ground, the Court finds it unworkable.  Simply put, the Court is loath to place such handcuffs on Debtors' counsel.  Deerfield is the major secured creditor in this bankruptcy case—holding nearly 79% of the debt.  Given Deerfield's role, any attempt to limit K&E's representation to work that does not impact Deerfield would be impractical, difficult to police, and engender further debate and contest.  It is likely that even the most minimal task will

---

[4] The Court notes that that three K&E lawyers who represent Deerfield have billed a collective 3.9 hours in this bankruptcy proceeding. *Joint Stipulation* ¶ 17, ECF No 454.  As discussed on the record during the May 7, 2024 hearing, K&E is directed to ensure that, going forward, *no attorneys working on Deerfield matters perform any work in the Debtors' bankruptcy case.*

affect Deerfield's interests and any meaningful work undertaken nearly certainly will.  The Court is unwilling to narrow the scope of K&E's retention as requested by the Committee.

## IV.    Conclusion

For the aforementioned reasons, the Court finds that K&E's retention under § 327(a) is appropriate.  The record does not establish the existence of either an actual conflict or a potential conflict that would warrant denial of the Retention Application.  K&E is a disinterested party whose interests are not adverse to the bankruptcy estate and whose conduct comports with the applicable rules of professional conduct.  Accordingly, the Court overrules the objections of the Committee and the UST and grants Debtors' Retention Application.  An appropriate Order was previously entered.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: May 16, 2024