| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br><br>**WHITE & CASE LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>J. Christopher Shore, Esq. (admitted *pro hac vice*)<br>(cshore@whitecase.com)<br>Harrison Denman, Esq. (admitted *pro hac vice*)<br>(harrison.denman@whitecase.com)<br>Andrew Zatz, Esq. (admitted *pro hac vice*)<br>(azatz@whitecase.com)<br>Samuel P. Hershey, Esq. (admitted *pro hac vice*)<br>(sam.hershey@whitecase.com)<br>Ashley Chase, Esq. (admitted *pro hac vice*)<br>(ashley.chase@whitecase.com)<br>Brett Bakemeyer, Esq. (admitted *pro hac vice*)<br>(brett.bakemeyer@whitecase.com)<br><br>**WHITE & CASE LLP**<br>555 S. Flower St., Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Aaron Colodny, Esq. (admitted *pro hac vice*)<br>(aaron.colodny@whitecase.com)<br><br>- and -<br><br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>Telephone: (973) 538-4006<br>Warren J. Martin Jr., Esq. (wjmartin@pbnlaw.com)<br>John S. Mairo, Esq. (jsmairo@pbnlaw.com)<br>Christopher P. Mazza, Esq. (cpmazza@pbnlaw.com)<br><br>*Co-Counsel to the Official Committee of Unsecured Creditors* | **Hearing Date:**<br>**June 11, 2024, at 11:30 a.m. (ET)** |

| In re: | Chapter 11 |
|---|---|
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) THE SOLICITATION AND VOTING PROCEDURES, (III) THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of the Debtors, by and through its undersigned counsel, hereby submits this objection (the "**Objection**") to the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 470] (the "**Disclosure Statement Motion**"). In further support of this Objection, the Committee respectfully states as follows:[2]

## OBJECTION

1. The Plan suffers from several legal deficiencies and cannot be confirmed in its present form. As will be addressed at confirmation and as described below, the Committee intends to object to the Plan on the basis that, among other things, (i) the releases of the trustee and collateral agent for the 2028 Senior Secured Notes (the "**Agent**"), Deerfield Partners L.P. (together with its affiliates, "**Deerfield**") and the other holders of the 2028 Senior Secured Notes (together

---

[1] The last four digits of Debtor Invitae Corporation's ("**Invitae**," and with its subsidiary debtors, the "**Debtors**") tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Disclosure Statement or the Plan (each as defined in the Disclosure Statement Motion), as applicable.

2

with Deerfield, the "**Secured Noteholders**") and the Debtors' directors and officers are improper and (ii) the Debtors will not have an impaired accepting class as required by section 1129(a)(10) of the Bankruptcy Code. These issues can all be addressed at confirmation. And, consistent with the Court's instruction, the parties intend to enter mediation soon and it is possible that many of these deficiencies, if not all, could be addressed by a settlement in the next month.

2. One particular flaw of the Plan, however, must be addressed by the Court now because it is otherwise incapable of being fixed without needless time and expense. Specifically, by the Disclosure Statement Motion, the Debtors seek authority to solicit only the members of Class 3 (holders of 2028 Senior Secured Notes Claims) and not unsecured creditors in Classes 4, 5 and 6.[3] The failure to solicit unsecured creditors means that their consent to the existing Plan (and any future modifications arising from a future settlement) will be unattainable on the current confirmation timetable pursued by the Debtors. As such, the Court should condition approval of the Disclosure Statement Motion on the solicitation of votes from all unsecured creditors.

3. The consent of unsecured creditors will be critical to confirmation of any plan of reorganization for several reasons. First, awarding all distributable value to the Secured Noteholders in Class 3 would be impermissible to the extent that their liens are determined to be invalid. That is exactly the relief sought by the Committee in its standing motion [Docket No. 526] (the "**Standing Motion**"). Rather than preserve these valuable causes of action, the Plan instead seeks to release them in exchange for nothing.[4] These free releases are unjustifiable. The Debtors' likely arguments to the contrary will not withstand scrutiny.[5] The Debtors appear to

---

[3] Plan, Art. III.B.3(d); III.B.4(c); III.B.5(c); III.B.6(c).

[4] *Id.*, Art. VIII.C.

