**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF DAVID DUNN IN SUPPORT OF**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR**
**(I) LEAVE, STANDING, AND AUTHORITY TO COMMENCE AND PROSECUTE**
**CERTAIN CLAIMS AND CAUSES OF ACTION ON BEHALF OF THE DEBTORS'**
**ESTATES AND (II) EXCLUSIVE SETTLEMENT AUTHORITY**

I, David Dunn, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Principal at Province, LLC ("**Province**"), which serves as a financial advisor for the Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned cases. I hereby submit this declaration (the "**Declaration**") as my direct testimony in support of *The Official Committee of Unsecured Creditors' Motion for (I) Leave, Standing, and Authority To Commence and Prosecute Certain Claims and Causes of Action on Behalf of The Debtors' Estates and (II) Exclusive Settlement Authority* [ECF No. 536] (the "**Standing Motion**").[2]

2. Except as otherwise stated in this Declaration, all facts set forth herein are based on my personal experience and knowledge or information obtained from my review of relevant documents. I am not being compensated specifically for this testimony other than through payments received by Province as a professional retained by the Committee in this bankruptcy proceeding.

---

[1] The last four digits of Debtor Invitae Corporation's ("**Invitae**," and with its subsidiary debtors, the "**Debtors**") tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Standing Motion.

### A. Fiduciary Experience

3. I have served as a fiduciary for entities created through chapter 11 plans to liquidate assets and pursue claims and causes of action preserved for the benefit of creditors in many cases. Such cases include, but are not limited to, (1) PCT Litigation Trust (f/k/a Prime Trust, LLC), (2) Casa Systems, Inc., (3) Benefytt Technologies, Inc., (4) Phoenix II & Phoenix III Recovery, LLC (f/k/a Zohar III Corp.), (5) LBR Liquidating Trust (f/k/a Limetree Bay Services, LLC); (6) Basic Liquidating Trust (f/k/a Basic Energy Services, Inc.); (7) Philadelphia Energy Services Liquidating Trust, (8) AMH Litigation Trust (f/k/a Alta Mesa Resources, Inc.); and (9) GCX (Global Cloud Xchange) Liquidating Trust. I have held similar roles in other cases.

4. In those capacities, I have overseen litigation concerning, among other things, complex breach of fiduciary duty claims, fraudulent transfer litigation, preference actions, and director and officer policy litigation. I have worked with various law firms and negotiated engagement arrangements with those law firms in these roles. The law firms' compensation structures have varied in these matters, including compensation at an hourly billing rate, full contingency, and other hybrid structures (*e.g.,* fixed fee plus contingency fees). I have worked with many law firms in recent cases, such as Quinn Emanuel Urquhart & Sullivan, LLP, Reid Collins & Tsai LLP, McDermott Will & Emery, Kirkland & Ellis LLP, Glenn Agre Bergman & Fuentes LLP, ASK LLP, Cohen Ziffer Frenchman & McKenna, and Grant & Eisenhofer P.A. In connection with several of these cases, I have negotiated and secured third-party financing to fund litigation to be brought by the post-effective date entity following confirmation of the applicable plan of reorganization.

5. I understand that the Debtors may seek to establish at the hearing that any litigation of the claims in the Proposed Complaint will require as much as $20 million in cash funding to

pursue. I disagree. While we will not know for certain how much cash the Debtors will have on hand for distribution to unsecured creditors (and thus cash that could be available to fund litigation brought on their behalf), any plan would not need to reserve significant cash to bring the types of claims at issue. Rather, in my experience, alternative fee arrangements can be negotiated with counsel that defray the upfront cash cost of pursuing the litigation. Those arrangements may be entirely based on a contingency fee that is only paid if the litigation is successful. In my experience, contingency fee arrangements, typically include a fee that ranges from 15% to 40% of the ultimate judgment collected. I have negotiated certain contingency fee arrangements that include a lower percentage fee if the claim is settled before a specific point in the litigation (*i.e.* a reduced contingency percentage if the claims is resolved before summary judgment is adjudicated). Additionally, in matters where the ultimate judgment may be significant, I have negotiated caps on contingency fees that would be significantly less than the agreed percentage applied to that significant judgment.

6. Litigation financing could also be secured to finance the litigation and defray the need to reserve a large amount of cash to fund the litigation. Based on my experience, I have a current understanding of the availability of litigation funding in the market and firms' willingness to take certain claims on contingency or partial contingency fee arrangements.

### B. Market for Litigation Funding and Litigation Services

7. I believe there are many options available to finance the claims and causes of action that the Committee seeks standing to prosecute in its Standing Motion (the "**Proposed Claims**"). The Proposed Claims may be brought under a full contingency arrangement, on a hybrid fee arrangement, or funded through a loan to finance counsel who is compensated on an hourly fee arrangement. For instance, in certain cases that I have overseen as a fiduciary, counsel has agreed

to take the matter for a reduced hourly rate, fixed fee, or fixed monthly fee combined with a lower contingency fee arrangement. There is also the opportunity to sell a portion of the claim at the outset to finance the litigation.

8. I have shared the redacted version of the Standing Motion and the attached draft complaint with litigators from Reid Collins & Tsai LLP ("**Reid Collins**") and Grant & Eisenhofer P.A. I then spoke with the litigators at those firms and with attorneys at White & Case LLP (counsel for the Committee) about the Proposed Claims. Each counsel expressed interest in a potential engagement to pursue them on a contingency fee or hybrid arrangement. Reid Collins also indicated that they would entertain a hybrid arrangement that would involve a flat fee in the low single-digit millions and, in that circumstance, would cover all costs, including experts.

