**SULLIVAN & CROMWELL LLP**
Justin DeCamp (admitted *pro hac vice*)
Ari Blaut  (admitted *pro hac vice*)
Benjamin Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-1656
Facsimile:  (212) 558-3588
Email:   decampj@sullcrom.com
         blauta@sullcrom.com
         bellerb@sullcrom.com

*Counsel to Deerfield Partners, L.P.*

**WOLLMUTH MAHER & DEUTSCH LLP**
James N. Lawlor
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 382-3300
Facsimile:  (973) 741-2398
Email:   jlawlor@wmd-law.com

*Counsel to Deerfield Partners, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |

**DECLARATION OF TERENCE FOX-KARNAL IN SUPPORT OF DEERFIELD PARTNERS L.P.'S (I) OBJECTION TO THE COMMITTEE'S STANDING MOTION AND (II) RESPONSE TO THE COMMITTEE'S OBJECTIONS TO THE MAKE WHOLE AMOUNT**

I, Terence Fox-Karnal, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  I am a Partner and Head Equity Linked and Credit Trader at Deerfield Partners, L.P. (together with its applicable affiliated funds and entities, "Deerfield").  I joined Deerfield in 2010.  I am over the age of 18 and authorized to submit this declaration (this "Declaration") on behalf of Deerfield.

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103. Capitalized terms not defined herein shall have the meaning ascribed to them in *Deerfield's (I) Objection to the Committee's Standing Motion and (II) Response to the Committee's Objections to the Make Whole Amount* [Docket No. 718].

2. I submit this Declaration in support of *Deerfield's (I) Objection to the Committee's Standing Motion and (II) Response to the Committee's Objections to the Make Whole Amount* [Docket No. 718].

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concern the subject matter of this Declaration, (ii) information learned from my review of relevant documents, and/or (iii) information supplied by persons working directly with me and/or from Deerfield's professions and advisors. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4. Deerfield participated in the Company's initial offering of convertible unsecured notes maturing in 2024, in 2019 (the "2024 Convertible Notes"). Thereafter, Deerfield made additional purchases of 2024 Convertible Notes in the secondary market. At the time of Deerfield's purchases, I considered the 2024 Convertible Notes to have a high likelihood of being repaid and viewed the potential for equity conversion as an additional reason to purchase the notes.

5. In the Spring of 2022, Deerfield and the Company began discussions to address the Company's near-term debt maturities. In May 2022, Deerfield and the Company agreed on the terms of a transaction (the "Proposed May 2022 Transaction"), through which Deerfield (and other investors) would acquire $600 million worth of newly issued senior secured notes with a five-year maturity (*i.e.*, 2027) through new money purchases and exchange of the 2024 Convertible Notes. In early Summer 2022, progress on the Proposed May 2022 Transaction stalled, and in July 2022, the Company informed Deerfield that it no longer wished to proceed with the transaction and instead intended to explore a comprehensive balance sheet restructuring.

Deerfield continued to express support for the Company's liability management efforts and expressed an interest in taking part in a comprehensive deal.

6. Following those discussions, I understood that the Company would be engaging with other stakeholders (primarily holders of the Company's unsecured notes maturing in 2028) to explore a comprehensive balance sheet restructuring. Neither I nor to my understanding anyone at Deerfield was directly involved in those discussions. In early December 2022, Deerfield received a proposal from Invitae for the exchange of (i) 80% of the 2024 Convertible Notes for newly issued secured 2027 convertible notes at approximately a 10% principal reduction and (ii) 50% of the 2028 Convertible Notes for unsecured 2028 convertible notes at approximately a 40% principal reduction, but with a higher coupon and more favorable conversion premium. The proposal also provided for $200 million in new preferred equity financing to retire the 2024 Secured Term Loan. I expressed general support for the proposal and the Company's ongoing efforts to find a comprehensive capital structure solution.

