| | |
|---|---|
| **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> Joshua A. Sussberg, P.C. (admitted *pro hac vice*) <br> Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) <br> Francis Petrie (admitted *pro hac vice*) <br> Jeffrey Goldfine (admitted *pro hac vice*) <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Telephone: (212) 446-4800 <br> Facsimile:  (212) 446-4900 <br> joshua.sussberg@kirkland.com <br> nicole.greenblatt@kirkland.com <br> francis.petrie@kirkland.com <br> jeffrey.goldfine@kirkland.com | **COLE SCHOTZ P.C.** <br> Michael D. Sirota, Esq. <br> Warren A. Usatine, Esq. <br> Felice R. Yudkin, Esq. <br> Daniel J. Harris, Esq. <br> Court Plaza North, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Telephone: (201) 489-3000 <br> msirota@coleschotz.com <br> wusatine@coleschotz.com <br> fyudkin@coleschotz.com <br> dharris@coleschotz.com |
| -and- | |
| **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> Spencer A. Winters, P.C. (admitted *pro hac vice*) <br> William E. Arnault, P.C. (admitted *pro hac vice*) <br> 333 West Wolf Point Plaza <br> Chicago, Illinois 60654 <br> Telephone: (312) 862-2000 <br> Facsimile:  (312) 862-2200 <br> spencer.winters@kirkland.com <br> william.arnault@kirkland.com | |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al*., | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae.  The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**DECLARATION OF ANA SCHRANK,
CHIEF FINANCIAL OFFICER OF INVITAE
CORPORATION, IN SUPPORT OF CONFIRMATION OF THE
SECOND AMENDED JOINT PLAN OF INVITAE CORPORATION AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Ana Schrank, hereby declare as follows under penalty of perjury:

### Background and Qualifications

1. I am the Chief Financial Officer of Invitae Corporation (together with the other above-captioned debtors and debtors in possession, the "Debtors," and collectively with their non-Debtor affiliates, "Invitae" or the "Company"). I have served as Chief Financial Officer of Invitae since October 2023.

2. I have spent more than 25 years in finance, working in various companies where I have been responsible for budget and long-range planning, operational transformation, equity fundraising, debt restructuring, and internal audit and risk controls, as well as board and investor relations. Immediately before joining Invitae's leadership team, I served as the Chief Financial Officer of Truepill, Inc., a digital health platform for pharmacies, where I led the company's finance and accounting functions. From 2020 to 2022, I served as the Chief Financial Officer of Collective Health, Inc., a health benefits platform, where I led all finance functions, as well as corporate strategy, customer analytics, and actuarial. Earlier in my career, I spent 23 years at McKesson Corporation, where I held various leadership roles, including as senior vice president and chief audit executive, Chief Financial Officer of a technology business unit, and head of investor relations. I hold an MBA in Finance from Fordham University and a BA in English Literature from the College of William & Mary.

3. As Chief Financial Officer of Invitae, I am generally familiar with the Debtors' operations, business and financial affairs, and books and records. The statements set forth in this

2

declaration (this "Declaration") are based upon my personal knowledge and experience, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and information obtained from other members of the Debtors' management team and third-party advisors.

4. I am over the age of 18 and authorized to submit this Declaration in support of confirmation of the *Second Amended Joint Chapter 11 Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 791] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2] If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### The Debtors' Restructuring Efforts

5. Since at least February 2023, the Company has been in the process of reorganizing their operations. Throughout this process, the Company understood that the departure of key members of the management team was a risk that it would face. At the same time, the Company understood that it needed stability to continue serving the customers who relied on their genetic testing services and preserve the business for its stakeholders. In order to retain its executives and ensure continuity of patient care, the Board of Directors (the "Board") approved certain retention bonuses at various points in time for certain key members of the Debtors' executive team, which included, at various times, Ken Knight, Bob Nussbaum, Tom Brida, David Sholehvar, Robert Guigley, Desarie French, Roxi Wen, and me.

