**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
nicole.greenblatt@kirkland.com
francis.petrie@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
William E. Arnault, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200
spencer.winters@kirkland.com
william.arnault@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING AMENDED**
**PLAN SUPPLEMENT FOR THE SECOND AMENDED JOINT PLAN**
**OF INVITAE CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE (TECHNICAL MODIFICATIONS)**

**PLEASE TAKE NOTICE** that, on July 8, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Notice of Filing Plan Supplement for the*

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

*Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 761] (the "Plan Supplement") with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on July 19, 2024, the Debtors filed the *Second Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* filed contemporaneously herewith (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this amendment to the Plan Supplement (this "Amended Plan Supplement") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Amended Plan Supplement includes current drafts of the following documents (certain of which continue to be negotiated pursuant to the terms of the Plan and the TSA by the Debtors and the Required Consenting Stakeholders, and will be filed in substantially final form on or prior to the Effective Date):

| | |
|---|---|
| **Exhibit A** | Schedule of Retained Causes of Action |
| **Exhibit A-1** | Redline to Previously Filed Draft Schedule of Retained Causes of Action |
| **Exhibit D** | Plan Administrator Agreement |
| **Exhibit G** | Transactions Steps Memorandum |
| **Exhibit G-1** | Redline to Previously Filed Transactions Steps Memorandum |

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights, with the consultation or consent of any applicable counterparties to the extent required under the Plan or the TSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan and the TSA; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court. The final version of any such document may contain material differences from the version filed herewith. For the avoidance of doubt, the parties thereto have not consented to such document as being in final form and reserve all rights in that regard.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website,

---

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Plan.

https://www.veritaglobal.net/invitae, and upon request of the Debtors' co-counsel, Kirkland & Ellis LLP and Cole Schotz P.C., at the respective addresses specified herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek confirmation of the Plan at the Confirmation Hearing to be held before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608, on **July 22, 2024, at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard.

| *Debtors* | |
|---|---|
| Invitae Corporation<br>1400 16th Street, San Francisco, California 94103 | |
| *Counsel for the Debtors* | *Counsel for the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C.; Nicole L. Greenblatt, P.C.; Francis Petrie; Jeffrey Goldfine<br><br>**Kirkland & Ellis LLP**<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attention:  Spencer A. Winters, P.C.<br>William E. Arnault, P.C. | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq.; Warren A. Usatine, Esq.; Felice R. Yudkin, Esq.; Daniel J. Harris, Esq. |
| *Counsel for Deerfield Partners, L.P.* | *Counsel for Deerfield Partners, L.P.* |
| **Sullivan & Cromwell LLP**<br>125 Broad Street<br>New York, NY 10004<br>Attention: James L. Bromley, Esq.; Ari B. Blaut, Esq.; Benjamin S. Beller, Esq.; David M. Rosenthal, Esq. | **Wollmuth Maher & Deutsch LLP**<br>500 Fifth Avenue<br>New York, New York 10110<br>Attention: James N. Lawlor, Esq.<br>Joseph F. Pacelli, Esq.; Nicholas A. Servider, Esq. |
| *Counsel for the Committee* | *Counsel for the Committee* |
| **White & Case LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: J. Christopher Shore, Esq.; Harrison Denman, Esq.; Andrew Zatz, Esq.; Samuel P. Hershey, Esq.; Ashley Chase, Esq.; Brett Bakemeyer, Esq. | **Porzio, Bromberg & Newman, P.C.,**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, NJ 07962<br>Attention: Warren J. Martin Jr., Esq.; John S. Mairo, Esq.; Christopher P. Mazza, Esq. |

| *United States Trustee* |
|---|
| **Office of the United States Trustee**<br>**United States Trustee, Regions 3 & 9**<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Attention:  Jeffrey M. Sponder; Lauren Bielskie |

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://www.veritaglobal.net/invitae.  You may also obtain copies of any pleadings by visiting the Court's website at https://ecf.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: July 19, 2024

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            dharris@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  joshua.sussberg@kirkland.com
        nicole.greenblatt@kirkland.com
        francis.petrie@kirkland.com
        jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
William E. Arnault, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:(312) 862-2000
Facsimile:  (312) 862-2200
Email:  spencer.winters@kirkland.com
        william.arnault@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
nicole.greenblatt@kirkland.com
francis.petrie@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Spencer A. Winters, P.C. (admitted *pro hac vice*)
William E. Arnault, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200
spencer.winters@kirkland.com
william.arnault@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| INVITAE CORPORATION, *et al.*, | Case No. 24-11362 (MBK) |
| Debtors.[1] | (Jointly Administered) |

# AMENDED PLAN SUPPLEMENT
## FOR THE SECOND AMENDED JOINT PLAN OF
## INVITAE CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT
## TO CHAPTER 11 OF THE BANKRUPTCY CODE (TECHNICAL MODIFICATIONS)

---

[1]  The last four digits of Debtor Invitae Corporation's tax identification number are 1898.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae.  The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

## Table of Contents[2]

**Exhibit A**        **Schedule of Retained Causes of Action**

**Exhibit A-1**      **Redline to Previously Filed Draft Schedule of Retained Causes of Action**

**Exhibit D**        **Plan Administrator Agreement**

**Exhibit G**        **Transactions Steps Memorandum**

**Exhibit G-1**      **Redline to Previously Filed Transactions Steps Memorandum**

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

## Exhibit A

**Schedule of Retained Causes of Action**

## Exhibit A

## Schedule of Retained Causes of Action

Article IV.G of the Plan provides as follows:

Except as otherwise provided herein or in the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, the Wind-Down Debtors and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator), shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Wind-Down Debtors or the Plan Administrator to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (i) acquired by the Purchaser in accordance with the Asset Purchase Agreement, as applicable, or (ii) released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors, as applicable, as of the Effective Date."

The Wind-Down Debtors or the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as may be assigned or transferred to the Purchaser in accordance with the Asset Purchase Agreement or as otherwise expressly provided in the Plan, including Article VIII of the Plan. Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtors, or the Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Wind-Down Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan. Prior to the

Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, or the Plan Administrator, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtor, or the Plan Administrator, in consultation with the Required Consenting Stakeholders, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.G include any Claim or Cause of Action against a Released Party or Exculpated Party.

Notwithstanding and without limiting the generality of Article IV.G of the Plan, the Debtors and the Wind-Down Debtors, as applicable, expressly reserve all Causes of Action that are not expressly released or settled under the Plan (including pursuant to Article VIII and Article IV thereof), including all Causes of Action against the Entities identified in **Schedule A(i)** attached hereto.

