**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**PROSKAUER ROSE LLP**
Timothy Karcher, Esq. (NJ28351998)
Michael Mervis, Esq.
Jorge Gonzalez, Esq.
11 Times Square
New York, NY 10036
212-969-3000
TKarcher@proskauer.com
MMervis@proskauer.com
JGonzalez@proskauer.com

*Counsel to Integrated DNA Technologies, Inc.*

In re:

Invitae Corporation, e*t al.*,[1]

          Wind-Down Debtors.

Case No. 24-11362 (MBK)

Chapter 11

(Jointly Administered)

### REQUEST FOR ALLOWANCE OF ADMINSTRATIVE EXPENSE AND OBJECTION AND RESERVATION OF RIGHTS OF INTEGRATED DNA TECHNOLOGIES, INC. WITH RESPECT TO THE MOTION OF TECAN GENOMICS, INC. FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

Integrated DNA Technologies, Inc. ("IDT") respectfully submits this *Request for Allowance of Administrative Expense*, and *Objection and Reservation of Rights with Respect to the Motion of Tecan Genomics, Inc. for Allowance of Administrative Claim* [Docket No. 1010] (the "Tecan Motion") and respectfully states as follows:

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these Chapter 11 Cases is 1400 16th Street, San Francisco, California 94103.

## PRELIMINARY STATEMENT[2]

1.      IDT is seeking payment for open invoices incurred by the Debtors post-petition. IDT hereby requests allowance and payment of such claims as administrative expenses.

2.      Separately, IDT is a co-defendant with the Debtors in certain alleged patent infringement litigation commenced by Tecan Genomics, Inc. ("Tecan").  To the extent such alleged infringement arose post-petition, Tecan has requested that its claims against the Debtors be afforded administrative expense status in these Chapter 11 Cases.  Likewise, IDT requests its indemnification claims arising from the same litigation to be afforded administrative expense status.  As described below, Tecan's request may be prejudicial to IDT's rights, including IDT's rights to indemnification from the Debtors, and is the subject of separate litigation currently pending in the United States District Court for the District of Delaware.  IDT has previously filed two proofs of claim in these Chapter 11 Cases, asserting, among other things, IDT's rights to indemnification.  To the extent Tecan's requests in the Tecan Motion are granted, IDT asserts, and reiterates, its rights to indemnification as an administrative expense in connection therewith.  If the indemnification claims are not allowed as administrative expenses, or otherwise resolved, the indemnification claims constitute general unsecured claims in connection with the rejection of the APA (discussed below).

## BACKGROUND AND RELEVANT FACTS

A.      The Acquisition Transactions

3.      IDT is a leading supplier of custom nucleic acids servicing customers in the academic research, biotechnology, clinical diagnostics and pharmaceutical development arenas.

---

[2] Any terms not defined herein shall have the same meaning as ascribed to them in the Plan (defined below).

4.      As set forth in IDT's *Objection to Debtors' Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases in Connection with Motion for Entry of an Order Authorizing Assumption and Assignment of Assumed Contracts and Authorizing the Sale of Assets* [Docket No. 403] (the "<u>Assumption Objection</u>"), on December 19, 2022, IDT and the Debtors entered into that certain *Asset Purchase Agreement* (the "<u>APA</u>") and several related agreements in connection with the sale of, among other things, the Debtors' ArcherDX business and licenses of intellectual property to IDT (collectively, the "<u>Agreement</u>").

5.      Pursuant to the Agreement, among other things, IDT agreed to manufacture and supply products to the Debtors, and in return, in the APA and elsewhere, the Debtors agreed to indemnify IDT for liabilities arising from, among other things, any infringement or violation of any third party's intellectual property, or allegations thereof, including with respect to such infringement or violation resulting from any products or services sold to IDT by the Debtors. Assumption Objection ¶ 14.

B.      <u>The Tecan Action</u>

6.      After IDT and the Debtors entered into the Agreement, IDT and the Debtors were named as defendants in that certain litigation styled *Tecan Genomics, Inc., v. Invitae Corporation,* Case No. 23-cv-01114 (GBW) (D. Del.) (the "<u>Tecan Action</u>"), which was commenced in the United States District Court for the District of Delaware in October 2023.  As the plaintiff, Tecan asserted various claims against the Debtors and IDT, alleging infringement of various patents, and asserting that certain products now sold by IDT utilize infringing technology.  Assumption Objection ¶ 19.  IDT filed an answer in the Tecan Action, in which it denied Tecan's allegations of infringement.  *Id.*

C.      The Debtors' Bankruptcy Cases

7.      On February 13, 2024 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  As a result of the Debtors' bankruptcy filing, the Tecan Action was stayed as to the Debtor defendants.

