**GIBBONS P.C.**
Robert K. Malone
Kyle P. McEvilly
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
      kmcevilly@gibbonslaw.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Lisa A. Gerson (*pro hac vice* forthcoming)
Deanna D. Boll
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Email: dazman@mwe.com
      dboll@mwe.com

*Co-Counsel to Natera Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |
| NATERA INC.,<br><br>        Plaintiff,<br><br>v.<br><br>INVITAE CORPORATION, *et al.*,<br><br>        Defendant. | Adv. Pro. No. 25-_____-MBK |

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**VERIFIED ADVERSARY COMPLAINT**

Plaintiff, Natera Inc. ("Natera" or "Plaintiff"), by way of this Complaint against Invitae Corporation ("Invitae" or "Defendant" and, together with the above-captioned debtors and debtors-in-possession, the "Debtors"), seeks entry of a declaratory judgment and injunctive relief.

**INTRODUCTION**

1. This lawsuit arises from the Debtors' rejection of a confidential Asset Purchase Agreement, dated January 17, 2024 (the "APA"), between Invitae and Natera (together, the "Parties"). Notwithstanding its rejection, the estates' plan administrator (the "Plan Administrator") now seeks to litigate an APA dispute in another court, as if the rejection had never occurred. As detailed below, among other things, the Plan Administrator's action must be enjoined.

2. Under the APA, the Parties had certain future and contingent obligations and, throughout the Debtors' chapter 11 cases (the "Chapter 11 Cases" or the "Cases"), Natera continued to perform under the APA.

3. One such future obligation involved Natera's calculation of a "Volume Retention Percentage"—based, at least in part, on data to be collected and analyzed months after Invitae's bankruptcy filing—and a potential (*i.e.*, contingent) "Milestone Payment" to Invitae depending on the outcome of that calculation.

4. And so, while it waited for Invitae to decide whether to assume, assume and assign, or reject the APA, Natera took certain actions in the Cases to protect its rights. Specifically, Natera filed (1) a motion to preserve its setoff rights pursuant to the Bankruptcy Code, and (2) a motion to lift the automatic stay in order to adjudicate a contract interpretation dispute concerning the Milestone Payment (collectively, the "Motions"). In lieu of adjudicating the Motions during the

2

Cases, the Parties agreed to preserve their rights so that the plan could be confirmed (the "Confirmed Plan").

5. But ultimately, Natera's efforts to preserve its rights proved unnecessary, because months before the Volume Retention Percentage could have been calculated or the Milestone Payment could have been triggered, Invitae rejected the APA, relieving both parties of their obligations of future performance.

6. Despite the rejection of this executory contract, the Plan Administrator recently initiated a declaratory judgment action in Delaware state court (pursuant to the APA's forum selection clause) concerning interpretation of the Milestone Payment provisions.

7. But it is legally improper, not to mention illogical, for the Parties to litigate interpretation of a contract that Invitae—in its business judgment—decided to reject.

8. The Plan Administrator should be prohibited from proceeding as if Invitae assumed the APA—because it did not.

9. Nor may the Plan Administrator cherry pick *parts* of the APA that appear favorable (*i.e.*, the Milestone Payment provisions) when the APA was rejected *in toto*. Rejection is not piecemeal, and the result of the rejection of the APA renders all matters related to future performance under the APA moot, including matters related to the Milestone Payment.

10. Accordingly, Natera seeks a declaration from this Court that (1) Invitae rejected the APA; (2) Invitae's rejection of the APA constitutes a breach of the APA by Invitae as of the day before the Petition Date (defined herein), or February 12, 2024 (the "Rejection Date"); and (3) as the non-breaching party, Natera had no further obligation to perform under the APA after the Rejection Date, including with respect to the Milestone Payment and/or litigation of any (now moot) APA interpretation disputes.

