**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jeffrey.goldfine@kirkland.com

*Co-Counsel to the Wind-Down Debtors*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Wind-Down Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Wind-Down Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |

# NOTICE OF THE WIND-DOWN DEBTORS' MOTION TO ENFORCE THE PLAN, CONFIRMATION ORDER, AND SALE ORDER

**PLEASE TAKE NOTICE** that on August 6, 2026 at 10:00 a.m. (ET) (the "Hearing"), or as sooner thereafter as counsel may be heard, the Wind-Down Debtors (the "Debtors"), by and through their undersigned counsel, shall move for the entry of an order to enforce the Plan, Confirmation Order, and Sale Order (the "Motion") before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608.

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**PLEASE TAKE FURTHER NOTICE** that the Motion sets forth the relevant factual bases upon which the relief requested should be granted. A proposed order granting the relief requested in the Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that objections or responses, if any, to the relief requested in the Motion shall: (i) be in writing; (ii) state with particularity the basis of the objection; and (c) be filed with the Clerk of the United States Bankruptcy Court electronically so as to be received on or before **July 30, 2026**, by: (i) the undersigned counsel to the Debtors, (ii) counsel to the Plaintiff in the pending Illinois case *B.W. v. Invitae Corp.*, No. 2026CH05573; (iii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102; and (iv) the other parties in interest on the list maintained by the Debtors' noticing agent, available at https://www.veritaglobal.net/invitae/document/noticelist/1.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, unless an objection is timely filed and served, the Motion will be deemed uncontested in accordance with D.N.J. LBR 9013-3(d) and the relief may be granted without a hearing.

Dated: July 15, 2026

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Wind-Down Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jeffrey.goldfine@kirkland.com

*Co-Counsel to the Wind-Down Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jeffrey.goldfine@kirkland.com

*Co-Counsel to the Wind-Down Debtors*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Wind-Down Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Wind-Down Debtors.[2] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |

# THE WIND-DOWN DEBTORS' MOTION TO ENFORCE THE PLAN, CONFIRMATION ORDER, AND SALE ORDER

The above-captioned wind-down debtors (collectively, the "Debtors"), by and through the undersigned counsel, respectfully state the following in support of this motion (this "Motion"):[3]

---

[2] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Third Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 909] (the "Plan").

**Preliminary Statement**

1. The Debtors file this Motion in response to the clear violations of the Court's Sale Order, Confirmation Order, and Plan by Plaintiff B.W., by and through his guardian Julie Wiess, in the pending Illinois state-court action *B.W. v. Invitae Corp.*, No. 2026CH05573 ("Plaintiff").

2. On May 7, 2024, the Debtors closed on the sale of a majority of their assets to Labcorp, which the Court approved via entry of the Sale Order. The Sale Order established that the Court would retain "exclusive jurisdiction" over any and all disputes arising from the terms of the Sale Order.

3. On August 2, 2024, the Court entered its Confirmation Order confirming the Debtors' chapter 11 Plan. Among other things, the Confirmation Order and Plan provided for: (i) releases by creditors of any claims or causes of action that could have been asserted against the Debtors prior to the Plan's Effective Date; (ii) an injunction barring parties from commencing or continuing litigation against the Debtors with respect to any released claims; (iii) a gatekeeper provision, under which parties must seek the Court's permission before pursuing any non-released claims against the Debtors; and (iv) the Court's exclusive jurisdiction over any future disputes relating to the Sale Order, Confirmation Order, or Plan.

4. On June 11, 2026 (nearly two years after entry of the Confirmation Order), Plaintiff B.W., an individual whose biological sample was allegedly sent to Invitae for genetic testing, filed a putative class-action complaint alleging that Debtors had sold his genetic data to Labcorp (as part of the chapter 11 sale process) in violation of the Illinois Genetic Information Privacy Act ("GIPA"). Instead of bringing his action before this Court—which had supervised and approved the Sale Transaction process, entered an order confirming the Debtors' Plan, retained exclusive jurisdiction over the case, and continues to oversee the Debtors' ongoing distribution of assets

under the Plan—Plaintiff filed his complaint in Illinois state court. Despite referencing the chapter 11 case as the sole factual basis for his claim, Plaintiff's complaint does not attach, discuss, or otherwise engage with any of the Court's Orders, nor explain why such Orders do not clearly foreclose his choice of forum.

