NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| | |
|---|---|
| In re: | Chapter 11 |
| Invitae Corporation, *et al.*, | 24-11362 (MBK) |
| Reorganized Debtors.[1] | Hearing Date: September 14, 2026 |

*All Counsel of Record*

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on the Debtors' Motion to Enforce the Plan, Confirmation Order, and Sale Order; seeking the entry of an Order that enforces the gatekeeper provisions contained therein; and enjoining the assertion of claims against Debtors and the purchasers of its assets (Dkt. No. 1265). At issue is a class action lawsuit brought against Invitae Corporation ("Invitae") and Labcorp, Inc. ("Labcorp"). The class action complaint, filed in Illinois state court, alleges violations of state privacy laws prohibiting the unauthorized transfer of sensitive genetic data (Dkt. No. 1265, Exhibit B). B.W., the representative plaintiff in the class action, filed opposition (Dkt. No. 1282). Debtors filed a reply (Dkt. No. 1285). Following the hearing, B.W. filed a supplemental response (Dkt. No. 1288). The Court has considered the parties' submissions as well as the arguments raised during the hearing held on September 14, 2026. For

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

the reasons that follow, the Motion to Enforce the Plan, Confirmation Order, and Sale Order is **GRANTED** in part, and **DENIED** in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

Invitae Corporation was founded in 2010 as a medical-grade genetic testing company that brought genetic testing to the public for use in conjunction with healthcare providers (Dkt. No. 21). Invitae Corporation and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") commenced these chapter 11 cases by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 13, 2024. (Dkt. No. 1). The Court approved bidding procedures and, following an auction, approved the sale of substantially all of the Debtors' assets to Labcorp Genetics, Inc. ("Labcorp") on May 7, 2024 (Dkt. No. 463). The Order approving the sale ("Sale Order") included the Asset Purchase Agreement ("APA") as an exhibit (Dkt. No. 463, Exhibit A). The APA specifies what assets are included in the sale (Dkt. No. 463, Exhibit A, Pg. 50). The Sale Order further provides that the Court "shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Labcorp APA, all amendments thereto, and any waivers and consents thereunder…and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction," (Dkt. No. 463, Pg. 40).

Following approval of the sale, on August 2, 2024, the Court entered issued its findings of fact and entered an Order confirming the Debtors' Chapter 11 Plan ("Plan") (Dkt. No. 913). Article VIII.D of the Confirmation Order deems all claims released as of the Effective Date (Dkt. 913, Pg. 120). The Confirmation Order also contained an injunction in Article VIII.F, as of the Effective

Date, as to all Holders of Claims that are subject to the releases, which prohibits parties from bringing any actions based on released claims (Dkt. 913, Pg. 121-122). The Confirmation Order also contains a gatekeeper provision which requires Holders of Claims not subject to a release to obtain a final order from this Court determining that such a claim is not subject to a release (Dkt. 913, ¶21). Like the Sale Order, Article XI of the Confirmation Order also contains a provision that reserves this Court's jurisdiction over all matters arising out of or related to this Chapter 11 (Dkt. 913, 125). The Effective Date of the Plan, per the Notice of (I) Entry of the Order Confirming the Third Amended Joint Plan of Invitae Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) Occurrence of the Effective Date, was August 7, 2024 (Dkt. No. 927).

On June 11, 2026, B.W., the representative Plaintiff in an Illinois class action, filed a lawsuit premised on violations of the Illinois Genetic Information Privacy Act ("GIPA") against Debtors and Labcorp, Inc. (Dkt. No. 1265, Exhibit A). B.W. alleges that the Debtors' transfer of patient data to Labcorp, without the patients' prior authorization, is a violation of GIPA, giving rise to state law claims. The Debtors brought this Motion to Enforce the Confirmation Order (Dkt. No. 1265). The Debtors contend that the Illinois action is procedurally impermissible regardless of the merits of the GIPA claim because the action was filed outside of this Court, without first complying with the Plan's gatekeeper mechanism and in contravention of the Plan and Sale Order provisions that reserve exclusive jurisdiction to interpret and enforce the Court's own Orders Debtors additionally argue that the asserted claims are released and enjoined, and that the subsequent addition of Labcorp as a defendant separately violates the protections afforded to the purchaser under the Sale Order and confirmed Plan.