[5] The Committee presumes the Debtors' justification for these releases because no explanation is provided in the Disclosure Statement. Instead, the Debtors simply state that they "will present evidence at the Confirmation

3

believe releases for the Secured Noteholders and the Agent are justified because these parties have consented to the use of cash collateral and have agreed to support a plan that pays administrative, priority, convenience, and subsidiary unsecured claims first. But these purported concessions are only meaningful if the liens securing the 2028 Senior Secured Notes are legitimate. They are not.[6] Therefore, any supposed value the Agent and the Secured Noteholders are providing is based on avoidable liens and is, thus, illusory.[7]

4. <u>Second</u>, the consent of the unsecured creditors will be necessary because of the large cash infusion upon closing of the Labcorp sale. Based on the results of the Debtors' sale process, the Debtors will have enough cash to pay the Secured Noteholders in full, even taking into account classes to be paid first under the Plan and assuming the 2028 Senior Secured Notes Claims are fully allowed.[8] Whatever justification the Debtors had to align themselves with Deerfield pursuant to the TSA at the outset of these cases no longer applies given the Debtors' current cash position. Now the Debtors have no excuse not to work with the Committee on an alternative plan that preserves estate causes of action and respects the rights and powers of unsecured creditors.

5. Not only does the Debtors' cash position render the Plan releases (and thus the Plan

---

Hearing to demonstrate the basis for and propriety of the release and exculpation provisions." Disclosure Statement, Art. IV.M.

[6] By the Debtors' own admission, the Plan cannot be confirmed if the liens securing the 2028 Senior Secured Notes are avoided. *See Debtors' Motion for Entry of an Order Scheduling the Hearing on the Committee's Standing Motion with the Hearing on Plan Confirmation, Together with Interim Dates and Deadlines* [Docket No. 548] ¶ 2 ("And granting the [Standing Motion] would be tantamount to denying confirmation to the Debtors' pending Plan, which is predicated on the validity, priority, and enforceability of the very debt obligations the Committee seeks to unwind and the settlement of alleged claims the Committee seeks to challenge.").

[7] The Committee intends to also demonstrate that free releases of the Debtors' officers and directors cannot be justified.

[8] The Committee has raised objections to the Agent and the Secured Noteholders' claims that, if successful, would not result in such claims being fully allowed in the amount asserted (including an impermissible make-whole). *See The Official Committee of Unsecured Creditors' Objection to the 2028 Senior Secured Note Claims [Claim Nos. 360, 378, 379, 380, 381, 382]* [Docket No. 528] (the "**Claims Objection**").

itself) invalid, it also will result in a lack of an impaired accepting class as is required under section 1129(a)(10) of the Bankruptcy Code.[9]  As stated above, under the Plan, Secured Noteholders in Class 3 are labeled as impaired and given the right to vote.  Holders of Parent Unsecured Claims in Class 6, who would receive any residual value after the 2028 Senior Secured Notes are paid in full under the Plan, are deemed to reject the Plan and are not able to vote on the Plan.[10]  By the Debtors' own admissions, this framework may not hold up.  Their own liquidation analysis shows that, at the high end of potential distributable value, the 2028 Senior Secured Notes would be paid in full while unsecured claims at Invitae would receive a 0.6% recovery.[11]  The Debtors have correctly stated on the record that unsecured creditors are the "fulcrum securities" in these Chapter 11 Cases.[12]  The Committee intends to demonstrate that the Secured Noteholders will get paid in full under any scenario.  And, if the Committee successfully pursues causes of action against the Agent and the Secured Noteholders or successfully disallows portions of the Agent and the Secured Noteholders' asserted claims, it will be even more evident that unsecured creditors have the exclusive power to approve or reject a plan.  Therefore, there is at least a possibility (if not a probability) that this will be the case and that no impaired accepting class will have accepted the Plan.[13]  Given that unsecured creditors will be (or at least may be) the only impaired class under

---

[9] Section 1129(a)(10) provides that a plan that has at least one class of impaired creditors can only be approved if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."  When no such impaired accepting class is present, a plan cannot be confirmed, and courts have declined to approve a disclosure statement on such grounds.  *See, e.g.*, *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 643 (Bankr. E.D. Pa. 1996) (denying approval of the debtor's disclosure statement because the debtor unsuccessfully attempted to create an impaired accepting class of creditors for its proposed plan); *cf. In re All Land Invs., LLC*, 468 B.R. 676, 693 (Bankr. D. Del. 2012) (denying confirmation of a plan under section 1129(a)(10) for lack of an impaired accepting class).