9. I have also shared the redacted version of the Standing Motion and the attached draft complaint with Ready State Asset Management LP ("**Ready State**") and Locke Capital, both of whom regularly extend third party litigation financing. Ready State indicated that, if standing is granted, it would consider extending a loan to finance the prosecution of such claims. It further suggested that it may be interested in purchasing a portion of the recoveries up front, the proceeds of which could be used to finance the litigation. Locke Capital also indicated that, subject to further diligence, it would be willing to finance the Proposed Claims. While I did not discuss specific figures with the law firms and litigation financing parties I contacted, I know each to be an active and serious player in the market and expect that each would offer fee arrangements or financing on market terms. Furthermore, given the level of competition, I expect that there will be a number of other firms that would offer competitive terms at market rates.

10. To be clear, I intentionally did not ask for (nor have I received) firm proposals from any of those parties. It would not be appropriate or prudent to seek such firm proposals at this

time for several reasons. First, the Committee has not been granted standing to pursue the Proposed Claims. Based on my experience, if it were granted standing to pursue such claims, such claims would likely be placed in a trust and a fiduciary would be appointed pursuant to the plan of liquidation to oversee the prosecution of such claims. The funding of that trust would be determined by the plan proponent and approved by the Bankruptcy Court as part of the confirmation of the plan. Here, standing to pursue the Proposed Claims has not been granted, no entity has been appointed as a fiduciary to pursue the claims, and the funding of the trust has not been determined. It would ultimately be the job of that fiduciary to seek the proper financing to maximize the value of such claims based on the specific funding arrangement of the trust, not the financial advisor for the Committee.

11.    Second, marketing firm bids from potential litigation financing options at this time would not be prudent as it could affect the pricing those parties may ultimately offer to finance the litigation if the Standing Motion is granted. Although I am confident that the information I have shared with prospective law firms and litigation financing sources is sufficient to provide an indication that contingency fee and litigation financing options are available, there is significant additional information that would be provided to such parties if the Standing Motion is granted that could improve the terms of such financing. For instance, at this point, due to confidentiality restrictions imposed by the Protective Order and the Court's order sealing certain portions of the Standing Motion, I have only been able to share a redacted version of the Standing Motion and draft complaint with the parties discussed above. During my deposition, the Committee requested the Debtors' permission to share an unredacted version of these materials with Reid Collins and Grant & Eisenhofer P.A. That request has gone unanswered.

12. Any party who ultimately would underwrite financing would have the benefit of the unredacted complaint, which would color—and in my opinion improve—the economics of any proposal as the Debtors and Deerfield have require the Committee to conceal many of the specific facts underlying the allegation.

13. Third, based on my experience, if the Standing Motion is granted, the individual or entity selected to oversee the litigation will assume the attorney-client and work product privilege currently belonging to the Debtors. I expect that once the litigation trustee has these privileged materials in hand, they would be able to make that information available to potential funding source. Such privileged information would help inform the market about the advice given to the Debtors' directors and officers, thus may result in more attractive financing offers.

14. Fourth, once the Court has granted the Committee standing to pursue the Proposed Claims, the claims will have already effectively survived the motion to dismiss stage of litigation, so the available financing terms would be even more attractive.

15. I understand that the Debtors have taken the position that the Proposed Claims are not viable, and thus not financeable. This is inconsistent with my personal experience as a litigation trustee and my conversations with litigation funders and litigators at different firms regarding the Proposed Claims. Rather, I believe there is a robust market for financing the litigation of the Proposed Claims, selling a portion of the claims to finance the litigation, or litigating such claims through a contingency or hybrid fee arrangement.

16. In sum, based on my experience and calls with potential law firms and entities that have expressed interest in providing litigation financing or prosecuting the claims, I believe there is a robust market for alternative fee and financing arrangements that would significantly reduce the amount of initial trust funding required upon emergence to prosecute the claims. Here—where

success on the proposed avoidance claims would provide approximately $300 million in gross recovery for the estate and significant director and officer insurance proceeds could be available to satisfy any judgment against the Debtors' directors and officers—there is significant benefit in pursuing the litigation and more than enough incentive for a law firm or financing entity to underwrite and fund the prosecution of the Proposed Claims.

### C. Costs of Litigating the Proposed Claims

17. I understand that the Debtors have estimated that they would need to reserve around $20 million to successfully prosecute the Proposed Claims. Given the availability of alternative financing options and legal fee arrangements, I believe the Debtors' estimate far exceeds the amount that is necessary or would be required to fund the litigation relating to the Proposed Claims.

18. Under most fee arrangements, the costs of expert witnesses and the administration of the case (*e.g.,* court filing fees, transcription services, etc.) would need to be funded by the trust. Any such expert would typically charge on an hourly basis. Here, I believe that with respect to the Proposed Claims, one expert would likely be needed to testify as to whether the Debtors received reasonably equivalent value for the various transfers that are alleged to be constructive fraudulent transfers and the solvency of the Debtors at the time of those transfers. That same expert may also be required to testify with respect to damages. Based on my experience, I believe that expert fees would likely be between $500,000 to $750,000. That amount may be overstated, because unlike the typical case, here the Committee has already reviewed a significant production of documents by the Debtors and Deerfield. Moreover, the availability of privileged documents to the trustee would streamline any review by such an expert.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   July 7, 2024
              New York, New York

                                                          By */s/ David Dunn*
                                                          David Dunn, Principal
                                                          Province, LLC