7. In late December 2022, Deerfield was notified by the Company that it was pivoting away from a comprehensive restructuring to pursue a transaction that addressed only the 2024 Convertible Notes. I did not have any understanding as to the reason for that pivot. Deerfield engaged in negotiations with the Company over the following two months on a transaction to address the 2024 maturities and reached terms in the middle of February 2023. Those discussions were at arm's-length and involved substantial concessions by Deerfield. I understood that the resulting March Exchange was made available to all 2024 Convertible Noteholders except one—which had recently been founded by a former Deerfield principal and did not disclose its holdings until around the time the terms of the deal had been agreed. Deerfield had requested that only holders with a well-understood investing track record be invited to participate in the March Exchange.

3

8. I believed that the March Exchange would benefit the Company by retiring a near-term debt maturity while maintaining the Company's capacity to incur additional first lien secured debt and providing additional capital. I anticipated that the Company's liability management transactions in February and March 2023 would create significant equity value for the Company by providing a two-year runway for the Company. Among other things, I believed that the Company's most pressing problem was the 2024 maturities and that addressing this problem would improve the Company's stock price, allowing it to negotiate refinancing terms with the holders of the 2028 Convertible Notes from a position of comparative strength and to access equity capital markets as needed.

9. Following the March Exchange, the market did not respond as favorably as expected. I was disappointed by the market's initial reaction to the March Exchange but believed that Invitae's share price would improve as it continued to execute its cost-cutting plan and investors gained a better understanding of the additional runway the March Exchange had created. I and others from Deerfield met with the Company in March 2023 to provide our perspective on its public messaging. Thereafter, Invitae and Deerfield announced a joint venture to advance genetics-based drug development for rare diseases.

10. During the months following the exchange, Deerfield acquired nearly half ($17.2 million) of Invitae's remaining 2024 Convertible Notes on the open market. I anticipated that Invitae would be willing to exchange the remaining 2024 Convertible Notes for equity or long-term debt, allowing the Company to preserve liquidity rather than repay the notes with cash. To further deleverage the Company, Deerfield exchanged the debt (and the interest payments Invitae would otherwise pay) for $16.7 million in stock and $100,000 in 2028 Secured Convertible Notes in August 2023.

11. Although I believed investors would eventually respond to the retirement of nearly all short-term debt and ongoing cost cuts, the Company's stock price continued to decline over the second half of 2023. I viewed the departure of the Company's longtime CFO, Roxi Wen in early Summer 2023 as a negative development for the Company, including because I understood that Ms. Wen was the primary force behind the Company's cost-saving efforts. Deerfield tried to work with the Company's remaining executive team in the following months but found that absent Ms. Wen's willingness to make significant cuts, leadership was unable to implement a strategy that would allow it to reach breakeven. I and others from Deerfield met with the Company and its new financial advisor, Moelis & Company, in Fall 2023, but I was unconvinced that the further cuts and divestments they presented could be executed quickly enough to address the Company's liquidity issues.

12. In October 2023, once it became clear that Invitae would not be able to raise new capital and would not be able to address its ongoing cash burn, Deerfield, through its legal counsel, approached the Company with a preliminary term sheet for a potential restructuring to maximize value to stakeholders rather than have the Company deplete its remaining cash. The Company did not initially engage on the restructuring proposal and instead requested Deerfield's consent under the indenture governing the 2028 Secured Notes to the divestment of certain cash-burning business lines. Thereafter, Deerfield entered into a supplemental indenture with the Company granting those consents.

13. Thereafter, as contemplated by the agreements around those consents, the Company and Deerfield negotiated the terms of a transaction support agreement (the "Transaction Support Agreement") to facilitate the implementation of a sale of the Company's assets and distribution of sale proceeds to the Company's stakeholders through a chapter 11 proceeding.

14. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at New York, New York on the 7th day of July, 2024.

                                                  */s/ Terence Fox-Karnal*
                                                  Terence Fox-Karnal