---

[2] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Plan or the *Debtors' Memorandum of Law in Support of the Debtors' Second Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Brief"), as applicable.

3

6. As a result of the retention bonuses awarded in 2024 to certain executives, all of them remained at the Company throughout its restructuring. Among other responsibilities, we (along with other employees) played a key role in developing and executing our customer and employee retention strategy, managing external and internal communications, executing on, and continuing to improve, operational performance, and facilitating our marketing, sale, and regulatory approval process. And, since the auction, all executives have been working diligently to facilitate a successful integration with Labcorp.

7. For example, the executives spent many hours preparing the Company for (and guiding the Company through) its bankruptcy filing. Such efforts included assisting in the preparation of our bankruptcy schedules, negotiating with our stakeholders, overseeing a communications strategy, and meeting with our customers to assuage their concerns about the bankruptcy filing, our financial condition, and future prospects. Among other things, I was integral in helping to develop our cash collateral budget and other cash flow forecasts. I also engaged in prepetition negotiations with lenders, assisted in negotiations relating to the consensual use of cash collateral, attended meetings on first day preparations and reviewed first day pleadings, reviewed and resolved various post-petition claims, reviewed and approved our statements of financial activities, schedules of assets and liabilities, and monthly operating reports, prepared for and participated in the initial Debtor interview and the section 341(a) meeting of creditors, and oversaw compliance with the U.S. Trustee's cash management requirements. The executives and I have been and remain a key resource to the Debtors' advisors on various chapter 11-related and sale initiatives.

8. We also spent a significant amount of time preparing the Company for sale. This included overseeing due diligence, meeting with potential purchasers, preparing for, assisting with,

and attending the auction, and assisting on the integration of the Company's business with Labcorp. Among other things, we attended regular diligence calls and other related meetings with our advisors and potential purchasers, and responded to extensive diligence requests from potential purchasers to ensure that the sale process would result in the highest and best price for the Company.

9. Throughout this entire process, we have kept the Board well-informed through weekly Board updates and meetings. During these meetings and updates, the Company's executives and advisors prepared and presented board materials regarding the Company's performance and operations, the sale process, and integration with Labcorp (among other things).

10. In addition to the above, the executives had numerous other specific responsibilities (not all of which are identified here). Ken Knight (Chief Executive Officer), for example, held numerous discussions and town halls to ensure the retention of rank-and-file employees, identified potential purchasers, met with and analyzed bids from those potential purchasers, and communicated with various customers in an attempt to maintain their business. Tom Brida (Chief Compliance Officer and General Counsel) helped to maximize value by attempting to mitigate claims that could have decreased distributable value. David Sholehvar (Chief Operating Officer) has been integral to the integration of the Company's business with Labcorp. Robert Guigley (Chief Commercial Officer) has been primarily responsible for the retention of our customers. Desarie French (Chief Talent Officer) has also been critical in the integration process and retention of rank-and-file employees.

11. Notably, all of these tasks relating to the Company's restructuring and sale went beyond what we typically did and were in addition to our ordinary, "day-to-day" responsibilities as members of the senior executive team. In my case, this included overseeing the 2024 budget,

negotiating with trade vendors and others, and preparing for a reduction in force. Notwithstanding the burdens of preparing for and operating in chapter 11, our operating performance did not suffer. In fact, the executives and I continued to improve Invitae's operating performance during this time. In particular, we executed a business realignment that streamlined the organization, significantly expanded gross margin, and reduced operating expenses and cash burn.

12. In sum, the other executives and I have worked incredibly hard to see Invitae through the bankruptcy and sale process, and I believe that the favorable sale price obtained at the sale auction was a direct result of the efforts of the executive team.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: July 18, 2024
San Francisco, CA

/s/ *Ana Schrank*
Name: Ana Schrank
Title: Chief Financial Officer
Invitae Corporation