Subject to the terms and conditions set forth in the Plan and the TSA (including certain consent and approval rights), the Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement this Schedule of Retained Causes of Action at any time with additional Retained Causes of Action; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court. Failure to include any Retained Cause of Action herein at any time shall not be a bar and shall not have any impact on the Wind-Down Debtors' and Plan Administrator's rights to bring any Retained Cause of Action not otherwise released pursuant to the Plan.

## I.     Causes of Action Related to Taxes

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action against federal, state, local, or international taxing authorities based in whole or in part upon any and all tax obligations, tax credits, refunds, offsets, or other claims to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, including, without limitation,  against or related to all federal, state, local, or international taxing authorities that owe or that may in the future owe money related to tax obligations, tax credits, refunds, offsets, or other claims to the Debtors or the Wind-Down Debtors, regardless of whether such entity is specifically identified herein.

## II.     Causes of Action Related to Insurance Policies

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such

contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

### III.    Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation, Including Adversary Proceedings

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind Down Debtors expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, any adversary proceeding in these chapter 11 cases or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or nonjudicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

### IV.    Causes of Action Related to Disputed Claims

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all rights, claims, defenses, and Causes of Action against any Holder of a Claim seeking to collect a distribution from or assert other rights against the Estate, Wind-Down Debtors, or the Distribution Reserve Accounts, whether at law or equity, under any theory and of any nature whatsoever, unless and until each of such Holder's Claims become Allowed Claims.

### V.    Causes of Action Related to Accounts Receivable and Accounts Payable

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or the Wind-Down Debtors, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments thereto.  Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to such Entities.

### VI.    Causes of Action Related to Contracts and Leases

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors, as applicable, expressly reserve Causes of Action based in whole or in part upon any and all contracts and leases, joint operating agreements, and similar instruments, to which any of the Debtors or the Wind-Down Debtors is a party or pursuant to which any of the Debtors or the Wind-Down Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, the Plan Supplement, or any amendments thereto), including, without limitation, all contracts and leases that are deemed assumed pursuant to the Plan or were previously assumed by the Debtors.

### VII.    Causes of Action Related to Liens

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part on any and all liens regardless of whether such liens are specifically identified in the Plan.

**VIII.   Avoidance Actions**

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind Down Debtors expressly reserve all Causes of Action that may be brought by or on behalf of the Debtors or the Wind Down Debtors, as applicable, to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553 of the Bankruptcy Code, and section 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including preference and fraudulent transfer laws.

**Schedule A(i)**

**Retained Causes of Action**

| Party | Address | Nature |
|---|---|---|
| UnitedHealthcare Insurance Company and its affiliates ("UHC") | UnitedHealthcare Market VP MN101-D003 9700 Health Care Lane Minnetonka, MN 55343 | All of the Debtors' Claims and Causes of Action including but not limited to those arising from or related to UHC's failure to pay medically necessary and covered tests, including those set forth in that certain letter from the Debtors to UHC, dated March 25, 2024. |
| Natera, Inc. ("Natera") | 201 Industrial Road San Carlos, CA 94070 Attention: Russ Farr, General Counsel E-mail: rfarr@natera.com | All Claims and Causes of Action arising from or related to (1) Natera's obligation to perform under that certain Asset Purchase Agreement between Natera and Invitae Corporation, dated as of January 17, 2024, (2) *Natera, Inc. v. ArcherDX, Inc., et al.*, USDC - D. Del. Case No. 1:20-cv-00125-GBW; and (3) *Natera, Inc. v. ArcherDX, Inc.*, Fed. Cir. Case No. 24-01287. |

## **Exhibit A-1**

## **Redline to Previously Filed Draft Schedule of Retained Causes of Action**

**Exhibit A**

~~Draft~~ **Schedule of Retained Causes of Action**

Article IV.G of the Plan provides as follows:

Except as otherwise provided herein or in the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, the Wind-Down Debtors and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator), shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Wind-Down Debtors or the Plan Administrator to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (i) acquired by the Purchaser in accordance with the Asset Purchase Agreement, as applicable, or (ii) released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors, as applicable, as of the Effective Date."

The Wind-Down Debtors or the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as may be assigned or transferred to the Purchaser in accordance with the Asset Purchase Agreement or as otherwise expressly provided in the Plan, including Article VIII of the Plan. Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtors, or the Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any

Entity shall vest in the corresponding Wind-Down Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan. Prior to the

Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, or the Plan Administrator, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtor, or the Plan Administrator, in consultation with the Required Consenting Stakeholders, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.G include any Claim or Cause of Action against a Released Party or Exculpated Party.

Notwithstanding and without limiting the generality of Article IV.G of the Plan, the Debtors and the Wind-Down Debtors, as applicable, expressly reserve all Causes of Action that are not expressly released or settled under the Plan (including pursuant to Article VIII and Article IV thereof), including all Causes of Action against the Entities identified in **Schedule A(i)** attached hereto.

Subject to the terms and conditions set forth in the Plan and the TSA (including certain consent and approval rights), the Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement this Schedule of Retained Causes of Action at any time with additional Retained Causes of Action; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.  Failure to include any Retained Cause of Action herein at any time shall not be a bar and shall not have any impact on the Wind-Down Debtors' and Plan Administrator's rights to bring any Retained Cause of Action not otherwise released pursuant to the Plan.

**I.      Causes of Action Related to Taxes**

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action against federal, state, local, or international taxing authorities based in whole or in part upon any and all tax obligations, tax credits, refunds, offsets, or other claims to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, including, without limitation,  against or related to all federal, state, local, or international taxing authorities that owe or that may in the future owe money related to tax obligations, tax credits, refunds, offsets, or other claims to the Debtors or the Wind-Down Debtors, regardless of whether such entity is specifically identified herein.

## II.      Causes of Action Related to Insurance Policies

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

## III.     Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation, Including Adversary Proceedings

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind Down Debtors expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, any adversary proceeding in these chapter 11 cases or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or nonjudicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

## IV.     ~~III.~~ Causes of Action Related to Disputed Claims

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all rights, claims, defenses, and Causes of Action against any Holder of a Claim seeking to collect a distribution from or assert other rights against the Estate, Wind-Down Debtors, or the Distribution Reserve Accounts, whether at law or equity, under any theory and of any nature whatsoever, unless and until each of such Holder's Claims become Allowed Claims.

## V.      ~~IV.~~ Causes of Action Related to Accounts Receivable and Accounts Payable

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or the Wind-Down Debtors, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments thereto. Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to such Entities.