8.      The Court subsequently entered an order establishing April 15, 2024, as the deadline to file prepetition, non-governmental proofs of claim against the Debtors.  [Docket No. 189].

9.      On April 12, 2024, IDT timely filed two proofs of claim in these cases—one against debtor Invitae Corporation ("Invitae") (Proof of Claim No. 1047), and another against debtor ArcherDX, LLC ("ArcherDX") (Proof of Claim No. 1048) (collectively, the "IDT Claims").  The IDT Claims are substantively identical, and describe, among other things, unliquidated claims arising from the Debtors' contractual pre- and post-petition obligations to indemnify IDT under the Agreement and in connection with the Tecan Action.  *See* Proofs of Claim Nos. 1047, 1048 ¶ 4.  The IDT Claims further describe administrative expenses owed to IDT for open invoices incurred by the Debtors after the Petition Date in the amount of $322,699.27.  *Id*. ¶ 5.  The amount of the open invoices was subsequently reduced, but there is still an open balance of $188,574.86 of which $159,658.05 is past due.

10.     On April 11, 2024, Tecan also filed a proof of claim against each of Invitae and ArcherDX, alleging that the Debtors are liable to Tecan in an unliquidated amount on account of any damages and related costs arising from the Tecan Action, and asserting an administrative claim for post-petition, ongoing future infringement related damages.  *See* Proofs of Claim Nos. 719, 731 (collectively, the "Tecan Claims").

11.     During the Chapter 11 Cases, Labcorp Genetics Inc. (the "Purchaser") acquired

4

substantially all the assets of the Debtors.

D.      Confirmation of the Debtors' Plan

12.      On August 2, 2024, the Court entered an order [Docket No. 913] confirming the

*Third Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter*

*11 of the Bankruptcy Code* [Docket. No. 909] (the "<u>Plan</u>").  The Effective Date of the Plan occurred

on August 7, 2024. [Docket No. 932].  The Administrative Claims Bar Date is September 6, 2024.[3]

Pursuant to the Plan, unless otherwise agreed, Holders of Allowed Administrative Claims are

entitled to an amount of Cash equal to the amount of such Holder's Allowed Administrative

Claim.[4]

13.      After the Plan was confirmed, the Plan Administrator, IDT, and the Purchaser

entered into a *Stipulation and Agreed Order Authorizing Assumption and Assumption of IDT*

*Agreements* (the "<u>Stipulation</u>"), which was so-ordered by the Bankruptcy Court on September 6,

2024 [Docket No. 1015] and provides for the assumption and assignment to the Purchaser of

certain agreements.  The Stipulation does not address the APA (which contains separate indemnity

obligations to IDT), and further provides that Indemnity Claims, as such term is defined in the

Stipulation, remain with the Debtors, all as more fully set forth in the Stipulation.

E.      The Tecan Motion

14.      On September 4, 2024, Tecan filed the Tecan Motion, seeking entry of an order

allowing Tecan an administrative expense in an amount of no less than $2,750,000 (the "<u>Tecan</u>

<u>Administrative Claim</u>").  Tecan Motion ¶ 12.  Tecan asserted that the Debtors continued to infringe

upon patents in the same manner as described in the Tecan Claims following the Petition Date and

---

[3] Plan, § I.A.20.
[4] Plan, § II.A.

through the Effective Date. *Id*. ¶ 8. Tecan argued that patent infringement claims may be entitled to administrative expense status. *Id*. ¶ 10. More specifically, the Tecan Administrative Claim includes: (A) royalties allegedly owed to Tecan in connection with revenues obtained from the manufacture and sale of products by the Debtors during the post-petition period at a "reasonable" market rate, and (B) attorneys' fees, costs, and expenses. *Id*. ¶ 12.