11. Natera also seeks by way of this adversary proceeding a permanent injunction against the Defendant preventing the enforcement or adjudication of the APA by Invitae or its representatives, including the Plan Administrator, in any courts, including in the state court proceeding, *Invitae Corporation v. Natera, Inc.*, Case No. 2024-1284, in the Court of Chancery of the State of Delaware.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 because this is a civil proceeding arising in or related to the Debtors' chapter 11 cases. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13. In addition, this Court retained jurisdiction "over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan." *See Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 913] (the "Confirmation Order"), dated August 2, 2024, at ¶ 133.

14. Article XI of the Plan provides that the Bankruptcy Code specifically retained *exclusive* jurisdiction of all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to "resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party . . . and to hear, determine, and, if necessary, liquidate any Claims arising therefrom." *See* Third Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications), dated August 1, 2024 [Dkt. No. 909] (the "Confirmed Plan"), Art. XI at No. 3.

15. The APA was listed as a rejected contract on Schedule C to the *Debtors' Third Amended Plan Supplement for Third Amended Joint Plan of Reorganization of Invitae Corporation and Its Debtor Affiliates*, dated August 7, 2024 [Dkt. No. 924] (the "Third Amended & Final Plan Supplement").

16. The Confirmation Order provides that "all documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan." *See* Confirmation Order, ¶ 18.

17. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Natera consents to the entry of a final order or judgment by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent or the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

## PARTIES

18. Plaintiff Natera Inc. is a corporation organized under the laws of Delaware with its principal place of business in San Carlos, California.

19. Defendant Invitae Corporation is a corporation organized under the laws of Delaware with its principal place of business in San Francisco, California.

## BACKGROUND

**I.     The Parties' Prepetition Relationship.**

20. Founded in 2004, Natera is a pioneering molecular technology company with industry-leading healthcare products. For well over a decade, Natera has been researching and developing non-invasive methods for analyzing DNA in order to help patients and doctors manage

5

diseases. These ongoing efforts have given rise to a number of novel and proprietary cell-free DNA ("cfDNA") testing technologies to assist with life-saving health management.

21. Invitae was founded in January 2010, and it has described itself as a "leading medical genetics company that is in the business of delivering genetic testing services, digital health solutions, and health data services . . . [and] offers genetic testing across multiple clinical areas, including hereditary cancer, precision oncology, and rare diseases." *See Disclosure Statement Relating to the Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, at p. 10 [Dkt. No. 614].

22. Natera and Invitae have had business relationships prepetition, some amicable and some adversarial, over the course of many years. Certain transactions between the Parties have occurred out-of-court and others have been in-court, such as federal patent law litigation.

23. On January 17, 2024, roughly a month before Invitae's bankruptcy filing, the Parties entered into the APA. Pursuant to the APA, Natera purchased certain assets from Invitae. The Parties also had certain contingent future obligations under the APA.[2] The Milestone Payment by Natera to Invitae was one of the contingent future obligations under the APA, which could not have possibly been triggered until approximately three months into these Chapter 11 Cases.

II. **The Chapter 11 Cases Leading Up to Plan Confirmation.**

24. On February 13, 2024 (the "Petition Date"), the Debtors commenced their Chapter 11 Cases by filing petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases were jointly administered pursuant to Bankruptcy

---

[2] The APA contained information that was designated by Invitae and Natera as confidential pursuant to a certain Confidentiality and Rule 408-Plus Agreement, dated as of September 1, 2022, by and between Natera and its subsidiaries and affiliates on the one hand, and certain of the Debtors and their respective employees, legal counsel, and board members on the other hand, as amended by Addendum No. 1 thereto (the "Confidentiality Agreement"). Should the Court enter a scheduling or briefing order in this matter, Natera will provide more details regarding the terms of the APA in a submission filed pursuant to a Motion Under Seal.

6

Rule 1015(b) and Rule 1015-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

25. On June 13, 2024, the Debtors filed the *Solicitation Version of the Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 630].³

26. On June 19, 2024, Natera filed a *Motion for Relief from Stay to Effectuate a Setoff Pursuant to Sections 362 and 553 of the Bankruptcy Code* [Dkt. No. 670] (the "Setoff Motion") seeking authority to setoff potential amounts due to Invitae under the APA against potential monies owed by Invitae to Natera for judgment interest on certain jury awarded damages from a federal patent law litigation. The Setoff Motion was filed under seal due to the Confidentiality Agreement.