5. By filing in Illinois state court, Plaintiff violated this Court's Sale Order, Confirmation Order, and Plan. For one, Plaintiff's choice of forum disregards numerous instructions in the Orders and Plan making clear that this Court retains exclusive jurisdiction over all matters arising in, or related to, the instant case, including any disputes pertaining to the Sale Transaction.

6. Plaintiff's choice of an Illinois state-court forum also disregards the various procedural safeguards implemented by the Court via the Confirmation Order and Plan, including the releases, Plan injunction, and gatekeeper provision. Those safeguards were intended to work in tandem to prevent released claims from being brought at all, and at minimum, to channel cases directly to this Court, so as to maximize limited estate resources and ensure centralized case management. Those concerns are even more pressing where, as here, Plaintiff seeks to bring a potentially wide-reaching and, as alleged, purportedly value-depleting class action suit against the Debtors.

7. In short, Plaintiff should never have filed the Illinois case challenging the Sale Transaction at all, given the releases and Plan injunction at issue; but at minimum, Plaintiff cannot proceed in any forum besides this Court. For these reasons, the Debtors respectfully urge the Court to enter the requested relief, in order to achieve Plaintiff's immediate compliance with the Sale Order, Confirmation Order, and Plan.

## **Requested Relief**

1. The Debtors respectfully move this Court for entry of an order substantially in the form attached hereto as **Exhibit A**: (a) enforcing the retention of jurisdiction, release, injunction, and gatekeeper provisions contained in (1) the *Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 913] (the "Confirmation Order") and (2) the *Order (I) Approving the Sale of the Acquired Assets Free and Clear of All Liens, Claims, and Encumbrances and (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Labcorp Asset Purchase Agreement* [Dkt. No. 463] (the "Sale Order," and together with the Confirmation Order, the "Orders"); (b) compelling Plaintiff B.W., by and through his guardian Julie Wiess ("Plaintiff"), to dismiss the instant case (the "Violative Action"), filed against the Debtors in Illinois state court yet arising solely from the terms of this Court's Orders; and (c) enjoining Plaintiff from commencing, prosecuting, or continuing any suit, action, or other proceeding against the Debtors that is inconsistent with the Orders or the *Third Amended Joint Plan of Invitae Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 909] (the "Plan").[4]

## **Jurisdiction and Venue**

2. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and last amended June 6, 2025 (Bumb, C.J.), paragraph 133 of the Confirmation Order, paragraph 41

4 In an abundance of caution, and as a supplement to this Motion, Debtors have also begun the parallel process of removing the Violative Action to the Federal District Court for the Northern District of Illinois, and moving to transfer the case to the District of New Jersey so that it may be referred to this Court. *See, e.g.*, *Matter of Emerson Radio Corp.*, 173 B.R. 490, 492 (D.N.J. 1994), *aff'd sub nom. In re Emerson Radio Corp.*, 52 F.3d 50 (3d Cir. 1995).

of the Sale Order, and Article XI of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm consent, pursuant to Bankruptcy Rule 7008, to the Court entering a final order in connection with this Motion.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 1141 of the Bankruptcy Code, Bankruptcy Rule 3020(d), the Plan, and the Orders.

**Background**

5. Invitae was founded in 2010 to bring medical-grade genetic testing to the public and provide healthcare providers with information on their patients' genetic makeup. Additional background on the Debtors and their prepetition operations can be found in the *Declaration of Ana Schrank, Chief Financial Officer of Invitae Corporation, in Support of Chapter 11 Filing, First Day Motions, and Access to Cash Collateral* [Dkt. No. 21].