B.W. opposes the Debtors' motion on the grounds that the Court does not have jurisdiction to hear the GIPA claims (Dkt. No. 1282). B.W. contends that his claim arose when his genetic testing data transferred from Invitae to Labcorp without his prior express permission (Dkt. 1282, ¶3). B.W. operates under the assumption that the data passed from Invitae to Labcorp after the Effective Date of the plan, which would make the release of this claim contained in the Sale and Confirmation Orders inapplicable to the GIPA claims (Dkt. 1282, ¶ 23). To support this assumption, B.W. relies on the dates that the Court entered the Orders approving the sale and confirming the plan (Dkt. 1282, ¶ 23).

## II. JURISDICTION AND VENUE

The interpretation and enforcement of the Confirmation and Sale Orders is the subject of immediate dispute before this Court. Jurisdiction to interpret and enforce the Court's own order is not necessarily jurisdiction finally to adjudicate the underlying GIPA cause of action. However, case law is clear that this Court maintains jurisdiction to decide whether its own Sale Order, Confirmation Order, and gatekeeper provision apply. *See In Re Congoleum Corp.,* 149 F.4th 318, 328 (3d Cir. 2025); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). Bankruptcy courts can exercise jurisdiction over proceedings that are core proceedings or non-core proccedings that are "related to bankruptcy." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004). Once a plan is confirmed, the scope of the bankruptcy court's jurisdiction diminishes, but "does not disappear entirely." *Id.* At 165. After a reorganization plan has been confirmed, "bankruptcy courts have 'related to" jurisdiction only if the claim 'affect[s] an integral aspect of the bankruptcy process' such that there is a close nexus to the bankruptcy plan or proceeding. *Congoleum*, *citing Resorts,* 372 F.3d at 167. The requirement for a close nexus to the plan does not exist for core proceedings. *In re Essar Steel Minn., LLC,* 47 F.4th 193, 198 (3d Cir. 2022).

The still-active wind-down and potential depletion of distributable assets furnish a direct connection to estate administration. More to the point, determining whether the Asset Purchase Agreement excluded the information because applicable privacy law prohibited its transfer requires interpretation of the agreement and the Sale Order – precisely the instruments over which the Court retained enforcement jurisdiction.

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, and as further amended on June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §1408. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[2]

## III. ANALYSIS

### a. The Gatekeeper Provision

Gatekeeper provisions serve as essential safeguards in complex Chapter 11 reorganizations and asset sales. These mechanisms prevent non-bankruptcy forums from misinterpreting or undermining bankruptcy releases and sale injunctions. The gatekeeper provision ensures that the court that shaped the reorganization and approved the asset sale is the initial arbiter of whether a subsequent lawsuit violates the confirmation order. In the context of complex Chapter 11 asset sales, gatekeeper provisions provide protections for would-be purchasers, thereby safeguarding the value of the assets.

---

[2] To the extent that any of the finds of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

The specific gatekeeper language in the Invitae Confirmation Order provides that a holder of a claim that is not otherwise released must obtain:

> A Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party.

Dkt. No. 913, ¶21.

The provision further makes this Court the gatekeeper by providing that the Bankruptcy Court retains "sole and exclusive jurisdiction" to determine whether the claimant has satisfied the plan requirements (Dkt. No. 913, ¶ 21). No party may proceed against a Released Party, including the Debtors and Labcorp, without first obtaining this Court's specific authorization that the claim is not subject to release under the plan. Thus, the fulcrum point for the pending motion is that the gatekeeper provision operates even if the underlying claim ultimately is not released. It establishes a two-step prerequisite: (1) this Court must first determine, after notice and a hearing, that the claims is not released; and (2) this Court must specifically authorize the claimant to pursue the claim against the Released Party. The gatekeeper provision does not literally say that *every person with any dispute against a Released Party* must obtain permission from this Court. Pursuant to Article VIII.D of the Plan, the provision applies to "Holders of Claims" whose claims are not otherwise released, and requires such holders to obtain a Final Order determining that the claim is not released and specifically authorizing the suite against the Released Party (Dkt. No. 856, Pg. 121). This language leads to an important threshold question: is B.W. a "Holder of a Claim" governed by the Plan at all?

B.W. says no. His theory is that the actionable GIPA violation was the unauthorized disclosure or transfer of his genetic information, that this occurred after confirmation and, he contends, after the August 7, 2024 Effective Date, and therefore he possessed no bankruptcy "Claim" capable of being addressed by the Plan. Accordingly, he characterizes himself as a post-confirmation tort claimant rather than a pre-confirmation creditor (Dkt. No. 1282, ¶ 2). If that premise is correct, there is a substantial textual argument that the gatekeeper provision never attaches. A plan ordinarily cannot transform a person injured by genuinely post-Effective-Date conduct into a preexisting "Holder of a Claim" merely by declaring that future litigation must be brought before the bankruptcy court.