[10] *Id.*, Art. III.B.6(b)-(c).

[11] *See Notice of Filing Liquidation Analysis as an Exhibit to the Disclosure Statement* [Docket No. 535].

[12] May 7, 2024, Hr'g Tr. 48:19–21 [Docket No. 469].

[13] If it is determined that the Secured Noteholders would not receive payment in full under the Plan, the objection or rejecting vote of ***just one*** Secured Noteholder would defeat confirmation because the Plan would fail the "best

5

the Plan receiving any recovery, the Debtors should be required to solicit them.

6. <u>Third</u>, when it becomes clear that value will flow to unsecured creditors, there will be clarity for the Court as to how they view the so-called "settlements" of causes of action against the Agent, the Secured Noteholders, and the officers and directors who approved the transaction that allowed Deerfield and its hand-selected friends to vault themselves ahead of similarly-situated unsecured creditors. And, if the Debtors and the Committee are able to settle their differences and agree on a modified plan, general unsecured creditors could vote to accept and avoid the time and expense associated with resoliciting. The Court should not approve the Disclosure Statement Motion unless such solicitation is included.

7. The Committee also has submitted to the Debtors a proposed insert to be included in Section II of their Disclosure Statement setting forth the Committee's views, which is attached hereto as **Exhibit A**. The Debtors have agreed to include this insert in the Disclosure Statement, which resolves the Committee's objections that the Disclosure Statement does not provide adequate information.

## RESERVATION OF RIGHTS

8. The Committee reserves all rights with respect to the Disclosure Statement Motion, the Disclosure Statement, the Plan, or any revised, amended, or modified disclosure statement motion, disclosure statement, or plan the Debtors may file. The Committee submits this Objection without prejudice to, and with a full reservation of, the Committee's rights to supplement or amend this Objection at or before the hearing and present evidence at the hearing on the Disclosure Statement Motion. Nothing herein is intended to be a waiver by the Committee of any right,

---

interests of creditors" test in light of the 100% recovery for Secured Noteholders in a hypothetical chapter 7 liquidation in the Debtors' liquidation analysis.

6

objection, argument, claim or defense with respect to any matter, including matters involving the Disclosure Statement Motion, the Disclosure Statement, the Plan, any revised, amended, or modified versions thereof, the Standing Motion, or the Claims Objection, all of which are hereby expressly reserved.

## **CONCLUSION**

9. For the foregoing reasons, the Committee respectfully requests that the Court (i) deny the Disclosure Statement Motion unless general unsecured creditors in Classes 4, 5, and 6 are solicited and (ii) grant the Committee such other and further relief as the Court deems just and proper.

AMERICAS 127160623

Dated: June 6, 2024

By: */s/ John S. Mairo*
John S. Mairo, Esq.
Warren J. Martin Jr., Esq.
Christopher P. Mazza, Esq.
**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Email: wjmartin@pbnlaw.com
      jsmairo@pbnlaw.com
      cpmazza@pbnlaw.com

-and-

J. Christopher Shore, Esq. (admitted *pro hac vice*)
Harrison Denman, Esq. (admitted *pro hac vice*)
Andrew Zatz, Esq. (admitted *pro hac vice*)
Samuel P. Hershey, Esq. (admitted *pro hac vice*)
Ashley Chase, Esq. (admitted *pro hac vice*)
Brett Bakemeyer, Esq. (admitted *pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: cshore@whitecase.com
      harrison.denman@whitecase.com
      azatz@whitecase.com
      sam.hershey@whitecase.com
      ashley.chase@whitecase.com
      brett.bakemeyer@whitecase.com

Aaron Colodny, Esq. (admitted *pro hac vice*)
**WHITE & CASE LLP**
555 S. Flower St., Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7706
Email: aaron.colodny@whitecase.com

*Co-Counsel to the Official Committee of Unsecured Creditors*