## VI.     ~~V.~~ Causes of Action Related to Contracts and Leases

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors, as applicable, expressly reserve Causes of Action based in whole or in part upon any and all contracts and leases, joint operating agreements, and similar instruments, to which any of the

Debtors or the Wind-Down Debtors is a party or pursuant to which any of the Debtors or the Wind-Down Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, the Plan Supplement, or any amendments thereto), including, without limitation, all contracts and leases that are deemed assumed pursuant to the Plan or were previously assumed by the Debtors.

### VII.    ~~VI.~~ Causes of Action Related to Liens

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part on any and all liens regardless of whether such liens are specifically identified in the Plan.

### VIII.    Avoidance Actions

Unless otherwise specifically released, settled, compromised, transferred, or assigned under the Plan or the Asset Purchase Agreement, the Debtors and the Wind Down Debtors expressly reserve all Causes of Action that may be brought by or on behalf of the Debtors or the Wind Down Debtors, as applicable, to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553 of the Bankruptcy Code, and section 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including preference and fraudulent transfer laws.

**Schedule A(i)**

**Retained Causes of Action**

*[To be filed at a later time]*

| Party | Address | Nature |
|-------|---------|--------|
| UnitedHealthcare Insurance Company and its affiliates ("UHC") | UnitedHealthcare Market VP MN101-D003 9700 Health Care Lane Minnetonka, MN 55343 | All of the Debtors' Claims and Causes of Action including but not limited to those arising from or related to UHC's failure to pay medically necessary and covered tests, including those set forth in that certain letter from the Debtors to UHC, dated March 25, 2024. |
| Natera, Inc. ("Natera") | 201 Industrial Road San Carlos, CA 94070 Attention: Russ Farr, General Counsel E-mail: rfarr@natera.com | All Claims and Causes of Action arising from or related to (1) Natera's obligation to perform under that certain Asset Purchase Agreement between Natera and Invitae Corporation, dated as of January 17, 2024, (2) *Natera, Inc. v. ArcherDX, Inc., et al.*, USDC - D. Del. Case No. 1:20-cv-00125-GBW; and (3) *Natera, Inc. v. ArcherDX, Inc.*, Fed. Cir. Case No. 24-01287. |

**<u>Exhibit D</u>**
**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "***Agreement***") is made [●], 2024, by and among (a) Invitae Corporation, on behalf of itself and its Debtor affiliates (each a "***Debtor***" and collectively, the "***Debtors***") and (b) Andrew Spirito, as the Plan Administrator (the "***Plan Administrator***") under the *Second Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* filed contemporaneously herewith (as may be altered, amended, or modified from time to time, the "***Plan***"). This Agreement sets forth, among other things, the scope of the services to be provided by the Plan Administrator. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

RECITALS:

A.    WHEREAS, on February 13, 2024 (the "***Petition Date***"), the Debtors commenced with the United States Bankruptcy Court for the District of New Jersey (the "***Bankruptcy Court***") voluntary cases (the "***Chapter 11 Cases***") pursuant to chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

B.    WHEREAS, on May 7, 2024, by the *Order (I) Approving the Sale of the Acquired Assets Free and Clear of All Liens, Claims, and Encumbrances and (II) Authorizing the Debtors to Enter into and Perform Their Obligations Under the Labcorp Asset Purchase Agreement* [Docket No. 463], the Bankruptcy Court authorized and approved the Sale Transaction.

C.    WHEREAS, on July 19, 2024, the Debtors filed the Plan, and by the [*Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*] entered on [●], 2024 [Docket No. [●]] (the "***Confirmation Order***"), the Bankruptcy Court confirmed the Plan.

D.    WHEREAS, the Plan became effective on [●], 2024 (the "***Effective Date***") and the Sale Transaction closed and was consummated on [●], 2024.

E.    WHEREAS, pursuant to the Plan, on the Effective Date, the Plan Administrator will be appointed as Plan Administrator to implement the Plan, make distributions to Holders of certain Allowed Claims, and wind down, dissolve, and liquidate the Debtors' Estates, in each case, in consultation with the Required Consenting Stakeholders and for the benefit of the Holders of certain Allowed Claims (the "***Beneficiaries***").

F.    WHEREAS, pursuant to the Plan, the Plan Administrator has the authority and right on behalf of the Wind-Down Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement the provisions of the Plan and the Confirmation Order.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged by the parties, the parties hereto agree as follows:

1.      *Acceptance of Appointment*.  The Debtors hereby appoint Andrew Spirito to serve as Plan Administrator, and Andrew Spirito accepts its appointment as Plan Administrator and agrees to oversee and provide the services to be provided by the Plan Administrator, in consultation with the Required Consenting Stakeholders, pursuant to and in accordance with the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, and as set forth herein (the "**Services**").  Notwithstanding the date of execution of this Agreement, this Agreement shall only become effective on the Effective Date.

2.      *Duties, Powers, and Rights of Plan Administrator*.  From and after the Effective Date, but subject to the Plan, the Plan Administrator shall be the sole representative of the Wind-Down Debtors, and shall act for the Wind-Down Debtors and the Beneficiaries in the same fiduciary capacity as applicable to a board of managers, directors and officers, subject to the provisions hereof.  The Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, the Confirmation Order, and this Agreement (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), including the following:

(i)      issue, execute, deliver, file, or record as promptly as practicable such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Wind Down, and the Securities issued pursuant to the Plan in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or this Agreement;

(ii)      open and maintain bank accounts on behalf of or in the name of the Debtors and the Wind-Down Debtors and designate additional authorized signers on bank accounts as may be necessary, calculate and make distributions to Beneficiaries, in consultation with the Required Consenting Stakeholders, and take other actions consistent with the Plan and the implementation thereof, including the administration and the distribution of the Distribution Reserve Accounts, in the name of the Debtors and the Wind-Down Debtors;

(iii)      subject to Bankruptcy Court approval when necessary, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, in consultation with the Required Consenting Stakeholders, including to (a) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (b) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan;

(iv)      following the Effective Date, serve as the sole manager, sole director, and sole officer of the Wind-Down Debtors.  The Plan Administrator shall be authorized to file on behalf of the Wind-Down Debtors, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Debtors or Wind-Down Debtors, *provided* that pursuant to the Plan, upon the filing by the Plan Administrator of a certification with the Bankruptcy Court that all distributions have been made, all of its duties under the Plan and the Asset Purchase Agreement have been completed, and a final decree closing the last of the Chapter

2

11 Cases has been entered, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Plan Administrator or the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Wind-Down Debtor is formed or any other jurisdiction; *provided*, *further*, that the Plan Administrator shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s);