## REQUEST FOR ADMINISTRATIVE EXPENSE STATUS

15.     As asserted in the IDT Claims, IDT is owed administrative expenses for open invoices incurred by the Debtors post-petition. *See supra* ¶ 9. At present, the open invoices incurred by the Debtors post-petition total <u>$188,574.86</u>, of which <u>$159,648.05</u> is considered past due. IDT hereby reasserts its right to administrative expense status for such amounts, and requests allowance and payment of the same as administrative expenses.

16.     Separately, IDT asserts, and reiterates, that its indemnification claims against the Debtors arising from the Tecan Action and the Tecan Claims must be entitled to administrative expense status on the same level of any claims Tecan may have. Specifically, the Tecan Action gives rise to indemnification claims owed by the Debtors to IDT under the APA, including for post-petition amounts, which IDT asserted in the IDT Claims and reasserts here. IDT submits that the indemnification claims amount to "actual, necessary costs and expenses of preserving the bankruptcy estate" under Bankruptcy Code § 503(b). Specifically, the continuing business relationship between IDT and the Debtors proved to be necessary and highly beneficial to the

Debtors' estates.[5]

17.     Accordingly, IDT requests allowance and payment of any indemnification claims accrued during the post-petition period as administrative expenses.  However, the request for administrative expense status with respect to IDT's indemnification rights is, in many respects, a placeholder until the Tecan Action is resolved, for the reasons set forth below. Further, if the indemnification claims are not allowed as administrative expenses, or otherwise resolved, the indemnification claims constitute general unsecured claims in connection with the rejection of the APA, and as otherwise asserted in the IDT Claims.

## <u>OBJECTION AND RESERVATION OF RIGHTS</u>

18.     Notwithstanding IDT's assertion that its indemnity claims are entitled to administrative priority, IDT objects to the Tecan Motion to the extent it asks the Bankruptcy Court to resolve the Tecan Action, and fully reserves its rights in connection therewith.  As asserted in the Tecan Action, IDT denies any liability of the Debtors and/or IDT in connection with the Tecan Action.  Tecan has not established such liability under the Tecan Claims, the Tecan Administrative Claim, or otherwise, and the Tecan Action is pending in a separate litigation before the United States District Court for the District of Delaware.  Tecan cannot take a shortcut in the Tecan Action by asserting its claims as administrative expenses, and the Tecan Motion is, therefore, fundamentally flawed.

19.     The Tecan Action is a complex proceeding implicating numerous issues of fact and

---

[5] Indeed, consistent with the Supreme Court's *Reading Company v. Brown* opinion (391 U.S. 471, 483 (1968)), even "a post-petition tort committed by a debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under section 503(b)(1)(A)." *In re Mallinckrodt PLC*, No. 20- 12522, 2021 WL 4876908, at *3 (Bankr. D. Del. Oct. 19, 2021).  The same logic applies here with respect to the indemnification obligations owed by the Debtors to IDT, which represented a cost of doing business with IDT for the Debtors.

law, including patent law, which are customarily adjudicated in a multiyear litigation, involving

fact and expert discovery, a claim construction hearing, summary judgment practice, and

potentially a multi-day trial.  There is no world in which a proceeding to allow an administrative

claim could take the place of ordinary patent litigation proceedings.  Nor is there any reasonable

assurance that such an abbreviated proceeding could result in an allowance of a claim that

accurately reflects the value of Tecan's claims (even assuming that Tecan's claims have any

value).

20.    As previously noted by IDT, this is a focus and concern of IDT, because IDT is a

co-defendant with the Debtors in the same litigation pending as to Tecan's claims and has

contractual claims against the Debtors for indemnities in connection with that litigation.  Any

determination of Tecan's claims (administrative or otherwise) against the Debtors must be

performed while appreciating the contours of that separate litigation, and with the understanding

that IDT's claims against the Debtors include contractual claims for indemnification against the

Debtors for any liabilities of IDT, because the net effect of any claims of Tecan against the Debtors

must take all of that into account.  Such a web of issues, being unwound in separate pending

litigation scheduled to take place over a term of years, cannot—and should not—be reduced to a

bankruptcy claims allowance process.

21.    Considering the above, IDT respectfully submits that the Bankruptcy Court is not

the proper forum to determine, or even estimate, any sums owed by the Debtors to Tecan pursuant

to the Tecan Action, and certainly not on a motion to allow an administrative claim.