27. On July 1, 2024, Natera filed a *Motion for Relief from Stay, Pursuant to Section 362 of the Bankruptcy Code, to Initiate Delaware State Law Proceeding* [Dkt. No. 711] (the "Lift Stay Motion"), seeking modification of the automatic stay to initiate a declaratory judgment action against Invitae to resolve the contract interpretation dispute regarding the Milestone Payment in the APA. The Lift Stay Motion was also filed under seal due to the Confidentiality Agreement.

28. Beginning on July 2, 2024, the Parties started negotiating a settlement of the Setoff Motion and the Lift Stay Motion.

29. On July 8, 2024, the Debtors filed the *Plan Supplement for the Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 761] (the "Initial Plan Supplement"), which included drafts of: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Plan

---

³ The Debtors filed an amended plan in July 2024, and then the Confirmed Plan in August 2024.

Administrator Agreement; (e) the Labcorp Asset Purchase Agreement; (f) the Wind-Down Budget; and (g) the Transaction Steps Memorandum. The Initial Plan Supplement did not include the APA on any of its schedules.

30. On July 15, 2024, the Parties added language to the Confirmation Order to resolve the Setoff Motion and the Lift Stay Motion. As part of this process, the Parties agreed to add reservation of rights language that would allow Natera to seek adjudication of any contract interpretation issues before the Delaware state court at a later time. *See* Confirmation Order, at ¶¶ 113–15.

31. Specifically, the Confirmation Order provides the following language:

> 113. Notwithstanding anything to the contrary herein or in the Plan, after the Effective Date, Natera, Inc. ("Natera") and the Debtors' (or the Wind-Down Debtors,' as applicable) rights are reserved to resolve the dispute related to Natera's potential obligation to make the Milestone Payment (as defined in section 2.9 of that certain Asset Purchase Agreement between Natera and Invitae Corporation, dated as of January 17, 2024 (the "Natera APA") pursuant to the Natera APA (such dispute, the "Milestone Payment Dispute") and Natera's obligation, the ("Milestone Payment Obligation")). Notwithstanding anything to the contrary herein or in the Plan, any applicable statute of limitations governing claims arising from or related to the Milestone Payment Dispute is hereby tolled from July 2, 2024 through 11:59 p.m. ET on the 10th business day following the Effective Date.
>
> 114. The right of Natera to pursue, and the right of the Debtors or the Wind-Down Debtors, as applicable, to contest, (a) a declaratory action in a court of competent jurisdiction as specified in section 7.9 of the Natera APA to resolve the Milestone Payment Dispute; and (b) setoff of (i) Natera's claim against the Debtors arising from Natera's potential entitlement to pre- and post-judgment interest in the case *Natera, Inc. v. ArcherDX, Inc., et al*, USDC-D.Del. Case No. 1:20-cv-00125-GBW (the "Patent Suit"), subject to any applicable final order, e.g., entered by the United States Court of

> Appeals for the Federal Circuit in *Natera Inc. v. ArcherDX, Inc.*, Fed. Cir. Case No. 24-01287 (the "Patent Appeal") and the United States District Court for the District of Delaware in the Patent Suit, against (ii) Natera's Milestone Payment Obligation, subject to the resolution of the Milestone Payment Dispute, are preserved. Nothing herein or in the Plan shall affect the rights of Natera, the Debtors, or the Wind-Down Debtors, as applicable, to pursue or contest the Patent Suit or the Patent Appeal.
>
> 115. To the extent *Natera's Motion for Relief from Stay to Effectuate a Setoff Pursuant to Section 362 and 553 of the Bankruptcy Code* [Dkt. No. 670] and *Motion for Relief from Stay, Pursuant to Section 362 of the Bankruptcy Code, to Initiate Delaware State Law Proceeding* [Dkt. No. 711] have not been withdrawn or otherwise resolved as of the date hereof, these two motions are denied without prejudice.