6. On February 13, 2024, the Debtors commenced this case by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Dkt. No. 1. Soon thereafter, Debtors received permission from the Court to implement certain Bidding Procedures [Dkt. No. 57], which triggered the process by which the Debtors were authorized to conduct an auction (the "Auction") for the sale of substantially all of the Debtors' assets.

**I. The Sale Order.**

7. Debtors successfully conducted the Auction according to the Bidding Procedures, the result of which was Debtors agreeing to enter an Asset Purchase Agreement (the "APA") with the winning bidder, Labcorp Genetics Inc. ("Labcorp"), for the sale of substantially all of the

Debtors' assets. On May 7, 2024, this Court approved the APA and entered the Sale Order. Dkt. No. 463, Ex. A.

8. Section 1.2 of the APA expressly excluded certain of the Debtors' assets from being sold and transferred to Labcorp. Among these "Excluded Assets" that remained in the Debtors' possession were "all Documents (including information stored on computer systems, data networks or servers of any Seller) … that are governed under applicable Information Privacy and Security Laws that prohibit the transfer or sale of personal information." *Id.* at 50.

9. Moreover, this Court made the factual finding in its Sale Order that any transfer of personally identifiable information that did occur under the APA and Sale Order "complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code." *Id.* at 14–15.

10. Finally, the Sale Order provides that the Court "shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Labcorp APA, all amendments thereto, and any waivers and consents thereunder … and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction." *Id.* at 40.

## II. The Confirmation Order.

11. On August 2, 2024, the Court entered its Confirmation Order confirming the Debtors' Plan. Dkt. No. 913.[5]

---

[5] Following Plan confirmation, the Unsecured Creditors' Committee appealed the Plan and Confirmation Order—first to the District Court, and then to the Third Circuit. Dkt. Nos. 955, 956, 1221. Although the appeal before the Third Circuit is still pending, both the Plan and Confirmation Order currently remain in full effect.

12. On August 7, 2024, the Debtors filed the *Notice of (I) Entry of the Order Confirming the Third Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) Occurrence of the Effective Date* [Dkt. No. 927], advising of the effective date of the Plan on August 7, 2024 (the "Effective Date").

13. As of the Effective Date, Article VIII.D of the Plan provides that Holders of Claims and Interests under the Plan are deemed to have irrevocably released and discharged such claims against the Debtors, including any claims or causes of action relating to "the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the TSA, the Disclosure Statement, the Plan, the Sale Transaction, the Asset Purchase Agreement … or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date." Dkt. No. 913 at 120.

14. To enforce these releases, Article VIII.F of the Plan also provides for an injunction as of the Effective Date, stating that Holders of "any Claim or Interest that is subject to the releases and exculpations set forth in the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests." *Id.* at 121.

15. Article VIII.D of the Plan also contained a gatekeeper provision covering any non-released Claims and Causes of Action. Beginning on the Effective Date, Holders of Claims that are not subject to the releases must nonetheless obtain "a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party." *Id.* This Court

retains sole and exclusive jurisdiction to determine whether a given Holder of a Claim has satisfied the gatekeeper provision. *Id.*

16. Finally, under Article XI of the Plan, the Court retains "exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code." *Id.* at 124. The Plan provides various examples to illustrate the scope of the exclusive jurisdiction, including the Court's powers to: "resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation of the Sale Order;" "resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan[;]" and "resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in the Plan, including under Article VIII hereof." *Id.* at 125.