The weakness in B.W.'s argument is that his proof of a post-Effective-Date transfer is presently quite thin. The Opposition concedes that, because discovery has not occurred, B.W. does not know the actual transfer date of his genetic date (Dkt. No. 1282, ¶22). His position is essentially inferential: Labcorp announced completed of the acquisition on August 5, 2024, and B.W. reasons that data transfer "almost certainly" occurred after the August 7th Effective Date. The opposition therefore maintains that the Plan, which reaches only occurrences on or before August 7, 2024, does not reach the asserted tort claim.

The Debtors have a meaningful response. They emphasize that the operative complaint itself alleges that Invitae was compelled to disclose the database "pursuant to the court-ordered sale and the asset purchase agreement," and that the acquisition was completed on August 5, 2024 – two days before the Effective Date (Dkt. No. 1285, ¶ 23). In their reply, Debtors argue that the pleading identifies no distinct post-Effective-Date transfer and that B.W. cannot revise the complaint through his opposition papers (Dkt. No. 1285, ¶ 23).

If the transfer occurred pre-Effective Date, it falls squarely within the discharge, release, and sale protections. If the claim asserts purely independent post-Effective Date conduct, the claim may escape the Plan's claim release provisions. On the present pleadings, B.W. has not established that there has been a post-Effective-Date transfer of data. Rather, his Opposition admits uncertainty about the transfer date, while his complaint apparently ties the challenged disclosure directly to the court-ordered sale and acquisition completed before the Effective Date (Dkt. No. 1282, ¶22). Because the timeline is not clear, allowing the class action to proceed in state court risks an impermissible collateral attack. The ambiguity itself triggers the precise protective purpose of the gatekeeper provision. The Court will require B.W. first to come before this Court and establish that his claim is outside the scope of the plan's releases before continuing his litigation elsewhere. To the extent the parties require further discovery in order to ascertain the date of the data transfer, such discovery can be conducted as part of the contested motion seeking relief from the plan's gatekeeping provisions.

**b. Claim Release & Injunctive Relief**

Debtors' motion also seeks a determination that B.W.'s GIPA claims were pre-Effective-Date claims that are released according to the terms of the Sale and Confirmation Orders and are therefore barred. Debtors argue that B.W.'s claims against Debtors and Labcorp arose before the Effective Date. If that were the case, Debtors argue, the claims would be subject to the releases contained in the Confirmation and Sale Orders, and B.W. would be barred from asserting these claims in the Illinois state court action (Dkt. Nos. 1265, 1285). B.W. raises a number of arguments in opposition to this point, including concerns related to notice and due process (Dkt. No. 1282).

In order to reach the conclusion that the GIPA claims were released and are barred by the Sale and Confirmation Orders, this Court would need to find that the GIPA claims arose prior to

the Effective Date. Again, the record on when, or even if, the transfer of data took place has not been established. The parties instead draw competing inferences from the sale and plan confirmation chronologies and from the allegations in B.W.'s First Amended Complaint. B.W. expressly concedes an evidentiary gap in his Opposition, which says, "because discovery has not yet taken place, Plaintiff does not know the exact date that the genetic information was transferred to Labcorp" (Dkt. No. 1282, ¶22).

Based on the record, there is insufficient evidence to determine that the GIPA claims asserted by B.W. in the Illinois class action suit were released by operation of the terms of the Sale and Confirmation Orders. To the extent Debtors seek a determination that these claims have been released and are barred pursuant to the terms of the Sale and Confirmation Orders, the motion is denied.

## IV. CONCLUSION

The record does not establish the date of the data transfer which is central to both the question of whether B.W.'s GIPA claim is subject to the gatekeeping provision and whether the claim has been released pursuant to the Sale and Confirmation Orders. It is this factual ambiguity that must trigger the protection of the gatekeeper provision. For the aforementioned reasons, the Court finds that B.W.'s GIPA claim is subject to the gatekeeper restrictions but will not reach a determination that the claims were released or issue an injunction barring B.W. from later asserting these claims once he has complied with the gatekeeper provisions.

Accordingly, the Court **GRANTS** the Debtors' motion in so far as it seeks relief enforcing the gatekeeping provision. B.W. shall not commence, prosecute, or continue any suit, action, or other proceeding against the Debtors and Labcorp that is inconsistent with this Order, the Sale Order, the Plan, and the Confirmation Order. The Court directs B.W. to file the appropriate adversary proceeding in this Court in accordance with the requirements set forth in the APA, Sale Order, and Confirmation Order. The Court **DENIES** the Debtors' motion for a determination that the claims were released and for an injunction barring B.W. from asserting the claim, without prejudice.