     (v)    make distributions to the Beneficiaries in consultation with the Required Consenting Stakeholders and in accordance with the Plan (unless otherwise directed by the Bankruptcy Court); *provided* that all distributions on account of the 2028 Senior Secured Notes Claims or Convertible Notes Claims shall be made to, or at the direction of, the respective Trustee, for distribution in accordance with the Plan following the procedures specified in the 2028 Senior Secured Notes Indenture or Convertible Notes Documents;

     (vi)    withhold from the amount distributable to any Beneficiary such amount as may be sufficient to pay any tax or other charges which the Plan Administrator has determined, in its reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision thereof;

     (vii)    exercise its reasonable business judgment to effectuate the Wind Down, sell, liquidate, operate, use, acquire, or dispose of property (including the liquidation, sale, and/or abandonment of the remaining assets after consummation of the Sale Transaction) of the Wind-Down Debtors under the Plan and in accordance with applicable law as necessary to maximize distributions to the Beneficiaries;

     (viii)    prepare, file, and prosecute any necessary filings and/or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

     (ix)    subject in all respects to Articles IV.G and VIII of the Plan and to the extent not otherwise expressly waived, relinquished, exculpated, released, compromised, settled, or acquired by the Purchaser in accordance with the Asset Purchase Agreement, prosecute all Causes of Action retained by the Wind-Down Debtors after the Effective Date on behalf of the Wind-Down Debtors, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Wind-Down Debtors and the Estates;

     (x)    make payments to the Professionals in accordance with the Plan and to any professionals who may be engaged by the Plan Administrator after the Effective Date;

     (xi)    retain and compensate for, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to assist in performing its duties under the Plan and in the Wind Down of the Estates pursuant to Section 5 hereof;

     (xii)    appoint officers as necessary to effectuate the Wind Down in accordance with the Plan;

     (xiii)    maintain the books and records and accounts of the Debtors and the Wind-Down Debtors;

(xiv)    prepare or cause to be prepared, and file or cause to be filed, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtors and pay the tax liabilities of the Debtors or the Wind-Down Debtors due and payable after the Effective Date;

(xv)    as applicable, (a) seek a determination of tax liability under section 505 of the Bankruptcy Code, (b) prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors and the Wind-Down Debtors that are required thereunder, by any Governmental Unit or applicable law, (c) make tax elections for and on behalf of the Wind-Down Debtors, and (d) seek any tax refunds that may be available to the Wind-Down Debtors;

(xvi)    require any Beneficiary to furnish to the Plan Administrator (i) its social security number or employer or taxpayer identification number as assigned by the IRS and (ii) the original Form W-8 or copy of Form W-9, as applicable, as completed by each Beneficiary, and the Plan Administrator may condition any distribution to any Beneficiary upon the receipt of such information;

(xvii)    pay statutory fees and file reports in accordance with Articles IV.F and XII.C of the Plan;

(xviii)    enforce Executory Contracts and Unexpired Leases that are assumed pursuant to the Plan or by any order of the Bankruptcy Court and have not been assigned to a third party on or prior to the Effective Date, as applicable and alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases in accordance with the Plan; and

(xix)    perform other duties and functions that are consistent with the implementation of the Plan.

3.    *Limitations on the Plan Administrator*.  Notwithstanding anything to the contrary under applicable law permitting such action, the Plan Administrator shall not do or undertake any of the following:

(i)    receive transfers of any listed stocks or securities, or any readily marketable securities, except as is absolutely necessary or required under the Plan or the Confirmation Order;

(ii)    retain Cash or cash equivalents in excess of a reasonable amount necessary to (a) fulfill obligations related to the Plan or this Agreement, including reserves with respect thereto, (b) make specified distributions, and (c) satisfy any liabilities of the Debtors and their Estates;

(iii)    receive or retain any operating assets of an ongoing business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation or other Entity with operating assets;

(iv)    accept, guarantee, endorse, or otherwise assume or take on, directly or indirectly, any obligation or other liability, monetary or otherwise, on behalf of the Debtors other than as required or permitted by the Plan or the Confirmation Order;

(v)     take any actions inconsistent with the orderly and expeditious Wind Down or as are required by applicable law, the Plan, or the Confirmation Order;

(vi)     make any distribution with respect to any Disputed Claim until such Claim becomes an Allowed Claim; or

(vii)     engage in any business or trade except as consistent with the orderly and expeditious Wind Down; *provided*, however, that the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, *provided* that such activity does not conflict or interfere in any manner with the Plan Administrator's administration of the Debtors' Estates.

4.     *No Other Duties*.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its position.

5.     *Retention of Professionals*.  The Plan Administrator may, in consultation with the Required Consenting Stakeholders, hire (or continue to engage professionals previously hired by the Debtors) attorneys, accountants, and other professionals, consultants, or other advisors (collectively, "***Professionals***") as may be necessary, required, or appropriate in connection with its duties herein, and pay reasonable compensation to such Professionals.  Any Professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable and documented fees, costs, and expenses incurred. The payment of the fees, costs, and expenses of the Plan Administrator and its retained Professionals, whether incurred before or after the Effective Date, shall be made after the Effective Date in the ordinary course of business solely from the Wind-Down Reserve, in consultation with the Required Consenting Stakeholders, upon the monthly submission of statements to the Plan Administrator, and shall not be subject to the approval of the Bankruptcy Court, *provided*, *however*, that any disputes related to such fees, costs and expenses shall be brought before the Bankruptcy Court.

6.     *Insurance*.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors, in consultation with the Required Consenting Stakeholders, and shall be reimbursed pursuant to Section 8 hereof.

7.     *Fees*.  The fees of the Plan Administrator shall be $125,000 per month until the date its appointment is terminated pursuant to Sections 9 and 10 hereof (collectively, the "***Fees***").  The initial payment of $125,000 shall be made within ten (10) business days following the Effective Date, and each successive payment shall be made on the same date (or next subsequent business day) of each month going forward.  The Fees shall be payable solely out of the Wind-Down Reserve.

8.     *Expenses*.  In performance of the Services, the reasonable and documented out-of-pocket expenses of the Plan Administrator, including, for the avoidance of doubt, any insurance policy obtained by the Plan Administrator in connection with the Services (collectively,

the "***Expenses***"), shall be reimbursed, payable solely from the Wind-Down Reserve, in consultation with the Required Consenting Stakeholders.