22.    More importantly, the Bankruptcy Court does not have jurisdiction to consider the

Tecan Motion. Title 28 of the U.S. Code provides for mandatory withdrawal of the reference back

to the district court under certain conditions.  28 U.S.C. § 157(d).  Section 157(d) states that the

"district court shall, on timely motion of a party, so withdraw a proceeding if the court determines

that resolution of the proceeding requires consideration of both title 11 and other laws of the United

States regulating organizations or activities affecting interstate commerce." *Id*.

23.    More specifically, because patent law is governed by title 35 of the U.S. Code, *i.e.*

another "law of the United States," contested bankruptcy matters involving patent law have

previously warranted withdrawal of the reference when the products in question are being placed

in the stream of interstate commerce.  *Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co.)*, 01

Civ. 0165 (WHP), 2002 U.S. Dist. LEXIS 2629, at *10 (S.D.N.Y. Feb. 15, 2002) (holding that

"determining whether an accused product infringes a patent requires significant and material

consideration of patent law," thus making withdrawal of the reference mandatory).  *In re Electro-*

*Mechanical Industries, Inc.*, Case No. 4:07-bk-36393 (Bankr. S.D. Tex. Feb. 20, 2008), Docket

No. 83 (recommending mandatory withdrawal of the reference regarding debtor's motion to

estimate patent infringement claims).[6]    Since the Tecan Action depends on patent law and

implicates products now sold by IDT across multiple states, the same conclusion applies here.

24.    To the extent the Bankruptcy Court considers the Tecan Motion, it must give IDT

the opportunity to participate and be heard in any associated proceedings, including the scheduling

thereof.  Additionally, to the extent the Bankruptcy Court considers the Tecan Motion, it should

make clear that any determination entered in connection therewith does not have any preclusive or

similarly adverse effect on any rights, claims, or defenses of IDT in the Tecan Action and/or the

Chapter 11 Cases.  *See e.g. In Beatrice Co. v. Rusty Jones, Inc.*, 153 B.R. 535, 538 (N.D. Ill. 1993)

(establishing that the mere risk that a bankruptcy court decision on estimation may create a basis

---

[6] *See also In re Electro-Mechanical Industries, Inc*, Case No. 4:08-cv-00646 (S.D. Tex. Feb. 28, 2008), Docket No. 3
(granting withdrawal of the reference).

9

for preclusion outside bankruptcy is reason enough to decline conducting the estimation).  Any

such adverse effect would be in violation of IDT's due process rights as a non-party to the Tecan

Motion.  *See Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) (holding that collateral

estoppel requires that "(1) the identical issue was previously adjudicated; (2) the issue was actually

litigated; (3) the previous determination was necessary to the decision; and (4) the party being

precluded from relitigating the issue was fully represented in the prior action.")

25.      IDT fully reserves its rights with respect to the Tecan Action and the Tecan Motion.


*[Remainder of page intentionally blank]*

WHEREFORE, for all the reasons set forth herein, IDT respectfully requests allowance of its administrative expenses for past due open invoices incurred post-petition in the amount of $159,648.05, plus any amounts that have been billed, but are not yet past due.  In addition, IDT respectfully requests that the Bankruptcy Court deny the Tecan Motion.  Should the Bankruptcy Court grant the Tecan Motion, IDT requests any order in connection therewith contain language expressly stating that the order will not have any preclusive or similar effect on Tecan's claims against IDT in the Tecan Action or elsewhere, or on the IDT Claims.  In the absence of such assurances against prejudice, IDT should be given the opportunity to participate in the design and scheduling of the allowance process regarding the Tecan Administrative Claim, with the option to have that process also address the IDT Claims to the extent they pertain to post-petition amounts. Moreover, to the extent the Tecan Administrative Claim is allowed, IDT's associated indemnification claims must also be allowed as administrative expenses, and any such claims that are not allowed, or otherwise resolved, should be treated as unsecured claims against the Debtors' estates.

Dated: September 6, 2024

Respectfully submitted,

*Timothy Karcher*
Timothy Karcher, Esq.
Michael Mervis, Esq.
Jorge Gonzalez, Esq.
**PROSKAUER ROSE LLP**
11 Times Square
New York, NY 10036
Telephone: 212-969-3000
Email: TKarcher@proskauer.com
        MMervis@proskauer.com
        JGonzalez@proskauer.com