*Id.*

32. On July 19, 2024, the Debtors filed the *Amended Plan Supplement for the Second Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Dkt. No. 857] (the "Amended Plan Supplement"), which also did not include the APA on any schedules contained therein.

### III. The Third Amended & Final Plan Supplement Reveals That the Debtors Ultimately Decided, in Their Business Judgment, to Reject the APA.

33. On August 2, 2024, the Court entered the Confirmation Order [Dkt. No. 913].

34. On August 7, 2024, the Confirmed Plan went effective (the "Effective Date"). *See Notice of Entry of the Confirmation Order and the Occurrence of the Effective Date* [Dkt. No. 932]. The Confirmed Plan was substantially consummated on the Effective Date. *See* Confirmation Order, at ¶ 128.

35. Also on August 7, 2024, the Debtors filed their Third & Final Plan Supplement. The APA was included on Schedule C—the Contract Rejection Schedule.

9

36. Specifically, Schedule C of the Third & Final Plan Supplement provides as follows:

**Invitae Corporation, et al.
Contract Rejection Schedule**

| ($ in USD) Debtor Entity | Case Number | Contract Counterparty | Document Title | Contract Date |
|---|---|---|---|---|
| Invitae Corporation | 24-11362 (MBK) | Motus, LLC | Solution Order Form | 6/13/23 |
| Invitae Corporation | 24-11362 (MBK) | Mount Carmel Health Plan, Inc. | Lab Provider Participation Agreement | 8/1/18 |
| Invitae Corporation | 24-11362 (MBK) | MRC Holland | Intellectual Property Cross-License Agreement between Invitae and De Luwe Hoek Octrooien BV/MRC Holland (dated April 1, 2020) | 4/1/20 |
| Invitae Corporation | 24-11362 (MBK) | MT Lindsey Consulting | Diversity in Tech Panel Discussions Sponsorship Contract | 3/15/21 |
| Invitae Corporation | 24-11362 (MBK) | MT Lindsey Consulting | Diversity in Tech panel discussions sponsorship contract | 10/11/23 |
| Invitae Corporation | 24-11362 (MBK) | MT Lindsey Consulting | Master Services Agreement | 4/9/21 |
| Invitae Corporation | 24-11362 (MBK) | MuleSoft, LLC | Statement of Work: MuleSoft Assistance for Invitae Corporation | 2/15/21 |
| Invitae Corporation | 24-11362 (MBK) | MultiMedia Medical, LLC | Order | 4/14/21 |
| Invitae Corporation | 24-11362 (MBK) | MultiMedia Medical, LLC | Order | 3/9/22 |
| Invitae Corporation | 24-11362 (MBK) | MultiPlan | Multiplan Negotiation Services | |
| Invitae Corporation | 24-11362 (MBK) | MultiPlan, Inc. | MPI Participating Ancillary Agreement | 1/1/23 |
| Invitae Corporation | 24-11362 (MBK) | MultiPlan, Inc. | MPI Participating Ancillary Agreement | 7/1/17 |
| Invitae Corporation | 24-11362 (MBK) | Murdoch Children's Research Institute | Data Sharing Memorandum of Understanding | 2/28/21 |
| Invitae Corporation | 24-11362 (MBK) | Murdoch Children's Research Institute | First Amendment to Data Sharing Memorandum of Understanding | 3/28/21 |
| Invitae Corporation | 24-11362 (MBK) | Murphy Company | Preventive & Predictive Maintenance Agreement | 4/1/22 |
| Invitae Corporation | 24-11362 (MBK) | MVP Health Plan, Inc. | Ancillary Provider Agreement between MVP Health Plan, Inc., MVP Select Care, Inc., MVP Affiliates and Invitae Corporation | 5/1/20 |
| Invitae Corporation | 24-11362 (MBK) | My Four Creative LLC | Service Agreement | 9/7/22 |
| Invitae Corporation | 24-11362 (MBK) | MYOHR, LLC (Human Resources Consulting Service) | Master Services Agreement | 2/15/22 |
| Invitae Corporation | 24-11362 (MBK) | N3w Normal, LLC | Intranet Design Service Letter of Agreement | 11/17/21 |
| Invitae Corporation | 24-11362 (MBK) | Nagarro Inc. | Invitae Corporation Consulting Agreement | 3/21/22 |
| Invitae Corporation | 24-11362 (MBK) | Nagarro, Inc. | Master Services Agreement | 3/15/22 |
| Invitae Corporation | 24-11362 (MBK) | Nagios Enterprises, LLC | Preventive & Predictive Maintenance Agreement | |
| Invitae Corporation | 24-11362 (MBK) | Nagios Enterprises, LLC | Quote | 6/18/20 |
| Invitae Corporation | 24-11362 (MBK) | NAMSA | North American Science Associates, LLC Standard Terms and Conditions | |
| Invitae Corporation | 24-11362 (MBK) | NAMSA | Proposal | 3/18/22 |
| Invitae Corporation | 24-11362 (MBK) | Nancy Cohen Genetic Counseling, LLC | Ommdom Inc. Application Management Hosted Services End User Terms and Conditions | 4/23/21 |
| Invitae Corporation | 24-11362 (MBK) | Nasdaq Corporate Solutions, LLC | Trial Agreement | 7/22/21 |
| Invitae Corporation | 24-11362 (MBK) | Natalia Machado Alves | Consulting Agreement | 10/1/21 |
| Invitae Corporation | 24-11362 (MBK) | Nataya Francis, NP | Healthcare Professional Consulting (HCP) Agreement | 10/17/21 |
| Invitae Corporation | 24-11362 (MBK) | Natera, Inc. | Asset Purchase Agreement dated 01-17-24 | 1/17/24 |