## III. Plaintiff's Complaint.

17. On June 16, 2026, Debtors were served with notice that Plaintiff, a former customer of Invitae, had filed the Violative Action in the Circuit Court of Cook County, Illinois. A copy of the putative class-action complaint is attached hereto as **Exhibit B.**

18. The complaint alleges that the Debtors' sale of assets to Labcorp during their restructuring violated GIPA, 410 ILCS 513/1, *et seq.* by purportedly transferring individuals' genetic data to a third party without those individuals' written consent. Ex. B ¶ 23. Plaintiff seeks class certification, along with statutory and actual damages, declarative and injunctive relief, and attorneys' fees. Ex. B. at 10.

19. Despite referencing the instant chapter 11 case as the sole factual basis for his claim, Plaintiff's complaint does not attach, discuss, or otherwise engage with any of the Court's Orders.

**Basis for Relief**

20. The Violative Action—which directly challenges the legality of the Sale and Confirmation Orders entered by this Court—violates and/or otherwise fails to comply with multiple fundamental provisions of the Orders and the Plan, while also implicating core bankruptcy issues that may only be decided by this Court.

**I. Plaintiff Violated the Exclusive Jurisdiction Provisions of the Orders and Plan by Filing the Complaint in State Court.**

21. Under Article XI of the Plan, the Court retains "exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code," including "cases, controversies, suits or disputes that may arise in connection with the interpretation of the Sale Order." Plan at 125; *see also* Confirmation Order at 71 (same); Sale Order at 40 (same).

22. Plaintiff's decision to file his complaint in Illinois state court, in spite of the forgoing provisions, clearly violates both the Orders and the Plan. Given that the Violative Action focuses entirely on the terms of the APA and Sale Transaction entered into by the Debtors and Labcorp, it falls entirely within the scope of the Court's aforementioned exclusive jurisdiction provisions.

23. Indeed, Plaintiff's allegations would necessarily require the Court to interpret the terms of its own Sale Order, including whether Plaintiff's genetic data was transferred from Debtors to Labcorp in the course of the Sale Transaction. Dkt. No. 463 at 49. Multiple courts in the Third Circuit have confirmed that such cases—which require a bankruptcy court to revisit and enforce the terms of an existing sale order—fall squarely within the core jurisdiction of bankruptcy courts. *See, e.g.*, *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("[T]he bankruptcy court correctly determined that the suit was a core proceeding because it

required the court to interpret and give effect to its previous sale orders."); *In re Bowflex, Inc.*, 674 B.R. 47, 63 (Bankr. D.N.J. 2025) (collecting cases for the same proposition).

24. Accordingly, the allegations in Plaintiff's Violative Action relating to the Sale Transaction are plainly within the exclusive jurisdiction of this Court, and Plaintiff's attempt to deprive the Court of that jurisdiction in favor of an alternate forum is directly contrary to the Plan.

## II. In Pursuing the Violative Action, Plaintiff has also Independently Failed to Comply with the Plan's Other Requirements.

25. As of the August 7, 2024 Effective Date, any action commenced against the post-confirmation Debtors must satisfy additional procedural requirements before moving forward. Separate from its noncompliance with the exclusive jurisdiction provisions, Plaintiff's Violative Action also fails to comply with any of these additional requirements.

26. To be clear, Plaintiff is bound by the provisions of the Plan and Confirmation Order, regardless of whether he availed himself of the original bankruptcy process. *See, e.g.*, *In re Smith*, 102 F.4th 643, 651 (3d Cir. 2024) (explaining that under 11 U.S.C. § 1327, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.").

27. Under the Plan's releases, any former Holders of Claims under the Plan are now deemed to have irrevocably released and discharged such causes of action against the Debtors—including any claims, like those in the Violative Action, which relate to "the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the TSA, the Disclosure Statement, the Plan, the Sale Transaction, the Asset Purchase Agreement … or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date." Dkt. No. 913 at 120. Consequently, under the Plan's injunction,

Plaintiff is "permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests." *Id.* at 121. Plaintiff's continuing pursuit of his already-discharged claim arising from the Sale Order, as pled in the Violative Action, therefore also presumptively violates the injunction provision of the Plan.