9. *Service of Plan Administrator*. As reasonably determined by the Plan Administrator in consultation with the Required Consenting Stakeholders, the Plan Administrator shall serve until the earlier to occur of (a) (i) the Estates have been fully administered and all of the Wind-Down Debtors' assets have been liquidated or abandoned, (ii) all duties and obligations of the Plan Administrator under the Plan and the Asset Purchase Agreement have been fulfilled, (iii) all distributions required to be made under the Plan and this Agreement have been made, and (iv) a Final Order has been entered by the Bankruptcy Court closing the last of the Chapter 11 Cases; or (b) the Plan Administrator's death, resignation, dissolution, incapacity, or removal. Subject to Section 10, the Plan Administrator may resign at any time by giving at least forty-five (45) days' prior written notice of its intention to do so ("***Resignation Notice***") to the U.S. Trustee, the Bankruptcy Court, counsel to the Debtors (Kirkland & Ellis LLP), and counsel to the Required Consenting Stakeholders (Sullivan & Cromwell LLP). Upon the occurrence of any event described in the foregoing clause (a) or (b), all responsibilities of the Plan Administrator relating to the Debtors and the Wind-Down Debtors or arising under the Plan, the Confirmation Order, and/or this Agreement shall terminate and no further Fees shall be due to the Plan Administrator, *provided* that (x) the Plan Administrator shall be entitled to the Fees pro-rated through, and reimbursement of reasonable expenses incurred prior to, such termination in accordance with Sections 7 and 8 of this Agreement, and (y) all of the Plan Administrator's rights and protections with respect to acts or omissions occurring prior to the effectiveness of such termination shall survive.

10. *Removal of Plan Administrator*. The Plan Administrator may be removed and replaced at any time for cause. Any Beneficiary, on notice and hearing before the Bankruptcy Court, may seek removal of the Plan Administrator for cause.[1] The Plan Administrator shall be entitled to recover its fees and expenses (including legal fees) from any party that unsuccessfully attempts to remove the Plan Administrator for cause. Such removal, if any, shall be effective on the date specified in a Final Order approving removal by the Bankruptcy Court. During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall (i) continue to discharge the rights, obligations, and duties of the Plan Administrator, and (ii) continue to receive payment of Fees and Expenses incurred pursuant to this Agreement.

11. *Resignation of Plan Administrator*. In the event of a resignation, the Plan Administrator shall continue to serve until the earlier to occur of (a) the date that is forty-five (45) days after the date the Resignation Notice is filed with the Bankruptcy Court and served on the U.S. Trustee, counsel to the Debtors (Kirkland & Ellis LLP), and counsel to the Required Consenting Stakeholders (Sullivan & Cromwell LLP), and (b) a successor Plan Administrator is

---

[1] For purposes of this Agreement, the term "for cause" shall mean: (i) the indictment or conviction (including any plea of guilty or no contest) of a crime under the laws of the United States or any state thereof involving fraud, theft, false statements, or other similar acts, or the commission of any crime that is a felony (or a comparable classification in a jurisdiction that does not use such terms) under such laws; or (ii) fraud, willful misconduct, gross negligence, or failure to perform any material employment-related duties under the Plan or this Agreement that is repeated and/or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure, as determined by a Final Order of the Bankruptcy Court.

identified and accepts the appointment as Plan Administrator and notice is provided to the Bankruptcy Court, U.S. Trustee, counsel to the Debtors (Kirkland & Ellis LLP), and counsel to the Required Consenting Stakeholders (Sullivan & Cromwell LLP) of such successor Plan Administrator.  Notwithstanding the resignation of the Plan Administrator pursuant to this Section 11, the rights of the resigning Plan Administrator under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Plan Administrator following the effectiveness of such resignation. Notwithstanding any other provision herein, upon the resignation of the Plan Administrator (other than a resignation for cause), the Plan Administrator shall reasonably assist and cooperate in effecting the assumption of the duties by any successor Plan Administrator.  In the event of a resignation, the resigning Plan Administrator shall render to the successor Plan Administrator, the Debtors or the Wind-Down Debtors, as applicable, and Required Consenting Stakeholders a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Plan Administrator.

12.     *Appointment of Successor Plan Administrator*.  Upon resignation or dissolution of a Plan Administrator, the Plan Administrator shall recommend to the Debtors or the Wind Down Debtors, as applicable, a successor Plan Administrator.  Upon the consent of the Debtors or the Wind Down Debtors, as applicable, and the Required Consenting Stakeholders, and the acceptance of the appointment by the successor Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court a notice of the appointment of such successor Plan Administrator, which appointment shall be effective as of the date the notice is filed, without any further act or need for an order of the Bankruptcy Court, and the successor Plan Administrator shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor. Upon the death, incapacity, or removal of a Plan Administrator, the Bankruptcy Court upon request of any Beneficiary or on its own motion shall appoint a successor Plan Administrator on an interim or permanent basis, *provided* that any successor Plan Administrator must be acceptable to the Required Consenting Stakeholders.  Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator. Upon the appointment of a successor Plan Administrator, the predecessor Plan Administrator shall have no further liability or responsibility with respect to the Debtors or the Wind-Down Debtors. A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility.  A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator.

13.     *Powers and Duties of Successor Plan Administrator*.  For the avoidance of doubt, a successor Plan Administrator shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and the Confirmation Order.

14.     *Plan Provisions*.  In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any organizational document of the Debtors, this Agreement, the Plan, and the Confirmation Order.  Notwithstanding

7

anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.  The applicable exculpation, release, and indemnification and limitation of liability provisions set forth in the Plan, the Confirmation Order, and this Agreement (including, for the avoidance of doubt, Sections 14 through and including 19 herein) shall survive the termination of (a) this Agreement or consummation of the Plan, and (b) any Indemnified Party from the capacity for which it was deemed indemnified, and shall remain available to and binding upon any Indemnified Party and any estate of any decedent Indemnified Party.