Third & Final Plan Supplement, Schedule C, at 77.

37. In addition, Article V of the Confirmed Plan provides:

> Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the **right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts** and Unexpired Leases identified in this Article V of the Plan and in the Plan Supplement **at any time through and including thirty (30) days after the Effective Date.**

Art. V.A of Confirmed Plan (emphasis added).

38. Following thirty (30) days after the Effective Date, the APA remained on the Debtors' Contract Rejection Schedule, and it remains as such today. In short, the APA was rejected and the Debtors' time to alter, amend, or modify their assumption and rejection schedules has long passed.

### IV. The Chancery Court Action.

39. On December 11, 2024, Invitae initiated a declaratory action in the Court of Chancery of the State of Delaware (the "Chancery Court" and, such action, the "Chancery Court Action"), seeking a declaration regarding the contractual interpretation of the APA as it relates to the Milestone Payment.

40. Invitae's initiation of the Chancery Court Action relies on the preservation of rights language in paragraphs 113 through 115 the Confirmation Order.

41. Invitae's complaint in the Chancery Court Action, however, fails to mention that the Debtors rejected the APA, which, by operation of law, affected the Parties' obligations under the contract, including Natera's obligations to continue performance under the contract. Specifically, as a non-breaching party of a rejected contract, Natera is no longer required to perform under the APA, and contract interpretation disputes under the APA should be deemed moot as of the Rejection Date.

## COUNT I

## DECLARATORY JUDGMENT

## (28 U.S.C. §§ 2201–02)

42. Natera restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

43. An actual legal and substantial controversy exists between the parties regarding whether Invitae can continue to reap the benefits of the APA following its rejection. This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The Court's declaration will resolve the uncertainty created by the Chancery Court Action and provide the parties with clarity with respect to their ongoing obligations (if any).

44. Indeed, the Chancery Court Action is wholly unnecessary given that the Debtors previously rejected the APA. In addition, this Court has the power to declare the rights, status, and legal relations between Natera and Invitae for purposes of declaratory judgment. *First*, the Debtors' Confirmation Order (incorporating the Third Amended & Final Plan Supplement) conclusively effectuated the rejection of the APA because the Debtors did not further amend the Schedule of Rejected Executory Contracts and Unexpired Leases in the Third Amended & Final Plan Supplement within the time set forth for doing so under the Confirmed Plan. *Second,* the Chancery Court is not the appropriate forum to adjudicate the legal implications of Invitae's Contract Rejection Schedule because this Court retained *exclusive jurisdiction* to determine that issue. *See supra* at ¶ 14 (citing Confirmed Plan, Art. XI at No. 3 [Dkt. No. 909]).