28. Even if the Violative Action were not subject to the Plan's releases or injunction—which it is—the gatekeeper provision would pose yet another barrier to Plaintiff's ability to pursue his current complaint. Under this provision, Plaintiff cannot proceed against any Released Party (including the Debtors) without first receiving specific authorization from this Court that his claims are not subject to release. There is no question that Plaintiff failed to first obtain such authorization from the Court before filing the Violative Action in state court.

29. As the Confirmation Order found, the gatekeeper provision "is necessary, appropriate, and critical to the effective and efficient administration, implementation, and consummation of the Plan." Dkt. No. 913 at 14–15. In other cases, such provisions have similarly been recognized as "a procedural safeguard to protect estate resources, avoid excessive litigation, and uphold the finality of the Plan." *See, e.g.*, *In re BlockFi Inc.*, 2025 WL 2024312, at *4 (Bankr. D.N.J. July 18, 2025). The need for that safeguard is especially apparent here, given Plaintiff's putative class-action suit seeks to recover $15,000 or more for each individual class member—a cumulative amount that, as pled, has the potential to greatly impact the remaining pool of assets currently being distributed among the Debtors' preexisting creditors. *See* Ex. B. at 9–10. Plaintiff should not be permitted to ignore these structural protections to the detriment of the remaining creditor constituency.

30. Debtors bring this Motion only after first affording Plaintiff's counsel the opportunity to correct their failure to follow the Court's Orders. On July 6, 2026, Debtors

contacted Plaintiff's counsel to draw their attention to the relevant provisions of the Orders, as well as the Violative Action's clear failure to comply with the Court's binding directive. In the hopes of conserving resources, Debtors suggested that Plaintiff's counsel voluntarily dismiss the Violative Action, then re-file the complaint before this Court. Debtors ultimately filed this Motion only after first receiving notice on July 14 that Plaintiff's counsel had declined the option to self-correct their violation of the Court's Orders.

## **Conclusion**

31. Given each of these independent grounds for relief, the Debtors respectfully request that the Court enter an order: 1) enforcing the retention of jurisdiction, release, injunction, and gatekeeper provisions contained in the Plan and the Orders; 2) requiring Plaintiff to dismiss the Violative Action; and 3) enjoining Plaintiff from commencing, prosecuting, or continuing any suit, action, or other proceeding against the Debtors that is inconsistent with this Order, the Sale Order, the Plan, or the Confirmation Order.

## **Reservation of Rights**

32. Except as expressly set forth herein, nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any Claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any Claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular Claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular Claim is an administrative expense Claim or other priority Claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on,

security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.

**No Prior Request**

33. No prior request for the relief sought in this Motion has been made to this Court or any other court.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors request that the Court enter the Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: July 15, 2026

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Wind-Down Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jeffrey.goldfine@kirkland.com

*Co-Counsel to the Wind-Down Debtors*

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Wind-Down Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |

**ORDER GRANTING THE WIND-DOWN DEBTORS' MOTION TO ENFORCE THE PLAN, CONFIRMATION ORDER, AND SALE ORDER**

The relief set forth on the following pages, numbered three (3) through four (4), is **ORDERED**.

---

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jeffrey.goldfine@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Wind-Down Debtors*

---

Upon consideration of the *Wind-Down Debtors' Motion to Enforce the Plan, Confirmation Order, and Sale Order* (the "Motion"),[2] and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and last amended June 6, 2025 (Bumb, C.J.), paragraph 133 of the Confirmation Order, paragraph 41 of the Sale Order, and Article XI of the Plan; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided and no further notice being necessary; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, and all other parties in interest; and the Court having reviewed the Motion and any responses thereto; and upon the record of the hearing, if any, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Court hereby declares that the Violative Action, which asserts or seeks to assert Claims against the Debtors or their Estates without first proceeding in this Court and without prior Court authorization in accordance with the Plan's releases, gatekeeper provision, and Plan injunction, is a violation of, and is barred by, the Sale Order, Confirmation Order, and Plan.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3. Within three (3) business days after entry of this Order, the Plaintiff shall file notices with the applicable court(s) dismissing the Violative Action, along with any and all other steps necessary to effectuate dismissal of the Violative Action, and promptly provide notice of such filings to the Debtors.