15.    *Exculpation*.  The Plan Administrator or its Professionals, agents, or any of their respective directors, officers, affiliates, employees, employers, successors, assigns, agent, or representatives (collectively, the "***Indemnified Parties***") shall not be liable for any losses, claims, damages, liabilities, obligations settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including, without limitation, reasonable legal, or other professional fees and disbursements and the costs and expenses of investigating, analyzing, and responding to claims, of any kind or nature (each a "***Loss***" and collectively, "***Losses***"), whether or not in connection with litigation in which any Indemnified Parties is a party or enforcing this Agreement (including this exculpation provision), incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Parties' execution, delivery, and acceptance of, or performance or nonperformance of their powers, duties, and obligations under, this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court, any applicable law or as may arise by reason of any action, omission, or error of an Indemnified Party, except to the extent it is determined by a Final Order of the Bankruptcy Court to be based upon gross negligence, willful misconduct, or fraud of such Indemnified Party, *provided* that in no event will any such Person be liable for punitive, exemplary, consequential, or special damages under any circumstances.  Every act taken or omitted, power exercised, or obligation assumed by or on behalf of the Debtors, the Wind-Down Debtors, the Estates or any of the Indemnified Parties pursuant to the provisions of this Agreement, the Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Indemnified Parties acting for and on behalf of the Debtors, the Wind-Down Debtors, and the Estates and not otherwise, *provided, however*, that none of the foregoing Indemnified Parties are deemed to be responsible for any other such Indemnified Parties' actions or inactions.

16.    *Reliance by Plan Administrator*.  To the fullest extent permitted by applicable law, the Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of e-mails or facsimiles, to have been sent or the Plan Administrator reasonably believes to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other Professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or

not taken by the Plan Administrator (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall be entitled to rely upon the advice of such Professionals in acting or refraining from acting, and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction). Notwithstanding the foregoing, the Plan Administrator shall be under no obligation to consult with any Professionals and its determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud. To the fullest extent permitted by applicable law, the Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning its rights or duties under or in connection with this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or refraining from acting and shall not be liable for any act taken or not taken in reliance thereon. For the avoidance of doubt, to the fullest extent permitted by applicable law, the Plan Administrator and the other Indemnified Parties shall be entitled to rely upon written information previously generated by the Debtors, the Estates or their professional and advisors, and any action taken or omitted to be taken by the Indemnified Parties in reliance thereon or with the approval of a court of competent jurisdiction will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud.

17.    *Limitation on Liability*. The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action. No Holder of a Claim or Equity Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or any other Indemnified Parties for taking any action in accordance with, or to implement the provisions of, the Plan, this Agreement, the Confirmation Order, or any order of the Bankruptcy Court. Persons and Entities dealing with the Plan Administrator shall have recourse only and shall look only to the Wind-Down Debtors' assets to satisfy any Losses or other liability incurred by the Indemnified Parties to such Person or Entity in carrying out the terms of this Agreement, the Plan, and the Confirmation Order and the Indemnified Parties shall have no personal obligation to satisfy such liability. Notwithstanding anything contained in this Agreement, in no event will any Indemnified Parties be liable for punitive, exemplary, consequential, or special damages under any circumstances.

18.    *Indemnification*. The Wind-Down Debtors and their Estates shall, to the fullest extent permitted by law, indemnify the Indemnified Parties for, and shall defend and hold them harmless against, any Loss incurred (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction), in connection with or arising from the acceptance, administration, exercise, and performance of their duties under the Plan, this Agreement, or the Confirmation Order or in connection with the administration of the Estates and/or the Wind Down. An act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Wind-Down Debtors and the Estates shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages,

claims, costs, and expenses, including reasonable and documented attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Wind-Down Debtors, the Estates, or the implementation or administration of the Plan (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the extent an Indemnified Party asserts a claim for indemnification hereunder, the reasonable and documented legal fees and related costs incurred by counsel to such party and/or Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced by the Wind-Down Debtors and the Estates (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefor). To the extent the Wind-Down Debtors indemnify, defend, and hold harmless any Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the Plan Administrator in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as an expenses of the Wind-Down Debtors prior and superior to any other rights of Beneficiaries to receive distributions under the Plan. For the avoidance of doubt, the reasonable and documented costs and expenses incurred in enforcing the right of indemnification shall be paid by the Wind-Down Debtors. In addition to the indemnification provided hereunder or any other indemnification provided to the Plan Administrator, the Plan Administrator (in its capacity as such) shall be indemnified and held harmless as set forth in Article IV.E.4 of the Plan.

19.     *Burden of Proof.* In any proceeding brought by any of the Wind-Down Debtors or the Estates, or any other Person or Entity who is bound by this Agreement challenging any determination, action, or failure to act of any of the Indemnified Parties in discharge of their duties under this Agreement or the Plan, the Person or Entity bringing or prosecuting such proceeding shall have the burden of proving that such determination, action, or failure to act constituted gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary in this Agreement or any duty otherwise existing at law or equity, each determination, action, or failure to act of the Indemnified Parties in the discharge of their duties under this Agreement or the Plan is, to the extent consistent with this Agreement or the Plan, hereby deemed to not constitute a breach of this Agreement, the Plan, or any duty hereunder, thereunder, or existing at law, in equity, or otherwise.

20.     *Reliance by Entities Dealing with the Plan Administrator.* In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Wind-Down Debtors or the Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtors or the Estates and shall have no obligation to inquire into the existence of such authority. Each Person or Entity who is bound by this Agreement hereby waives, to the fullest extent permitted by law, any and all defenses or other remedies that may be available against such Person or Entity to contest, negate, or disaffirm any action of the Plan Administrator in connection with any such dealing. Each and every certificate, document, or other instrument executed on behalf of the Wind-Down Debtors or the Estates by the Plan Administrator or its representative or agents shall be conclusive evidence in favor of any and every Person or Entity relying thereon or claiming thereunder that (a) at the time of the execution and delivery of such certificate, document, or instrument, this Agreement was in full force and effect, (b) the Person or Entity executing and delivering such certificate, document, or instrument was duly authorized and

empowered to do so for and on behalf of the Wind-Down Debtors or the Estates, and (c) such certificate, document, or instrument was duly executed and delivered in accordance with the terms and provisions of this Agreement and is binding upon Wind-Down Debtors and the Estates.

21.    *No Successor Liability.*  Except as otherwise expressly provided in the Plan and Confirmation Order, the Plan Administrator (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) is not, and shall not be, successor to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

22.    *Effect of Termination; Survival.*  Upon termination of this Agreement, the Plan Administrator shall have no further duties or obligations hereunder or as Plan Administrator, except as specifically provided herein.  For the avoidance of doubt, any other provision in the Agreement, which, by its terms, specifically survives termination of the Agreement, shall survive termination of this Agreement.

23.    *Headings.*  The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement or of any term or provision hereof.