45. Accordingly, Natera is entitled to judgment declaring: (1) that Invitae rejected the APA, (2) that the rejection constitutes a breach of the APA as of the Rejection Date; and (3) Natera had no obligations to continue to perform under the APA after the Rejection Date, including any

obligations to make a contingent Milestone Payment or address contractual interpretation issues related thereto.

46. Such a declaration will serve the twin interests of judicial efficiency and cost effectiveness by resolving all or nearly all of the substantial and actual controversy between the Parties concerning their rights and obligations under the APA.

## COUNT II

### INJUNCTIVE RELIEF

### (11 U.S.C. § 105 and Fed. R. Bank. P. 7065)

47. Natera restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

48. Natera seeks a permanent injunction under section 105(a) of the Bankruptcy Code and/or Bankruptcy Rule 7065, preventing the enforcement or adjudication of the APA by Invitae or its representatives, including the Plan Administrator, in any courts, including in the Chancery Court Action.

49. Relief under section 105(a) of the Bankruptcy Code is proper in a chapter 11 case when necessary to enforce a previous order of this Court.

50. Likewise, relief under Bankruptcy Rule 7065 is proper where the plaintiff can demonstrate both a reasonable probability of eventual success and irreparable injury if injunctive relief is not granted, in light of the possibility of harm to other interested persons from the grant or denial of the injunction.

51. The likelihood of irreparable harm to Natera in the absence of injunctive relief far outweighs any harm to Invitae's estate. Absent the requested permanent injunction, if this Court issues the declaratory judgment sought in Count I of this Complaint, there would be nothing to stop Invitae or the Plan Administrator from seeking to enforce or adjudicate the APA as if it were

assumed either through continuation of the Chancery Court Action or potentially another action in another court.

52. Natera would, therefore, suffer irreparable harm if it litigates this gating issue regarding the rejection of the APA in this Court without a permanent injunction that will stop other inconsistent rulings and judgments in other courts.

53. Finally, Natera has a substantial likelihood of demonstrating that the Debtors' rejection of the APA relieved Natera from its obligations thereunder. The Debtors' rejection of the APA was the last word. By operation of law, rejection was a breach of the APA as of February 12, 2024—the day before the Petition Date. Rejection of a contract is *cum onere* such that a debtor can shed its obligations, but it cannot at the same time demand performance of a non-breaching contract counterparty.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Plaintiff Natera Inc. respectfully requests that: (i) judgment be entered in favor of Natera, declaring that (1) Invitae rejected the APA, (2) the rejection equals a breach of the APA as of the Rejection Date; and (3) Natera had no obligations to continue to perform under the APA after the Rejection Date, including any obligations to make a contingent Milestone Payment or address contractual interpretation issues related thereto; and (ii) Natera be awarded permanent injunctive relief to prevent irreparable injury; and (iii) for other relief to which Natera is entitled.

Dated: January 21, 2025　　　　　　　　Respectfully submitted,

By: */s/ Robert K. Malone*
**GIBBONS P.C.**
Robert K. Malone
Kyle P. McEvilly
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
　　　　kmcevilly@gibbonslaw.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Lisa A. Gerson (*pro hac vice* forthcoming)
Deanna D. Boll
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Email: dazman@mwe.com
　　　　lgerson@mwe.com
　　　　dboll@mwe.com

*Co-Counsel to Natera Inc.*

15

## **VERIFICATION**

I, Russ Farr, hereby certify and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

I am the Senior Vice President and General Counsel of Natera Inc.

I have read the factual allegations contained in the Verified Adversary Complaint and affirm such allegations are true and accurate to the best of my knowledge, information, and belief.

Dated: January 21, 2025               /s/ *Russ Farr*                              
                                                                 Russ Farr
                                                                 Senior Vice President
                                                                 General Counsel
                                                                 Natera Inc.