4. Plaintiff, and all persons or entities acting in concert with them or the putative classes they purport to represent, including the plaintiffs or claimants in any subsequent action, are permanently ENJOINED from (a) commencing, prosecuting, or continuing any suit, action, or other proceeding against the Debtors that is inconsistent with this Order, the Sale Order, the Plan, or the Confirmation Order; (b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means any judgment, award, decree, or other order against the Debtors on account of any such barred claim; or (c) taking any action that would interfere with the intended effects of the Sale Order, the Plan, the Confirmation Order, or this Order.

5. Nothing in this Order alters, amends, or modifies the terms of the Plan, the Confirmation Order, the APA, or the Sale Order, each of which remains in full force and effect.

6. Notwithstanding any applicable bankruptcy rule, this Order shall be effective and enforceable immediately upon its entry.

7. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# EXHIBIT B

Hearing Date: 8/17/2026 9:30 AM
Location: Court Room 2008
Judge: Calendar, 9

12-Person Jury

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

FILED
6/11/2026 12:12 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH05573
Calendar, 9
38507988

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| B.W. a Minor, through his Guardian, JULIE WIESS, individually and on behalf of similarly situated individuals, | No. 2026CH05573 |
| *Plaintiff*, | |
| v. | Hon. |
| INVITAE CORPORATION, a Delaware corporation, | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT WITH JURY DEMAND**

Plaintiff B.W., by and through his Guardian, Julie Wiess, individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant Invitae Corporation ("Defendant" or "Invitae") for its violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA"), and to obtain redress for persons injured by its conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

**INTRODUCTION**

1. This case concerns the illegal disclosure of tens of thousands of individuals' genetic information to Laboratory Corporation of America Holdings. ("Labcorp"), a healthcare diagnostics and laboratory services company, that acquired Defendant Invitae, a genetic testing company, in 2024. As part of the acquisition process Defendant has violated Plaintiff's and the other Class members' rights arising under GIPA to prevent disclosure of their immutable genetic information to unauthorized third-parties without their written consent.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

2. GIPA defines "genetic information" as information pertaining to: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

3. GIPA provides that entities, such as Defendant, may not release and/or disclose genetic testing and information derived from genetic testing to anyone other than the individual tested or to persons specifically authorized in writing in accordance with the Act. See 410 ILCS 513/15(a).

4. Compliance with GIPA is straightforward and may be accomplished through a single, signed sheet of paper or its electronic equivalent. GIPA's requirements bestow a right to privacy in one's genetic information and a right to prevent the disclosure of such information without their consent.

5. In enacting GIPA, the Illinois legislature recognized that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner."

6. The Illinois Legislature enacted GIPA because "[t]he public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information." *Id.* (emphasis added).

7. The deprivation by Defendant of the statutory rights conferred by GIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

8. Plaintiff brings this action for statutory and actual damages, whichever is greater, and other remedies as a result of Defendant's conduct in violating Plaintiff's state genetic privacy rights.

9. On Plaintiff's own behalf, and on behalf of the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with GIPA, as well as an award of damages, including statutory damages under GIPA, to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

10. Defendant Invitae is a corporation under the laws of the state of Delaware that conducts substantial business throughout Illinois, including in Cook County, Illinois.

11. At all relevant times, Plaintiff B.W., and his Guardian, Julie Wiess, have been residents of Cook County, Illinois

**JURISDICTION AND VENUE**

12. This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Defendant conducts business within this state and because Plaintiff's claims arise out of Defendant's unlawful in-state actions, as Defendant failed to request and receive Plaintiff's consent to disclose his genetic information in this District.