24.    *Amendment; Waiver.* No term or provision of this Agreement may be amended, modified, supplemented, or waived without the prior written consent of the Plan Administrator, the Debtors or the Wind-Down Debtors, as applicable, and the Required Consenting Stakeholders, and with the approval of the Bankruptcy Court, *provided* that the Plan Administrator may make any non-material modification, supplement, or amendment to this Agreement to clarify any ambiguity or inconsistency or render this Agreement in compliance with its stated purposes so long as such modification, supplement, or amendment is reasonably acceptable to the Required Consenting Stakeholders and prior notice is provided to counsel to the Debtors (Kirkland & Ellis LLP) and counsel to the Required Consenting Stakeholders (Sullivan & Cromwell LLP).  No failure by any party hereto to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

25.    *Governing Law.*  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

26.    *Retention of Jurisdiction.* The Bankruptcy Court shall retain jurisdiction over this Agreement.

27.    *Conflict with Plan.*  This Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the

Plan shall control.  Notwithstanding anything to the contrary contained herein, all fees, costs, expenses, and payments hereunder shall be subject in all respects to the provisions of the Plan.

28. *Severability*.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

29. *Waiver.*  No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

30. *Cumulative Rights and Remedies.*  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

31. *Limitation of Benefits.*  Except as otherwise specifically provided in this Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

32. *Integration*.  This Agreement (together with the Plan and the Confirmation Order) sets forth in full the terms of agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements, and understandings, whether written or oral, between the parties with respect thereto.

33. *Notices*.  Unless otherwise expressly specified or permitted by the terms of the Plan, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or email transmission (and confirmed by mail), in any such case addressed as follows:

If to the Plan Administrator:    Attention: Andrew Spirito
                                 Email address: andrew.spirito@fticonsulting.com

                                 With a copy to (which shall not constitute notice):

                                 Attention: Michael Yoshimura
                                 Email address: michael.yoshimura@fticonsulting.com

                                 Attention: Sean Higgins
                                 Email address: sean.higgins@fticonsulting.com

If to the Wind-Down Debtors:           Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:  Francis Petrie, Nikki Gavey, Olivia Acuña
E-mail addresses:
francis.petrie@ @kirkland.com
nikki.gavey@kirkland.com
olivia.acuna@kirkland.com

If to the Required Consenting
Stakeholders:                     Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention: Ari B. Blaut, Benjamin S. Beller
Email: blauta@sullcrom.com
bellerb@sullcrom.com

34.    *Successors and Assigns.*  No party hereto shall have the right to assign its rights hereunder.

35.    *Counterparts; Effectiveness.*  This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.  Provided the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  The parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or e-mail transmission.  Such facsimile or e-mail signature shall be treated in all respects as having the same effect as an original signature.

36.    *Preservation of Privilege.*  The Plan Administrator shall seek to preserve and protect all applicable privileges and work-product relating to the Claims reconciliation process and any Causes of Action of the Wind-Down Debtors and the Estates, including but not limited to any attorney-client privilege or work product privilege attaching to any documents or communications (whether written or oral).  The Plan Administrator's receipt of such information shall not waive any such privileges, and all such privileges are expressly preserved.

*[Signature pages follow.]*

      IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

DEBTORS:

By:

_____

Name: Thomas R. Brida
Title:  General Counsel of Invitae Corporation

      IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

PLAN ADMINISTRATOR:

By:

_____
Name: Andrew Spirito
Title: Plan Administrator

**<u>Exhibit G</u>**

**Transactions Steps Memorandum**

## Transactions Steps Memorandum

This Transactions Steps Memorandum sets forth a summary description of certain proposed transactions (the "Transactions") to be effected in connection with the consummation of the transactions contemplated by the *Second Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* filed contemporaneously herewith (as amended, supplemented, or modified from time to time in accordance with its terms, the "Plan").[1]

The Transactions remain under discussion among the Debtors and other parties.  Subject to the applicable consent rights contained in the TSA and the Plan, the Debtors reserve all rights to modify, amend, supplement, and restate any part of this Transactions Steps Memorandum as necessary or appropriate.  Moreover, the list of steps in this Transactions Steps Memorandum is not necessarily comprehensive.

To the extent there is any inconsistency between this document and the Plan, the Plan shall govern.

The Confirmation Order shall be deemed to authorize all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.  The Debtors currently anticipate that the Transactions will occur pursuant to the following steps and in the following order, which may be subject to further changes.

<u>Transactions Steps</u>

**On or Before the Effective Date:**

<u>Step 1</u>: The transaction contemplated under that certain Asset Purchase Agreement dated as of May 1, 2024, by and among Labcorp Genetics Inc (the "Purchaser"), Laboratory Corporation of America Holdings (the "Guarantor"), and Invitae and certain of its subsidiaries (each, a "Seller" and collectively, the "Sellers") shall have closed, and the Sellers shall have received the proceeds of such transaction from the Purchaser or the Guarantor, as applicable.

**On the Effective Date or as soon as reasonably practicable thereafter (unless otherwise specified in the Plan):**

<u>Step 2</u>: All Equity Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.

<u>Step 3</u>: The Debtors shall establish the GUC Distribution Reserve in accordance with the terms of the Plan.

<u>Step 4</u>: The Debtors shall distribute to each Holder of an Allowed Other Secured Claim (Class 1) or an Allowed Other Priority Claim (Class 2) an amount of Cash equal to the amount of such

---

[1]    Capitalized terms used but not defined herein have the meanings given to them in the Plan or in the Asset Purchase Agreement, as applicable.

Holder's Allowed Other Secured Claim or Allowed Other Priority Claim, as applicable, unless (i) such Claim is Reinstated; or (ii) such Holder receives such other recovery necessary to satisfy section 1129 of the Bankruptcy Code, in each case, in full and final satisfaction of its claims.

**Step 5**: The Debtors shall distribute to each Holder of an Allowed Convenience Class Claim (Class 4) an amount of Cash equal to the amount of such Holder's Allowed Convenience Class Claim in full and final satisfaction of its claims.

**Step 6**: Following payment in full of Claims in Classes 1, 2, and 4, the Debtors shall distribute to each Holder of an Allowed 2028 Senior Secured Notes Claims (Class 3) its Pro Rata share of Distributable Value (including Residual Cash) that is available to be distributed.

**Step 7**: Following payment in full of Claims in Classes 1, 2, 3, and 4, the Debtors shall distribute to each Holder of Allowed Subsidiary Unsecured Claims (Class 5), Allowed Parent Unsecured Claims (Class 6), and Allowed Contingent Subsidiary Unsecured Claims (Class 11) its Pro Rata share of  each of (i) any additional Distributable Value allocable to the applicable Debtor subsidiary or Invitae Corporation, as applicable, and (ii) the GUC Distribution Reserve.

**As soon as reasonably practicable following the Effective Date:**

**Step 8**: The Debtors shall be liquidated and dissolved, *provided* that at least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors to effectuate the Wind Down in accordance with the Plan.