13. Venue is proper in Cook County, Illinois pursuant to 735 ILCS 5/2-101, because Defendant conducts business in Cook County, Illinois, and thus resides there under § 2-102, and because the transactions out of which this cause of action arises occurred in Cook County, Illinois.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

## COMMON FACTUAL ALLEGATIONS

14. Prior to bankruptcy, Defendant Invitae was a leading genetic testing company with a large patient base that maintained extensive genomic data assets.

15. Invitae's consumer genomics business used DNA collected from its customers' blood or saliva to provide its customers with information relating to diagnostic testing or genetics.[1]

16. On February 13, 2024, Invitae filed for Chapter 11 bankruptcy and requested court approval to sell its assets.[2]

17. Given Invitae's extensive genetic data assets, LabCorp sought to acquire the company, and on April 30, 2024, Invitae announced an Asset Purchase Agreement with Labcorp.[3]

18. On August 5, 2024, Labcorp reported that it had fully completed its acquisition of Invitae for $239 million.[4]

19. Following Labcorp's acquisition of Invitae, Labcorp reported integrating genetic test results from Invitae's patients and stated that the acquisition would enable the use of genetic data to support clinical trials and treatment development. Invitae did not seek consent from its patients prior to sharing their genetic data with Labcorp.[5]

20. This resulted in the unlawful disclosure of Plaintiff's and the Class' genetic information, and the sharing and/or release of such information to Labcorp and its affiliates, if not other third-parties.

---

[1] https://www.invitae.com/us/individual-faqs/testing

[2] https://www.prnewswire.com/news-releases/invitae-files-for-voluntary-chapter-11-protection-pursues-sale-process-302061304.html

[3] https://www.sec.gov/Archives/edgar/data/1501134/000119312524129432/d827617d8k.htm

[4] https://ir.labcorp.com/news-releases/news-release-details/labcorp-finalizes-acquisition-select-assets-invitae

[5] https://www.prnewswire.com/news-releases/labcorp-finalizes-acquisition-of-select-assets-of-invitae-302214260.html

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

21. Under GIPA, the results of a DNA or genetic test are confidential and the subject of such testing has a right to prevent others from receiving their genetic test results without written consent. 410 ILCS 513/15(a).

22. Thus, releasing, disclosing, or transferring genetic testing and information derived from genetic testing to any person other than the individual tested or to persons specifically authorized, must be in writing in accordance with the Act. *Id.*

23. Following its acquisition, Defendant Invitae released, disclosed and/or transferred Plaintiff's and the other Class Members' genetic test results and associated information to Labcorp without their written consent in violation of GIPA.

24. Labcorp's acquisition of Invitae included acquisition of not just Plaintiff's and the other Class Members' genetic information, but also all of the accompanying information gathered by Invitae, including personal information that can be used to identify Plaintiff and the other Class Members. Such information includes their first and last name, email address, and/or home address (including age and gender in some instances), including Plaintiff's.

25. Defendant Invitae thus violated GIPA by disclosing and/or releasing Plaintiff's and the Class' genetic information without their advance written consent.

**FACTS SPECIFIC TO PLAINTIFF**

26. In or about February 2024, Plaintiff B.W., a minor, through his mother and Guardian, Julie Wiess, was directed to undergo genetic testing by Invitae as part of his treatment at an Advocate Children's health facility in Cook County, Illinois.

27. After his biological sample was sent to Invitae, his genetic material was sequenced by Defendant which then provided his Guardian and clinical team with information derived from his genetic test.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

28. Due to the highly sensitive nature of genetic test results as well as Invitae's representations regarding maintaining the strict privacy of its customers' genetic information, Plaintiff and his Guardian reasonably believed that the only persons who would be provided the results of Plaintiff's genetic testing would be himself, his mother, and their treating medical staff and doctors, and that the information submitted on Plaintiff's behalf to Invitae would be kept confidential, private and secure—and that it would never be received by third parties like Labcorp without his or his mother's written consent.