**Step 9**: To the extent Allowed 2028 Senior Secured Notes Claims (Class 3) are not paid in full on the Effective Date, the Wind-Down Debtors shall distribute to each Holder of such Allowed 2028 Senior Secured Notes Claim its Pro Rata share of any additional Distributable Value realized during the Wind Down until each Holder of Allowed 2028 Senior Secured Notes Claims have been paid in full and final satisfaction of its claims.

**Step 10:** Following payment in full of Claims in Class 3, the Wind-Down Debtors shall distribute to each Holder of Allowed Subsidiary Unsecured Claims (Class 5), Allowed Parent Unsecured Claims (Class 6), and Allowed Contingent Subsidiary Unsecured Claims (Class 11) its Pro Rata share of each of (i) any additional Distributable Value realized during the Wind Down allocable to the applicable Debtor subsidiary or Invitae Corporation, as applicable, and (ii) the GUC Distribution Reserve, until the earlier of (i) the termination of the Wind Down and the closing of the last of the Chapter 11 Cases and (ii) the full payment of all Allowed Subsidiary Unsecured Claims, Allowed Parent Unsecured Claims, and Allowed Contingent Subsidiary Unsecured Claims.

## **Exhibit G -1**

**Redline to Previously Filed Transactions Steps Memorandum**

**Transactions Steps Memorandum**

This Transactions Steps Memorandum sets forth a summary description of certain proposed transactions (the "Transactions") to be effected in connection with the consummation of the transactions contemplated by the *Second* Amended Joint Plan of ~~Reorganization of~~ *Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ~~[Docket No. 630]~~*(Technical Modifications)* filed contemporaneously herewith (as amended, supplemented, or modified from time to time in accordance with its terms, the "Plan").[1]

The Transactions remain under discussion among the Debtors and other parties.  Subject to the applicable consent rights contained in the TSA and the Plan, the Debtors reserve all rights to modify, amend, supplement, and restate any part of this Transactions Steps Memorandum as necessary or appropriate.  Moreover, the list of steps in this Transactions Steps Memorandum is not necessarily comprehensive.

To the extent there is any inconsistency between this document, ~~the Asset Purchase Agreement,~~ and the Plan, the Plan shall govern.

The Confirmation Order shall be deemed to authorize all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.  The Debtors currently anticipate that the Transactions will occur pursuant to the following steps and in the following order, which may be subject to further changes.

Transactions Steps

**On or Before the Effective Date:**

**Step 1**: The transaction contemplated under that certain Asset Purchase Agreement dated as of May 1, 2024, by and among Labcorp Genetics Inc (the "Purchaser"), Laboratory Corporation of America Holdings (the "Guarantor"), and Invitae and certain of its subsidiaries (each, a "Seller" and collectively, the "Sellers") shall have closed, and the Sellers shall have received the proceeds of such transaction from the Purchaser or the Guarantor, as applicable.

**On the Effective Date or as soon as reasonably practicable thereafter (unless otherwise specified in the Plan):**

**Step 2**: All Equity Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.

**Step 3**: The Debtors shall establish the GUC Distribution Reserve in accordance with the terms of the Plan.

**Step ~~3~~4**: The Debtors shall distribute to each Holder of an Allowed Other Secured Claim (Class 1) or an Allowed Other Priority Claim (Class 2) an amount of Cash equal to the amount of such

---

[1]    Capitalized terms used but not defined herein have the meanings given to them in the Plan or in the Asset Purchase Agreement, as applicable.

Holder's Allowed Other Secured Claim or Allowed Other Priority Claim, as applicable, unless (i) such Claim is Reinstated; or (ii) such Holder receives such other recovery necessary to satisfy section 1129 of the Bankruptcy Code, in each case, in full and final satisfaction of its claims.

**Step 4~~5~~**: The Debtors shall distribute to each Holder of an Allowed Convenience Class Claim (Class 4) ~~or an Allowed Subsidiary Unsecured Claim (Class 5), as applicable,~~ an amount of Cash equal to the amount of such Holder's Allowed Convenience Class Claim ~~or Allowed Subsidiary Unsecured Claim, as applicable,~~ in full and final satisfaction of its claims.

**Step 5~~6~~**: Following payment in full of Claims in Classes 1, 2, and 4~~, and 5~~, the Debtors shall distribute to each Holder of an Allowed 2028 Senior Secured Notes Claims (Class 3) its Pro Rata share of Distributable Value (including Residual Cash) that is available to be distributed.

**Step 6~~7~~**: ~~To the extent~~ Following payment in full of Claims in Classes 1, 2, 3, and 4~~, and 5 are paid in full on the Effective Date~~, the Debtors shall distribute to each Holder of Allowed Subsidiary Unsecured Claims (Class 5), Allowed Parent Unsecured Claims (Class 6), and Allowed Contingent Subsidiary Unsecured Claims (Class 11) its Pro Rata share of ~~any remaining each of (i) any additional~~ Distributable Value ~~(including Residual Cash) that is available to be~~ allocable to the applicable Debtor subsidiary or Invitae Corporation, as applicable, and (ii) the GUC ~~d~~Distribut~~ed~~ion Reserve.

**As soon as reasonably practicable following the Effective Date:**

**Step 7~~8~~**: The Debtors shall be liquidated and dissolved, *provided* that at least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors to effectuate the Wind Down in accordance with the Plan.

**Step 8~~9~~**: To the extent Allowed 2028 Senior Secured Notes Claims (Class 3) are not paid in full on the Effective Date, the Wind-Down Debtors shall distribute to each Holder of such Allowed 2028 Senior Secured Notes Claim its Pro Rata share of any additional Distributable Value realized during the Wind Down until each Holder of Allowed 2028 Senior Secured Notes Claims have been paid in full and final satisfaction of its claims.

**Step 9~~10~~:** Following payment in full of Claims in Class 3, the Wind-Down Debtors shall distribute to each Holder of Allowed Subsidiary Unsecured Claims (Class 5), Allowed Parent Unsecured Claims (Class 6), and Allowed Contingent Subsidiary Unsecured Claims (Class 11) its Pro Rata share of each of (i) any additional Distributable Value realized during the Wind Down allocable to the applicable Debtor subsidiary or Invitae Corporation, as applicable, and (ii) the GUC Distribution Reserve, until the earlier of (i) the termination of the Wind Down and the closing of the last of the Chapter 11 Cases and (ii) the full payment of all Allowed Subsidiary Unsecured Claims, Allowed Parent Unsecured Claims, and Allowed Contingent Subsidiary Unsecured Claims.