29. Plaintiff would not have agreed to have his genetic material provided to Invitae if he had known that Defendant would disclose his genetic information without his consent to third-parties other than his Guardian such as Labcorp.

30. Plaintiff B.W., through his mother and Guardian, never consented or otherwise agreed to the release, disclosure or transfer of his genetic information and other personal identifying information to Labcorp.

31. Thus, as a result and through Invitae's acquisition by Labcorp, Defendant illegally disclosed and/or released the genetic information of thousands of Illinois consumers without their written consent, including that of Plaintiff and the other Class members, in violation of GIPA.

**CLASS ACTION ALLEGATIONS**

32. Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows: All Illinois residents whose genetic information was disclosed and/or released by Invitae to Labcorp, according to Invitae's records.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

33. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

34. Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

35. Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members of the Class are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's GIPA violations.

36. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendant's conduct is subject to GIPA;

b. Whether Defendant disclosed Plaintiff's and the other Class members' genetic information in violation of GIPA;

c. Whether Defendant released Plaintiff's and the other Class members' genetic information to Labcorp and other third-parties in violation of GIPA;

d. Whether Defendant obtained written authorization from Plaintiff and the other Class members before disclosing or releasing their genetic information;

e. Whether Defendant's violations of GIPA were willful or reckless;

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

f. Whether Defendant's violations of GIPA were negligent;

g. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

37. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

38. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel has any interest adverse to those of the other members of the Class.

39. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**COUNT I**
**Violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513, *et seq.***
**(On behalf of Plaintiff and the Class)**

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41. Defendant Invitae is a corporation and, therefore, a "person" under 410 ILCS 513/10.

42. Plaintiff and the Class obtained "genetic test[s]" and received the results of such tests from Invitae.

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

43. Plaintiff and the Class also provided accompanying personal identifying information, including their full names, email address, and/or home addresses (including age and gender in some instances) to Invitae.

44. The information obtained from Plaintiff and the Class is the type of information protected by GIPA. 410 ILCS 513/10.

45. Defendant Invitae disclosed and/or released Plaintiff's and the Class members' genetic tests and/or information derived from their genetic tests, along with their accompanying personal identifying information to Labcorp.

46. Defendant did not receive any written authorization from Plaintiff or the other Class members to disclose and/or release their genetic test results and information derived therefrom, including their personal identifying information, as mandated by 410 ILCS 513/15(a) and 410 ILCS 513/30(a)(2).

47. Plaintiff and the other Class members have been aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information as set forth in GIPA when Defendant disclosed and/or released their statutorily protected genetic information without their consent to Labcorp.

48. GIPA provides for statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages – whichever is greater – and, alternatively, damages of $2,500 for each negligent violation of GIPA or actual damages – whichever is greater. 410 ILCS 513/40(a)(3).

49. Accordingly, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff B.W., by and through his guardian, Julie Wiess, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate GIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with GIPA;

d. Awarding statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages – whichever is greater – pursuant to 410 ILCS 513/40(a)(3);

e. Awarding statutory damages of $2,500 for each negligent violation of GIPA or actual damages – whichever is greater – pursuant to 410 ILCS 513/40(a)(3);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 410 ILCS 513/40(a)(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: June 11, 2026

Respectfully submitted,

B.W., a Minor, through his Guardian, JULIE WIESS, individually and on behalf of similarly situated individuals

By: /s/ Eugene Y. Turin
*One of Plaintiff's Attorneys*

FILED DATE: 6/11/2026 12:12 AM 2026CH05573

Eugene Y. Turin
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

Robert K. Shelquist (*pro hac vice* to be filed)
CUNEO GILBERT & LaDUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Tel: (612) 254-7288
rshelquist@cuneolaw.com

*Attorneys for Plaintiff and the Putative Class*